**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM
## AND FINAL ORDERS AUTHORIZING THE DEBTORS TO
## (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE
## OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO

### TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (this "Motion"):[2]

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order")

authorizing the Debtors to:  (a) continue utilizing services pursuant to certain agreements between

the Debtors and Amazon.com Services LLC (together with certain of its affiliates, "Amazon") in

the ordinary course of business; and (b) honor any obligations with respect thereto.  In addition,

the Debtors request that the Court schedule a final hearing within approximately thirty (30) days

after the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Josh Burke, Chief Financial Officer of Thrasio Holdings, Inc., in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on February 28, 2024 (the "Petition Date").  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

4.      The bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1 and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

5.      On the Petition Date, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## Amazon Services

6.      The Debtors' relationship with Amazon is integral to the operation of their business. As of the Petition Date, the Debtors are a top 5 seller on Amazon's online store (the "Amazon Store").  In 2023, approximately 91% of the Company's gross sales were completed on the Amazon Store.  All of the Debtors' brands sell at least one of their products on the Amazon Store, and the Debtors' brands rely on Amazon's consulting and optimization services to scale and grow their business effectively.  Put simply, the success of the Debtors' business depends, in large part, on the Debtors' ability to continue selling on the Amazon Store.

7.      The Debtors rely on Amazon's suite of services to market, ship, sell, and store their products.  Among other things, the Debtors:  (i) operate online seller accounts to list, sell, and receive payments for the sale of their products on the Amazon Store (the "Amazon Seller Accounts"); (ii) rely on Amazon's "Fulfillment by Amazon" service (the "FBA Program") for storage, warehousing, freight forwarding, picking and packing, shipping, inventory management, and other fulfilment services; and (iii) engage with Amazon for personalized advertisements on

Amazon's website, Amazon's social media marketing programs, and Amazon's other marketing and advertising programs (the "Amazon Advertising Program" and collectively, with the Amazon Seller Accounts, the FBA Program, and Amazon's other miscellaneous services and offerings, the "Amazon Services").  Each of the Debtors is party to an Amazon Service Business Solutions Agreement (each, a "BSA") that covers the particular services and offerings that Amazon provides to each brand.  The BSAs also contain the payment terms for the particular Amazon Services utilized by each brand.

8.      To list, market, and sell its products on the Amazon Store, each of the Debtors' brands uses its own Amazon Seller Account.  Through its Amazon Seller Account, each of the Debtors' brands has a number of tools, analytics, and reports at its disposal that it can use to identify trends and ways to better improve its offerings to better meet customer demand.  Each Amazon Seller Account also manages and controls the individual Amazon Store webpages (each, a "Product Detail Page") that provide the product's name, price, logo, images, description, and reviews.

**I.      Amazon Seller Account Fees.**

9.      The Debtors generate revenue from sales once a product purchased through the Product Detail Page is shipped to the customer.  Amazon charges the customer directly for the purchase and deducts fees from the seller's Amazon Seller Account, including for the following: (i) any applicable Amazon Services; (ii) base fees for selling on the Amazon Store; and (iii) any taxes that Amazon automatically calculates, collects, and remits to a taxing authority according to applicable law.  Amazon holds back funds in the Amazon Seller Account for future returns, credit card chargebacks and other deductions (the "Amazon Seller Account Fees").  The net proceeds, after the deduction of fees, chargebacks, and any holdbacks, are remitted by Amazon to the Debtors, typically every ten (10) to fourteen (14) days.  For accounting purposes, the Debtors first

record both the primary transaction between the customer and Amazon and any fees incurred to Amazon in accordance with the sale. The Debtors then "net" the difference of the two transactions on their books and records to properly account for the proceeds from each sale.

10.     In 2023, Amazon deducted approximately $14.3 million per month from the Debtors' gross Amazon Store sale revenue on account of refunds, commission, and other related obligations under the Amazon Seller Fees. Due to the number of accounts, the varying holdback timings, and the fact that Amazon handles the accounting for the holdback, it is difficult for the Debtors to precisely estimate the amount that Amazon has not yet deducted from the prepetition period on account of the Amazon Seller Account Fees. Due to the remittance payment system by which Amazon deducts fees and holds back funds from the Debtors' sale proceeds, the Debtors do not believe that there are any prepetition cash outlays outstanding to Amazon on account of the Amazon Seller Account Fees.

11.     The Debtors are contractually obligated to allow Amazon to reserve for Amazon Seller Account Fees in the ordinary course of business. If the Debtors are prevented from honoring their contractual relationship with Amazon and further prevented from allowing Amazon to hold back the Amazon Seller Account Fees it is owed, the Debtors may be unable to list their products on the Amazon Store. Any interruption in the Debtors' ability to sell products on the Amazon Store would severely affect the Debtors' business. The Amazon Store is highly competitive, and any interruption could lead to the Debtors' products losing market share to competing products.

12.     Failure to authorize the Debtors to continue to incur Amazon Seller Account Fees and thus maintain their Amazon Seller Accounts would severely harm the Debtors' businesses and could cause the Debtors to be delisted from the selling platform that accounts for the vast majority of the Debtors' gross sales. Accordingly, the Debtors request authority (i) to continue their

contractual arrangement with Amazon in the ordinary course, including with respect to the Amazon Seller Account Fees, (ii) to satisfy any prepetition amounts due and owing to Amazon on account of Amazon Seller Account Fees as of the Petition Date via deduction from the Amazon Seller Account or otherwise in the ordinary course, and (iii) to pay any postpetition amounts incurred in the ordinary course of business relating to the Amazon Seller Account Fees consistent with past practice.

**II.**   **"Fulfillment by Amazon": The FBA Program.**

13.      The FBA Program is a program offered by Amazon that allows sellers to outsource warehouse storage and order fulfillment to Amazon.  Amazon assists third-party sellers, including the Debtors, with each step of the order fulfillment process from order receipt and storage of inventory to shipment and delivery to customers.  Amazon also processes purchase returns and remits corresponding credits to customers.



14.     The FBA Program starts with Amazon receiving the Debtors' inventory at various FBA fulfillment centers where inventory is stored and shipped.  Sellers who use the FBA Program store their products in Amazon's warehouses or "fulfillment centers."  Amazon "picks, packs, and ships" each purchase order for products stored in its fulfillment centers and handles any returns or customer service requests on account of any order for the seller.  Inventory stored with Amazon pursuant to the FBA Program is also eligible for the Amazon Store's beloved "two day shipping" offering.

15.     To properly track and manage the volume of inventory across multiple fulfillment centers, Amazon provides sellers with inventory management systems that track products from receipt at the fulfillment center to shipment to the customer.  When a seller elects to use the FBA Program through an interface on the seller's Amazon Seller Account, Amazon automatically inserts the seller's inventory data into Amazon's inventory management system and forecasts customer demand to set optimum inventory levels for each seller.  Amazon's inventory system assists sellers in navigating common issues sellers face when storing inventory, including, among others, excess inventory, low stock levels, stranded or dead stock, spoilage, and high storage costs. Sellers can manage these issues with a suite of inventory management tools within their Amazon Seller Account.  Amazon sends alerts when inventory is running low, aging, or spoiling, and alerts the seller to other recommended actions to optimize storage and manage inventory.  In the e-commerce industry, spoilage of inventory and high inventory storage costs are two significant challenges for sellers, so the inventory services provided by the FBA Program are crucial in running the Debtors' businesses.

16.     Inventory shipped from fulfillment centers typically flows through Amazon's sortation centers and delivery stations before eventually reaching a customer.  At each sortation

center, Amazon sorts customer orders by final destination and consolidates them onto trucks for faster delivery. Amazon delivery stations prepare orders for "last mile" delivery to ensure that packages are delivered correctly and on time. Today, Amazon operates more than 400 fulfillment centers, 150 sortation centers, and over 1,000 delivery stations worldwide.

17.     The Debtors use the FBA Program for packaging, inventory, storage, and order fulfillment. In exchange for the Debtors' access to the FBA Program, Amazon charges distribution fees and FBA Program participation fees. Distribution fees are incurred on each product sold by the Debtors on a per-unit basis. Sellers incur FBA Program participation fees on account of storing goods at the Amazon fulfillment centers. FBA Program participation fees are calculated using the daily average volume for the space the inventory occupies in Amazon fulfillment centers. The volume measurement is based on unit size when properly packaged and ready to ship, and may fluctuate depending on the time of year. The Debtors may also incur long-term storage fees as part of the FBA Program if inventory sits in an Amazon warehouse for an extended period of time. Like the Amazon Seller Account Fees, the majority of fees incurred in relation to the FBA Program are held back from the Debtors' Amazon proceeds prior to the remittance of the proceeds to the Debtors. The remaining fees paid pursuant to the FBA Program are invoiced or prepaid prior to shipment.

18.     Continued and uninterrupted enrollment in the FBA Program is essential to the Debtors' business operations. Without the inventory management controls provided by the FBA Program, the Debtors would incur burdensome inventory costs for spoilage, over-buying, and other warehousing fees and would be unable to ship products to customers. The Debtors would also need to obtain alternative storage solutions for their inventory, which would be administratively cumbersome and extraordinarily expensive to accomplish on a short timeline.

19.     In 2023, Amazon deducted approximately $21.4 million per month from the Debtors' gross Amazon Store sale revenue on account of storage fees, fulfillment and delivery fees, and other obligations under the FBA Program.  Due to the timing of Amazon's remittance of sale proceeds to the Debtors, it is difficult for the Debtors to precisely estimate the prepetition amount owing on account of the FBA Program.  The only cash outlay owed pursuant to the FBA Program as of the Petition Date is on account of certain freight forwarding fees related to the FBA Program.  The Debtors have requested authority to pay such prepetition obligations and any similar ordinary course postpetition obligations under the Vendors Motion.[3]  Notwithstanding such obligations, due to remittance payment system by which Amazon deducts fees and holds back funds from the Debtors' Amazon Seller Account, the Debtors do not believe that there are any additional prepetition outlays associated with the FBA Program.  Nevertheless, out of an abundance of caution and to the extent any obligations related to the FBA Program are not addressed pursuant to the Vendors Motion, the Debtors seek relief to satisfy such obligations herein via deduction from the seller account or otherwise, in the ordinary course.

20.     Failure to administer the FBA Program in the ordinary course would be detrimental to the Debtors' businesses as any interruption of the services thereunder would impede the Debtors from maintaining inventory and timely shipping products to customers.  Accordingly, the Debtors request authority (i) to continue their contractual arrangement with Amazon in the ordinary course, including with respect to the FBA Program, (ii) to satisfy via deduction from the Amazon Seller Account or otherwise in the ordinary course any prepetition amounts due and owing to Amazon

---

[3]   *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Lien Claimants, (B) Foreign Vendors, (C) 503(b)(9) Claimants, and (D) Critical Vendors and (II) Confirming Administrative Expense Priority of Outstanding Order*s (the "Vendors Motion"), filed contemporaneously herewith.

on account of the FBA Program as of the Petition Date, and (iii) to pay any postpetition amounts incurred in the ordinary course of business relating to the FBA Program consistent with past practice.

### III.   Amazon Advertising Program.

21.     As described in the Debtors' Customer Programs Motion,[4] the Debtors engage in a variety of marketing, promotional, and advertising campaigns that drive sales of, and interest in, the Debtors' products.  Approximately 95% of the Debtors' marketing budget is spent on Amazon advertisements and marketing initiatives or third-party marketing initiatives that drive web traffic to the Amazon Store.  Amazon allows sellers to post online advertisements, target specific keywords in sponsored product advertisements, run video advertisements, run promotions, and target potential customers with discounts or offers to encourage sales of the sellers' products on the Amazon Store.  Amazon's affiliate program also allows sellers to partner with social media influencers who then promote the sellers' products through the influencer's channels.  In the ordinary course of business, the Debtors either pay costs associated with the Amazon Advertising Program automatically through their credit cards or through an invoice from Amazon the following month.[5]  Payment under the Amazon Advertising Program is the only Amazon Service that is solely paid through cash outlays.

---

[4]     *Debtors Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Maintain and Administer Their Existing Customer Programs and (II) Honor Certain Prepetition Obligations Related Thereto* (the "Customer Programs Motion"), filed contemporaneously herewith.

[5]     A description of the Debtors' credit card program and a request for authorization to pay all obligations thereunder (including the associated costs) is included in *Debtors Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue to Operate Their Cash Management System, (II) Honor Certain Prepetition Obligations Related Thereto, (III) Maintain Existing Business Forms, and (IV) Perform Intercompany Transactions* (the "Cash Management Motion"), filed contemporaneously herewith.

22.    The Debtors rely on the Amazon Advertising Program to market their products and reach new customers on the Amazon Store.  The Amazon Store marketplace and the e-commerce industry are extremely competitive.  A robust marketing scheme through multiple online and social media channels is required to successfully reach new customers, maintain relationships with existing customers, and sell products.  The Debtors obtain approximately 50% of their total sales through some form of advertising, which is a critical part of the business.  The marketing scheme is highly effective because it is conducted through the Amazon Store.  Additionally, the advertising initiatives are heavily monitored by the Debtors in the ordinary course via sales measurements using a return-on-investment basis and strict advertising budgets based on sales targets.  Failure to obtain the services provided by the Amazon Advertising Program would decrease visibility of the Debtors' products to customers, lead to a decline in product sales, and harm the Debtors' estates.

23.    On average, the Debtors pay approximately $6.28 million each month in connection with the Amazon Advertising Program.  As of the Petition Date, the Debtors estimate that they owe approximately $3.73 million in prepetition amounts to Amazon in connection with the Amazon Advertising Program.  The Debtors have requested authority to pay obligations associated with the Amazon Advertising Program incurred through their credit cards in the Cash Management Motion and authority to pay other invoiced costs on account of the Amazon Advertising Program in the Customer Programs Motion.  Nevertheless, out of an abundance of caution, to the extent any obligations related to the Amazon Advertising Program are not addressed pursuant to the Customer Programs Motion or Cash Management Motion, the Debtors seek relief to pay such obligations herein.

24.    Failure to maintain the Amazon Advertising Program would decrease product visibility on the highly competitive e-commerce marketplace, severely hindering the Debtors'

ability to sell products on Amazon and therefore generate revenue.  Accordingly, to the extent not

otherwise covered or by the Cash Management Motion or Customer Programs Motion, the Debtors

request authority (i) to continue their contractual arrangement with Amazon in the ordinary course,

including with respect to the Amazon Advertising Program, (ii) to satisfy any prepetition amounts

due and owing to Amazon on account on the Amazon Advertising Program as of the Petition Date

via deduction from the Amazon Seller Account or otherwise in the ordinary course, and (iii) to pay

any postpetition obligations incurred pursuant to the Amazon Advertising Program during the

pendency of these chapter 11 cases in the ordinary course of business consistent with past practice.

### Basis for Relief

**I.     The Amazon Services Are Essential to the Debtors' Ongoing Business Operations and Restructuring Efforts.**

25.     The Court should grant the relief requested herein because the Amazon Services

are fundamental to the long-term viability of the Debtors' business.  Any interruption of the

Amazon Services would cause irreparable harm to the Debtors' business.  By this Motion, the

Debtors request the Court's acknowledgement that the Amazon Services are permitted pursuant to

section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use

property of the estate in the ordinary course of business without notice or a hearing."

section 363(c)(1) of the Bankruptcy Code addresses the inefficiencies that would arise should a

debtor be required to seek court approval for every action it takes in the ordinary course of

business.  The Debtors' businesses are predicated on maintaining their relationship with Amazon,

and accordingly, the Debtors request that the Court grant the authority for the Debtors to continue

utilizing the Amazon Services in the ordinary course of business.

**II.   The Court Should Authorize the Debtors to Honor All Obligations Related to the Amazon Services.**

26.     Courts have authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.   *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to pay certain prepetition claims); *see also In re Windstream Holdings Inc.*, 614 B.R. 441, 456–57 (S.D.N.Y. 2020) (same); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

27.     The Court may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a), bankruptcy courts may "authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor." *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999).  Specifically, a bankruptcy court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See Ionosphere*, 98 B.R. at 175 ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

28.     Courts have long recognized the "doctrine of necessity" or the "necessity of payment" rule.  See id. at 174–75.  Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor's reorganization case—is "the paramount policy and goal of

[c]hapter 11."  *Id.* at 176; *see also Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization").

29.    While the Debtors do not believe that the Amazon Services are outside of the ordinary course of business, out of an abundance of caution, the Debtors seek the relief herein as necessary and appropriate under the circumstances.  Without access to the Amazon Services, the Debtors would lose the primary channel in which the Debtors sell, ship, and market products to customers.  Losing such services would have a devastating effect on the Debtors' estates and their ability to generate revenue.  Accordingly, the Debtors request authority to satisfy any prepetition obligations, including fees and charges owed to Amazon in connection with prepetition sales that have not yet been deducted from the Amazon Seller Accounts, and honor all postpetition obligations arising in the ordinary course of business related to the Amazon Services.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

30.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

31.     Bankruptcy Rule 6003 empowers a court to grant relief within the first
twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid
immediate and irreparable harm." Fed. R. Bankr. P. 6003. As set forth in this Motion, the Debtors
believe an immediate and orderly transition into chapter 11 is critical to the viability of their
operations and that any delay in granting the relief requested could hinder the Debtors' operations
and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first
thirty (30) days of these chapter 11 cases would severely disrupt the Debtors' operations at this
critical juncture. Maintaining the Amazon Services is vital to a smooth transition into chapter 11.
Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm"
standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

32.     To implement the foregoing successfully, the Debtors seek a waiver of the notice
requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use,
sale, or lease of property under Bankruptcy Rule 6004(h).

## Waiver of Memorandum of Law

33.     The Debtors respectfully request that the Court waive the requirement to file a
separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon
which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

34.     Nothing contained in this Motion or any order granting the relief requested in this
Motion, and no action taken pursuant to the relief requested or granted (including any payment
made in accordance with any such order), is intended as or shall be construed or deemed to
be: (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the

Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the

Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise

or requirement to pay any particular claim; (d) an implication, admission or finding that any

particular claim is an administrative expense claim, other priority claim or otherwise of a type

specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a

request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to

section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or

perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors

or any other party in interest against any person or entity under the Bankruptcy Code or any other

applicable law.

## No Prior Request

35.    No prior request for the relief sought in this Motion has been made to this or any

other court.

## Notice

36.    The Debtors will provide notice of this Motion to the following parties and/or their

respective counsel, as applicable:  (a) the Office of the United States Trustee for the District of

New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) Gibson,

Dunn & Crutcher LLP, as counsel to the Ad Hoc Group; (d) counsel to Administrative Agent under

the Revolving Credit Facility; (e) the United States Attorney's Office for the District of New

Jersey; (f) the Internal Revenue Service; (g) the attorneys general in the states where the Debtors

conduct their business operations; (h) the U.S. Securities and Exchange Commission; (i) the Cash

Management Banks; (j) Amazon; and (k) any party that has requested notice pursuant to

16

Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no

other or further notice need be given.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order

and Final Order, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** respectively,

and granting such other relief as is just and proper.

Dated: February 28, 2024

/s/ *Michael D. Sirota*
—————————————————————
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
          wusatine@coleschotz.com
          fyudkin@coleschotz.com
          jfrumkin@coleschotz.com


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

## Exhibit A

### Proposed Interim Order

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

### INTERIM ORDER AUTHORIZING THE
### DEBTORS TO (I) CONTINUE UTILIZING AMAZON
### SERVICES IN THE ORDINARY COURSE OF BUSINESS
### AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO

The relief set forth on the following pages, numbered three (3) through seven (7), is **ORDERED**.

---

[1]    The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

Upon the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue Utilizing Amazon Services in the Ordinary Course of Business and (II) Honor Any Obligations with Respect Thereto* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), authorizing the Debtors to: (a) continue utilizing the Amazon Services; (b) honor any obligations with respect thereto; and (c) schedule a final hearing (the "Final Hearing") to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

2.      The Final Hearing on the Motion will be held on _____, **2024 at** _____ (**prevailing Eastern Time**).  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtors' proposed counsel on or before _____, **2024 at 4:00 p.m. (prevailing Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized to (a) continue utilizing the Amazon Services in the ordinary course of business and (b) honor any obligations with respect thereto, including by allowing Amazon to collect, in the ordinary course, any fees and charges it is owed regardless of whether such charges relate to prepetition or postpetition sales by the Debtors.

4.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

5.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim

(Page | 5)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

6.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

7.     Before making any cash outlays for the prepetition Amazon Services, the Debtors shall provide three (3) business days' notice to the U.S. Trustee and any official committees appointed in these cases.

8.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting*

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

*Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

9.      The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

13.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

14.     The Debtors shall serve a copy of this Interim Order on all required parties pursuant to Local Rule 9013-5(f).

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

(Page | 7)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## **Exhibit B**

## **Proposed Final Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>THRASIO HOLDINGS, INC., *et al.*,<br><br>                                    Debtors.[1] | Chapter 11<br><br>Case No. 24-11840 (CMG)<br><br>(Joint Administration Requested) |

## FINAL ORDER AUTHORIZING THE
## DEBTORS TO (I) CONTINUE UTILIZING AMAZON
## SERVICES IN THE ORDINARY COURSE OF BUSINESS
## AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO

The relief set forth on the following pages, numbered three (3) through six (6), is

**ORDERED**.

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

Upon the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue Utilizing Amazon Services in the Ordinary Course of Business and (II) Honor Any Obligations with Respect Thereto* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), authorizing the Debtors to:  (a) continue utilizing the Amazon Services and (b) honor any obligations with respect thereto, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized to (a) continue utilizing the Amazon Services in the ordinary course of business and (b) honor any obligations with respect thereto, including by allowing Amazon to collect, in the ordinary course, any fees and charges it is owed regardless of whether such charges relate to prepetition or postpetition sales by the Debtors.

3.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

4.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties

(Page | 5)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

5.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

6.      Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE UTILIZING AMAZON SERVICES IN THE ORDINARY COURSE OF BUSINESS AND (II) HONOR ANY OBLIGATIONS WITH RESPECT THERETO |

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

9.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.