**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]     The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio.  The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**DEBTORS' MOTION FOR
ENTRY OF INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTORS
TO (I) MAINTAIN INSURANCE AND SURETY
COVERAGE ENTERED INTO PREPETITION AND PAY
RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO
PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY,
OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO
NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):[2]

**Relief Requested**

1.    The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"),

authorizing the Debtors to: (a) maintain insurance and surety coverage entered into prepetition and

pay related prepetition obligations; (b) continue to pay certain brokerage fees; (c) renew,

supplement, modify, or purchase insurance and surety coverage in the ordinary course; and

(d) enter into new financing agreements in the ordinary course of business.  In addition, the Debtors

request that the Court schedule a final hearing within approximately thirty (30) days after the

commencement of these chapter 11 cases to consider entry of the Final Order.

**Jurisdiction and Venue**

2.    The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of

---

[2]    A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the
Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Josh Burke, Chief Financial Officer
of Thrasio Holdings, Inc., in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously
with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code
(the "Bankruptcy Code"), on February 28, 2024 (the "Petition Date").  Capitalized terms used but not otherwise
defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The bases for the relief requested herein are sections 105(a), 363, and 1112 of the Bankruptcy Code, rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1 and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

5.        On the Petition Date, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## The Debtors' Insurance Policies and Related Payment Obligations

6.        In the ordinary course of business, the Debtors maintain approximately thirty (30) insurance policies (collectively, the "Insurance Policies") that are administered by various third-party insurance carriers (collectively, the "Insurance Carriers"), as well as two (2) surety bonds (the "Surety Bonds") by American Alternative Insurance Corporation c/o Roanoke Insurance Group Inc. ("Roanoke") and Intact Insurance Group ("Intact") brokered by Marsh USA Inc. ("Marsh," and together with Roanoke and Intact, the "Sureties"). The Insurance Policies provide coverage for, among other things, the Debtors' products liability, general liability,

umbrella liability, property, marine, stock throughput, employed lawyers, directors' and officers' liability, employment practices liability, business travel, fiduciary liability, crime, and cyber.  All of the Insurance Policies are essential to the ongoing operation of the Debtors' businesses. The aggregate annual premium for the Insurance Policies is approximately $4.7 million including applicable taxes, surcharges, and Broker Fees (as defined below).  A list of the Insurance Policies is attached hereto as **Exhibit C** and incorporated herein by reference.[3]  In addition to the Insurance Policies, the Debtors maintain several workers' compensation policies that are not reflected in **Exhibit C** and for which relief is not sought in this Motion.[4]

7.      As of the Petition Date, the Debtors estimate that there are no outstanding premiums on account of the Insurance Policies.  Nevertheless, out of the abundance of caution, the Debtors seek authority to satisfy any prepetition amounts outstanding or any amounts that arise in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies. Further, the Debtors may need to renew certain Insurance Policies that expire during the pendency of these chapter 11 cases and incur corresponding premium payments for renewal.  The Debtors seek authority to pay any prepetition obligations owing on account of the Insurance Policies, renew and maintain such Insurance Policies and make such premium payments on a postpetition basis in the ordinary course of business when they come due.

---

[3]     The descriptions of the Insurance Policies set forth in this Motion constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the description in this Motion.  The Debtors request authority to honor obligations and renew all Insurance Policies, as applicable, regardless of whether the Debtors inadvertently fail to include a particular Insurance Policy on **Exhibit C** attached hereto.

[4]     In addition to the Insurance Policies listed on **Exhibit C** attached to the Motion, the Debtors maintain numerous insurance policies with respect to, among other things, workers' compensation, employee health, dental, disability, and life insurance benefits.  These policies are described, and relief is requested with respect to the policies, in the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (II) Continue Employee Benefits Programs* filed contemporaneously herewith.

## I.    Insurance Deductibles and Self-Insured Retentions.

8.      Under certain Insurance Policies, the Debtors are required to pay various deductibles (the "Insurance Deductibles") or self-insured retentions (the "Self-Insured Retentions").  Generally, if a claim is made against the Insurance Policies that is subject to an Insurance Deductible, the Debtors' applicable insurance carrier will administer the claim and make payments in connection therewith, then invoice the Debtors for any Insurance Deductibles.  When a policy is subject to a deductible, a compensable claim is typically assessed from dollar one, then the deductible is subtracted from the claim.  A Self-Insured Retention is the required portion of the insured claim to be paid or incurred by the Debtors before the insurance policy will be affected, and is a condition precedent to coverage for payment of the portion of a loss in excess of the Self-Insured Retentions.

9.      The Insurance Carriers may have prepetition claims against the Debtors due to the prepetition payment of the claims without a corresponding Insurance Deductible.  As of the Petition Date, the Debtors do not believe that they owe any amounts to Insurance Carriers relating to Insurance Deductibles or Self-Insured Retentions.  Nevertheless, out of the abundance of caution, the Debtors seek authority to satisfy any prepetition amounts outstanding or that arise in the ordinary course of business in connection with the Insurance Deductibles and Self-Insured Retentions.

## II.    Financing Agreement.

10.     It is common for companies in the Debtors' industry to finance insurance policies through borrowing from a third-party lender.  Seventeen (17) of the Debtors' Insurance Policies are financed through a premium financing agreement with AFCO Acceptance Corporation, dated as of March 9, 2023 (the "Financing Agreement") attached hereto as **Exhibit D**.  Pursuant to the Financing Agreement, the Debtors are required to pay nine monthly installments of approximately

$204,000 each, which began in March 2023.  The aggregate annual premium for the Insurance Policies financed under the Financing Agreement is approximately $2.1 million, including applicable taxes and surcharges, with an interest rate of approximately 7.2 percent.  The Debtors estimate that, as of the Petition Date, there is no outstanding balance due on account of the Financing Agreement.  Nevertheless, out of an abundance of caution, the Debtors seek the authority to honor any prepetition amounts outstanding under the terms of the Financing Agreement and to pay any amounts owing thereunder in the ordinary course of business during the administration of these chapter 11 cases.  Furthermore, the Debtors seek authority to enter into new Financing Agreements or new non-financed Insurance Policies, as necessary or appropriate in the ordinary course of business.

11.     Continuation of the Insurance Policies and the Financing Agreement, and the ability to enter into new insurance policies, is essential to the preservation of the value of the Debtors' businesses and operations.  Moreover, in many instances, insurance coverage is required by the regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities, including the requirement by the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of these chapter 11 cases.  Accordingly, the Debtors seek authorization to maintain and renew their existing Insurance Policies and the Financing Agreement, pay prepetition obligations related thereto, and enter into new insurance policies and financing agreements in the ordinary course of business.

### **The Debtors' Surety Bonds**

12.     In the ordinary course of business, the Debtors maintain two (2) Surety Bonds.  A schedule of the Surety Bonds currently maintained by the Debtors is attached hereto as **Exhibit E**

and incorporated herein by reference.[5]  The Surety Bonds are issued for the benefit of the United States Customs and Border Protection Agency ("U.S. Customs") to guarantee the Debtors' obligations to pay any applicable duties, taxes, and fees on account of their imports.  Maintaining the Surety Bonds is necessary for the operation of the Debtors' businesses so that the Debtors may remain in compliance with certain obligations in relation to U.S. Customs.

13.     The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment from the Debtors to the Sureties.  Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal.  To that end, the Sureties required the Debtors to issue two letters of credit (the "Letters of Credit") in the aggregate amount of $2.9 million and provide $2 million of cash collateral to support their current and expired Surety Bonds and effectively indemnify the Sureties from any loss, cost, or expense it may incur on account of the issuance of the current or expired Surety Bonds.  The Debtors maintain Letters of Credit to support expired surety bonds if the period remains under investigation.  As of the Petition Date, the Debtors do not believe that they owe any amounts to the Sureties under the Letters of Credit and the Surety Bonds.

14.     To continue their business operations during these chapter 11 cases, the Debtors must be able to maintain the Letters of Credit to provide financial assurance to the Sureties.  Such Letters of Credit are required for the Debtors to maintain their Surety Bonds.  Accordingly, the Debtors request authority to pay any prepetition obligations owed on account of the Surety Bonds, maintain and renew the Surety Bonds and Letters of Credit in the ordinary course of business,

---

[5]    The descriptions of the Surety Bond set forth in this Motion constitute a summary only.  The actual terms of the Surety Bond and related agreements will govern in the event of any inconsistency with the description in this Motion.  The Debtors request relief with respect to all Surety Bonds, regardless of whether the Debtors inadvertently fail to include a particular Surety Bond on **Exhibit E**.

enter into any Surety Bonds or Letters of Credit in the ordinary course of business, and continue

to pay such obligations postpetition as they come due in the ordinary course of business to maintain

uninterrupted coverage thereunder.

### The Debtors' Insurance and Surety Brokers

15.     The Debtors retain the services of insurance and surety brokers to help manage their

portfolios of risk.  The Debtors obtain all of their Insurance Policies through Marsh and their Surety

Bonds through Marsh and Flexport Inc. (collectively, the "Brokers").  The Brokers, among other

things, (a) assist the Debtors in obtaining comprehensive insurance and surety coverage for their

operations in a cost-effective manner, (b) manage renewal data, (c) market the Insurance Policies,

(d) provide all interactions with carriers, including negotiating policy terms, provisions, and

premiums, and (e) provide ongoing support throughout the applicable policy periods.  In exchange

for these services, the Brokers earn a brokers' commission or brokerage fee, as applicable

(collectively, the "Broker Fees"), covered by each respective Insurance Carrier or Surety.

16.     The Debtors do not believe there are any Broker Fees due and owing as of the

Petition Date.  Nevertheless, out of the abundance of caution, the Debtors seek the authority to

honor any prepetition amounts outstanding with respect to the Broker Fees and to pay any amounts

owing thereunder in the ordinary course of business during the administration of these chapter 11

cases to ensure uninterrupted coverage under the Insurance Policies and the Surety Bond.

### Basis for Relief

**A.      Continuation of the Insurance Policies and the Surety Bonds Is Required by the Bankruptcy Code and U.S. Trustee Guidelines.**

17.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain

appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory

conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many

instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee Guidelines"). Accordingly, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all obligations related to the Insurance Policies and the Surety Bonds (as applicable) and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies and Surety Bonds as needed, in their judgment, without further order of the Court.

**B.      The Debtors Should Be Authorized to Satisfy Prepetition Obligations Required Under the Insurance Policies, the Financing Agreement, the Surety Bonds, and Letters of Credit and to Continue Honoring Such Obligations Postpetition.**

18.      The relief requested herein is essential to the Debtors' continuation of ordinary course operations and, as such, is warranted under sections 105(a) and 363 of the Bankruptcy Code. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a [b]ankruptcy [c]ourt to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363 of the Bankruptcy Code support the payment of prepetition claims.

19.      Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1). The Debtors submit that obligations on account of the Insurance Policies, the Financing Agreement, the Surety Bond, and

Letters of Credit are within the ordinary course of business and thus may be continued in the Debtors' discretion under section 363(c)(1) of the Bankruptcy Code.  In the alternative, "[t]he [debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" *Id.* § 363(b)(1).  This provision grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists.  *See Ionosphere Clubs*, 98 B.R. at 175.  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *The Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

20.     Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, pursuant to the doctrine of necessity.  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994)

10

(explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). At least one court has recognized that there are instances when a debtor's fiduciary duty "can only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court may grant the relief requested herein.

21. The doctrine of necessity is satisfied here. The nature of the Debtors' business and these chapter 11 cases render it essential for the Debtors to maintain their Insurance Policies, Financing Agreement, and Surety Bonds and corresponding Letters of Credit, as applicable, on an ongoing and uninterrupted basis. The non-payment of any premiums, deductibles, or related fees under the Insurance Policies, Financing Agreement, or Surety Bonds, as applicable, could result in one or more of the Insurance Carriers or the Sureties terminating or declining to renew the Insurance Policies or Surety Bonds or refusing to enter into new insurance policies, premium financing agreements, or surety bonds with the Debtors. If any of the Insurance Policies, the Financing Agreement, or the Surety Bonds lapse without renewal, the Debtors could be exposed to substantial liability or property damages, to the detriment of all parties in interest.

22. Specifically, payment of prepetition premiums and amounts owing under the Financing Agreement as well as flexibility to enter into new premium financing agreements is necessary and appropriate and may be authorized under sections 105(a) and 363 of the Bankruptcy Code. In light of the Debtors' financial circumstances, alternative insurance premium finance

companies may not be willing to provide insurance premium financing to the Debtors on attractive

market terms on a postpetition basis.  As a result, it is critical for the Debtors to continue to perform

under their existing Financing Agreement and to have the flexibility to enter into new premium

financing agreements in the ordinary course of business.

23.     Maintenance of the Surety Bonds is also necessary to maintain the Debtors' current

business operations and avoid severe disruption at this critical juncture in these chapter 11 cases.

Based on the Debtors' current circumstances, it is not likely that the Debtors will be able to renew,

or obtain replacement of, existing bonds on terms more favorable than those offered by the

Sureties.  In short, failure to maintain the Insurance Policies, Financing Agreement, and Surety

Bonds could have a detrimental impact on the Debtors' business and the value of their estates.

24.     Further, the continued retention of the Brokers allows the Debtors and their

employees to focus on their core operational matters.  The Debtors are not well-suited to bring the

services provided by the Brokers in-house.  If the Debtors fail to make timely payments to the

Brokers, the Debtors may lose access to the Brokers' valuable services, disrupting management to

the detriment of all stakeholders.  Accordingly, the Debtors submit that the requirements of

section 363 of the Bankruptcy Code are satisfied.

25.     Accordingly, the Debtors seek authority to continue, amend, supplement, and

extend their existing Insurance Policies, Financing Agreement, Surety Bonds, and corresponding

Letters of Credit and purchase new Insurance Policies and Surety Bonds and enter into new

premium financing agreements and letters of credit in the ordinary course of business.  As noted

above, continuation of the Insurance Policies, Financing Agreement, Surety Bonds, and Letters of

Credit is essential to continuing uninterrupted operations during these chapter 11 cases and

preserving the value of the Debtors' business, properties, and assets of the estates.  The Insurance

Policies and Surety Bonds protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events. Moreover, in some cases, maintenance of insurance and surety coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the U.S. Trustee's requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, in the event any of the Insurance Policies or Surety Bonds lapse or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage or surety bonds on a postpetition basis in the ordinary course of business.

26.     Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363 of the Bankruptcy Code. *See, e.g.*, *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (authorizing debtors to continue their insurance policies and surety bond program on an interim basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (authorizing debtors to continue their insurance policies and surety bond program on a final basis); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Nov. 20, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (same). [6]

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

27.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

28.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first thirty (30) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Maintaining the Debtors' Insurance Policies, Financing Agreement, and Surety Bonds and corresponding Letters of Credit is vital to a smooth transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

29.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Waiver of Memorandum of Law**

30.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

**Reservation of Rights**

31.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

**No Prior Request**

32.     No prior request for the relief sought in this motion has been made to this or any other court.

## **Notice**

33.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the Office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc Group; (d) counsel to the Administrative Agent under the Revolving Credit Facility; (e) the United States Attorney's Office for the District of New Jersey; (f) the Internal Revenue Service; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) the U.S. Securities and Exchange Commission; (i) the Insurance Carriers; (j) the Sureties; (k) the Brokers; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper under the circumstances.

Dated: February 28, 2024

_/s/ Michael D. Sirota_

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
          wusatine@coleschotz.com
          fyudkin@coleschotz.com
          jfrumkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (_pro hac vice_ pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (_pro hac vice_ pending)
Francis Petrie (_pro hac vice_ pending)
Evan Swager (_pro hac vice_ pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

_Proposed Co-Counsel to the Debtors and_
_Debtors in Possession_

## <u>Exhibit A</u>

**Proposed Interim Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

# INTERIM ORDER
## AUTHORIZING THE DEBTORS
## TO (I) MAINTAIN INSURANCE AND SURETY
## COVERAGE ENTERED INTO PREPETITION AND PAY
## RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO
## PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY,
## OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO
## NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

Upon the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, (II) Continue to Pay Certain Brokerage Fees, (III) Renew, Supplement, Modify or Purchase Insurance and Surety Coverage, and (IV) Enter into New Financing Agreements in the Ordinary Course of Business* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Interim Order"), (i) authorizing the Debtors to (a) maintain insurance and surety coverage entered into prepetition and pay related prepetition obligations, (b) continue to pay certain brokerage fees, (c) renew, supplement, modify, or purchase insurance and surety coverage, (d) enter into new financing agreements in the ordinary course of business, and (ii) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court; and this Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings

had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS**

**HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____, 2024 at _____

**(prevailing Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served

so as to be actually received by the Debtors' proposed counsel on or before _____,

**2024 at 4:00 p.m. (Eastern Time)**.  If no objections are filed to the Motion, the Court may enter

an order approving the relief requested in the Motion on a final basis without further notice or

hearing.

3.      The Debtors shall serve a copy of the Motion and this Interim Order on each

Insurance Carrier and Surety listed on Exhibit C and Exhibit E to the Motion within

two (2) business days after the date this Interim Order is entered.

4.      The Debtors are authorized and in each case in accordance with the ordinary course

of business and this Interim Order, to:

(a)      continue the Insurance Policies, including without limitation those Insurance Policies identified on Exhibit C to the Motion, and pay any prepetition or postpetition obligations related to the Insurance Policies, including any amounts owed on account of the Insurance Deductibles and Self-Insured Retentions, the

(Page | 5)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

insurance premiums, and amounts owed to the Brokers under the Insurance Policies, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(b)     continue to honor the terms of the Financing Agreement identified on <u>Exhibit D</u> to the Motion and pay premiums thereunder;

(c)     maintain the Surety Bonds and Letters of Credit, including without limitation the Surety Bonds identified on <u>Exhibit E</u> to the Motion, without interruption, including the payment of premiums, performance under any indemnity agreement (including posting collateral as security), provision of additional or new surety bonds or letters of credit to third parties to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries, and to take all appropriate actions in connection therewith, including providing any cash collateral, and execution of other agreements in connection with the Surety Bonds and Letters of Credit, and pay any prepetition or postpetition obligations related to the Surety Bonds and Letters of Credit, including any amounts owed to the Brokers, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases; and

(d)     renew, amend, supplement, extend, or purchase insurance policies, and surety bonds in the ordinary course of business to the extent that the Debtors determine that such action is in the best interest of their estates;

*provided* that, with respect to paragraph 4(a)–(d) above, nothing in this Interim Order authorizes the Debtors to pay any amounts before such amounts are due, including, but not limited to, amounts related to the Insurance Policies, the Financing Agreement, and the Surety Bonds.

5.     Any new financing agreement must be brought pursuant to section 364 of the Bankruptcy Court and approved by the Court.

6.     Notwithstanding anything to the contrary in the Motion or this Interim Order, the Debtors are not authorized to take any action with respect to a Surety Bond that would have

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

the effect of transforming a prepetition undersecured or unsecured obligation into a postpetition or secured obligation. Such relief may be sought by separate motion, which may be heard on an expedited basis.

7. To the extent the Debtors subsequently become aware of additional Insurance Policies or Surety Bonds that have not previously been disclosed, or to the extent the Debtors enter into new or renew any Insurance Policies or Surety Bonds, the Debtors shall disclose these Insurance Policies or Surety Bonds to the Ad Hoc Group, the U.S. Trustee, and any official committees appointed in these chapter 11 cases.

8. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

9. Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's

(Page | 7)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

10.    The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the Insurance Policies, the Financing Agreement, the Surety Bonds, and/or the Letters of Credit to the extent payment thereof is authorized pursuant to the relief granted herein and to the extent authorized by this Interim Order.

11.    Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in

(Page | 8)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

12.     The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003.

13.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

(Page | 9)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

17.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

18.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

19.     The Debtors shall serve a copy of this Interim Order on all required parties pursuant to Local Rule 9013-5(f).

20.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## **Exhibit B**

**Proposed Final Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al*., | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

## FINAL ORDER
## AUTHORIZING THE DEBTORS
## TO (I) MAINTAIN INSURANCE AND SURETY
## COVERAGE ENTERED INTO PREPETITION AND PAY
## RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO
## PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY,
## OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO
## NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS

The relief set forth on the following pages, numbered three (3) through eight (8), is

**ORDERED**.

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio.  The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

Upon the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Maintain Insurance and Surety Coverage Entered into Prepetition and Pay Related Prepetition Obligations, (II) Continue to Pay Certain Brokerage Fees, (III) Renew, Supplement, Modify or Purchase Insurance and Surety Coverage, and (IV) Enter into New Financing Agreements in the Ordinary Course of Business* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (i) authorizing the Debtors to (a) maintain insurance and surety coverage entered into prepetition and pay related prepetition obligations, (b) continue to pay certain brokerage fees, (c) renew, supplement, modify, or purchase insurance and surety coverage in the ordinary course, and (d) enter into new financing agreements in the ordinary course of business, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.    The Motion is **GRANTED** on a final basis as set forth herein.

2.    The Debtors shall serve a copy of the Motion and this Final Order on each Insurance Carrier and Surety listed on Exhibit C and Exhibit E to the Motion within two (2) business days after the date this Final Order is entered.

3.    The Debtors are authorized to and in each case in accordance with the ordinary course of business and this Final Order:

(a)    continue the Insurance Policies, including without limitation those Insurance Policies identified on Exhibit C to the Motion, and pay any prepetition or postpetition obligations related to the Insurance Policies, including any amounts owed on account of the Insurance Deductibles and Self-Insured Retentions, the insurance premiums, and amounts owed to the Brokers under the Insurance Policies, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases;

(b)    continue to honor the terms of the Financing Agreement identified on Exhibit D to the Motion and pay premiums thereunder, to renew the Financing Agreement, and to enter into, renew, amend, supplement, rollover, or extend new premium financing agreements as necessary, to the extent that the Debtors determine, in their sole discretion, that such action is in the best interest of the their estates;

(Page | 5)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

(c)     maintain the Surety Bonds and Letters of Credit, including without limitation the Surety Bonds identified on Exhibit E to the Motion, without interruption, including the payment of premiums, performance under any indemnity agreement (including posting collateral as security), provision of additional or new surety bonds or letters of credit to third parties to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries, and to take all appropriate actions in connection therewith, including providing any cash collateral, and execution of other agreements in connection with the Surety Bonds and Letters of Credit, and pay any prepetition or postpetition obligations related to the Surety Bonds and Letters of Credit, including any amounts owed to the Brokers, in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases; and

(d)      renew, amend, supplement, extend, or purchase insurance policies, premium financing agreements, and surety bonds in the ordinary course of business to the extent that the Debtors determine that such action is in the best interest of their estates.

4.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

5.     Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the Insurance Policies, the Financing Agreement, the Surety Bonds, and/or the Letters of Credit to the extent payment thereof is authorized pursuant to the relief granted herein and to the extent authorized by this Final Order.

7.      Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in

(Page | 7)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

8.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

9.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

(Page | 8)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN INSURANCE AND SURETY COVERAGE ENTERED INTO PREPETITION AND PAY RELATED PREPETITION OBLIGATIONS, (II) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (III) RENEW, SUPPLEMENT, MODIFY OR PURCHASE INSURANCE AND SURETY COVERAGE, AND (IV) ENTER INTO NEW FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS |

12.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## **Exhibit C**

**Insurance Policies**

| Type of Policy | Insurance Issuer | Policy Number | Policy Term | Premium (per annum) |
|---|---|---|---|---|
| (EARTHQUAKE-IDEASTREAM) | Insurance Company of the West (80.66%) & Certain Underwriters at Lloyd's (19.34%) | XHO800805001 & TRV702520001 | 11/17/2023 to 11/17/2024 | $44,421 |
| WORKERS' COMPENSATION | MEMIC Indemnity Company | 310 2808705 | 1/1/2024 to 1/1/2025 | $59,281 |
| FINANCIAL LINES BLENDED PROGRAM | Berkshire Hathaway Specialty Insurance Company | 47EMC32672301 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 | $132,014 $75,000 |
| DIRECTORS, OFFICERS AND COMPANY | Berkshire Hathaway Specialty Insurance Company | 47EMC32672201 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $229,589 $100,274 $480,000 |
| 1ST EXCESS D&O: ($5M xs $5M) | ACE American Insurance Company | G72564595 002 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $190,583 $83,285 $381,830 |
| 2ND EXCESS D&O: ($5M xs $10M) | Allied World Specialty Insurance Company | 0312-7301 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $149,233 $65,000 $299,000 |
| 3RD EXCESS D&O ($5M xs $15M) | Old Republic Insurance Company | ORPRO13101376 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $120,540 $52,676 $241,500 |
| 4TH EXCESS D&O ($5M xs $20M) | Argonaut Insurance Company | MLX4261525-4 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $101,019 $44,000 $202,400 |
| 5TH EXCESS D&O ($5M xs $25M) | Markel American Insurance Company | MKLM1MXM000928 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $93,339 $35,500 $163,300 |
| 6TH EXCESS D&O ($5M xs $30M) | Endurance American Insurance Company | DOX30032204300 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $65,433 $28,578 $131,100 |
| 7TH EXCESS SIDE-A D&O ($5M xs $35M) | ACE American Insurance Company | G71098898 001 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $45,920 $20,067 $199,933 |
| 8TH EXCESS SIDE-A D&O ($5M xs $40M) | Midvale Indemnity Company | ACL-142961260-02 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $41,328 $18,050 $108,000 |
| 9TH EXCESS SIDE-A D&O ($5M xs $45M) | Fair American Insurance & Reinsurance Company | MLX-1001256-02 | 2/6/2023 to 3/31/2024 Extended to 9/30/2024 Runoff TBD | $36,736 $16,000 $96,000 |
| Alpha Side A Difference in Conditions Directors and Officers Liability Insurance | Certain Underwriters at Lloyd's London | B0509FINMW2351346 | 1/1/2024 to 9/30/2024 Runoff TBD | $211,575 $655,200 |
| CYBER LIABILITY | Endurance American Insurance Company | NRV30032643300 | 2/20/2023 to 2/20/2024 Extended to 8/20/2024 | $197,600 $98,529 |
| 1ST EXCESS CYBER LIABILITY ($5M xs $5M) | Ambridge | ACX1057123 | 2/20/2023 to 2/20/2024 Extended to 8/20/2024 | $168,460 $83,980 |
| 2ND EXCESS CYBER LIABILITY ($5M xs $10M) | Crum & Forster Specialty Insurance Company | CYB-105583 | 2/20/2023 to 2/20/2024 Extended to 8/20/2024 | $135,200 $67,735 |

| 3RD EXCESS CYBER LIABILITY ($5M xs $15M) | Liberty Surplus Insurance Corporation | EO5NACG0FO002 | 2/20/2023 to 2/20/2024 Extended to 8/20/2024 | $114,920 $57,463 |
| 4TH EXCESS CYBER LIABILITY ($5M xs $20M) | Steadfast Insurance Company Insurance Corporation | SPR 0341952 - 01 | 2/20/2023 to 2/20/2024 Extended to 8/20/2024 | $97,682 $48,439 |
| 5TH EXCESS CYBER LIABILITY ($5M xs $25M) | Syndicate 457 at Lloyd's Insurance Corporation | NRV30032643300 | 2/20/2023 to 2/20/2024 Extended to 8/20/2024 | $83,028 $41,400 |
| CRIME | XL Specialty Inusrance Company | ELU188351-23 | 2/20/2023 to 3/31/2024 Extended to 9/30/2024 | $86,580 $39,083 |
| Business Travel Accident | ACE American Insurance Company (Chubb) | ADD N19011951 | 6/21/2023 to 6/21/2024 | $2,911 |
| GENERAL LIABILITY | 0623 AFB Lloyd's Syndicate 2623 AFB Lloyd's Syndicate | B0180PN2305743 | 8/1/2023 to 8/1/2024 | $175,187 $848,943 |
| UMBRELLA LIABILITY | Lexington Insurance Company | 18303318 | 8/1/2023 to 8/1/2024 | $808,808 |
| PRODUCTS LIABILITY | Great American Risk Solutions Surplus Lines Insurance Company | PL E745072-02 | 8/1/2023 to 8/1/2024 | $48,318 |
| EXCESS LIABILITY ($9M xs P) | Great American Risk Solutions Surplus Lines Insurance Company | XS E745073-02 | 8/1/2023 to 8/1/2024 | $38,126 |
| INTERNATIONAL PACKAGE | The Insurance Company of the state of Pennsylvania | WS11016647 | 8/1/2023 to 8/1/2024 | $19,626 |
| PROPERTY/ALL RISK | The Cincinnati Insurance Company | ENP 070 56 81 | 1/22/2024 to 1/22/2025 | $12,558 |
| STOCK THROUGHPUT | Falvey Insurance Group | M-FAL-2000641 WC-FAL-2000641 | 8/1/2023 to 8/1/2024 | $151,060 |
| EMPLOYED LAWYERS | Federal Insurance Company | J05965469 | 9/15/2023 to 3/31/2025 | $80,821 |
| PROFESSIONAL LIABILITY E&O / Media Liability | Certain Underwriters at Lloyd's London Multiple Syndicates | HMPL23-0331 | 11/30/2023 to 11/30/2024 | $4,259 |

2

## Exhibit D

**Financing Agreement**

## Commercial Premium Finance Agreement

### AFCO PREMIUM CREDIT LLC

A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.

5600 North River Road, Suite 400, Rosemont, IL 60018-5187

TEL. NO. 847-685-6700  800-288-8214

Page 1 of 4

| Agent (Name and Address)   10050083 | Insured (Name and Address as shown on the policy) |
|---|---|
| Marsh USA Inc<br>Attn : Olive Umeh<br>1166 Avenue of the Americas<br>New York, NY 10036<br>212-345-6019 | Thrasio, LLC, Thrasio Holdings, Inc.<br>Attn : Mike Fahey<br>85 West St Ste 3<br>Walpole, MA 02081<br>734-144-8129 |

| A) Total Premiums | B) Down Payment | C) Amount Financed | D) Finance Charge | E) Total Payments |
|---|---|---|---|---|
| $2,089,204.40 | $313,381.00 | $1,775,823.40 | $53,713.61 | $1,829,537.01 |

| F) Annual Percentage Rate | No. of Payments | Amount of Payments | First Installment Due | Installment Due Dates |
|---|---|---|---|---|
| 7.202 % | 9 (Monthly) | $203,281.89 | 03/06/2023 | 6th |

### SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Name and Address of General or Policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| 47-EMC-3267 22-01 | 02/06/2023 | Berkshire Hathaway Specialty Insurance Company | DO | 13 | 229,589.00 |
| G72564595 00 2 | 02/06/2023 | ACE American Insurance Company | XSDO | 13 | 190,583.00 |
| 0312-7301 | 02/06/2023 | Allied World Specialty Insurance Company | XSDO | 13 | 149,233.00 |
| 47-EMC-3267 23-01 | 02/06/2023 | Berkshire Hathaway Specialty Insurance Company | BLNDED | 13 | 132,014.00 |
| | | Policy Detail Continued... | | | |

**(1) DEFINITIONS:** The above named insured ("the insured") is the debtor. AFCO Premium Credit LLC ("AFCO"), a joint venture of AFCO Credit Corporation and Marsh USA Inc., is the lender to whom the debt is owed. "Insurance company" or "company", "insurance policy" or "policy" and "premium" refer to those items listed under the "Schedule of Policies". Singular words mean plural and vice-versa as may be required in order to give the agreement meaning. For New York insureds, services for which any charge pursuant to Insurance Law, Section 2119, is imposed, are in connection with obtaining and servicing the policies listed herein.
**NOTICE: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this agreement. 3. Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge.**

**INSURED AGREES TO THE TERMS SET FORTH ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT**

| X | | CFO | 3/8/23 |
|---|---|---|---|
| INSURED'S NAME | SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |

### AGENT OR BROKER REPRESENTATIONS

The undersigned warrants and agrees: 1. The policies are in full force and effect and the information in the Schedule of Policies and the premiums are correct. 2. The insured has authorized this transaction and recognizes the security interest assigned herein and has received a copy of this agreement. 3. To hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies or AFCO and to pay the monies as well as any unearned commissions to AFCO upon demand to satisfy the outstanding indebtedness of the insured. Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinated to AFCO's lien or security interest therein. 4. The policies comply with AFCO's eligibility requirements. 5. No audit or reporting form policies, policies subject to retrospective rating or minimum earned premium are included. The deposit or provisional premiums are not less than anticipated premiums to be earned for the full term of the policies. 6. The policies can be cancelled by the insured and the unearned premiums will be computed on the standard short-rate or pro-rata table. 7. The undersigned represents that a proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named insured.
**IF THERE ARE ANY EXCEPTIONS TO THE ABOVE STATEMENTS PLEASE LIST BELOW:**

**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT**

| Broker | X _Jose Carbajal_ | SVP | 3/9/23 |
|---|---|---|---|
| AGENT OR BROKER | SIGNATURE OF AGENT OR BROKER | TITLE | DATE |

ZZJV (10/00-win) c. 2000 Afco Premium Credit LLC       QIV# 100001446504.003

## Commercial Premium Finance Agreement

**AFCO PREMIUM CREDIT LLC**

A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.

5600 North River Road, Suite 400, Rosemont, IL 60018-5187

TEL. NO. 847-685-6700  800-288-8214

Page  2 of  4

### SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Name and Address of General or Policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| ORPRO 13 10 1376 | 02/06/2023 | Old Republic Insurance Company | XSDO | 13 | 120,540.00 |
| MLX4261525 -4 | 02/06/2023 | Argonaut Insurance Company | XSDO | 13 | 101,019.00 |
| MKLM1MX M000928 | 02/06/2023 | Markel American Insurance Company | XSDO | 13 | 93,339.00 |
| OX300322043 00 | 02/06/2023 | Endurance American Insurance Company | XSDO | 13 | 65,433.00 |
| G71098898 00 1 | 02/06/2023 | ACE American Insurance Company | XSSDA | 13 | 45,920.00 |
| ACL-1429612 60-02 | 02/06/2023 | Midvale Indemnity Company<br><br>Bowhead Specialty Underwriters, Inc.<br>667 Madison Avenue 5th Floor<br>New York, NY 10065<br>USA | XSSDA | 13 | 41,328.00 |
| MLX-100125 6-02 | 02/06/2023 | Fair American Insurance and Reinsurance Company<br>Balance Partners, LLC<br>10 Harmony Road<br>Huntington, NY 11743<br>USA | XSSDA | 13 | 36,736.00 |
| ELU188351-2 3 | 02/20/2023 | XL Specialty Insurance Company | CRIM | 13 | 86,580.00 |
| NRV3003264 3300 | 02/20/2023 | Endurance American Specialty Insurance Company | CYBRSK | 12 | 190,000.00 |
|  |  | Tax | TAX | Ref | 7,600.00 |
| ACX1057412 3 | 02/20/2023 | Lloyds Bank General Insurance Limited<br><br>Ambridge Partners LLC<br>1140 Avenue of the Americas<br>5th Floor<br>New York, NY 10036<br>USA | CYBRSK | 12 | 58,140.00 |
|  |  | Fee | FEE | NRef | 180.00 |
|  |  | Tax | TAX | Ref | 2,325.60 |
| ACX1057123 | 02/20/2023 | Lloyds Bank General Insurance Limited<br>Ambridge Partners LLC<br>1140 Avenue of the Americas<br>5th Floor<br>New York, NY 10036<br><br>Policy Detail Continued... | CYBRSK | 12 | 40,375.00 |

## Commercial Premium Finance Agreement

### AFCO PREMIUM CREDIT LLC

A Joint Venture of AFCO Credit Corporation and Marsh USA Inc.

5600 North River Road, Suite 400, Rosemont, IL 60018-5187

TEL. NO. 847-685-6700  800-288-8214

Page 3 of 4

### SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Name and Address of General or Policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| | | USA | | | |
| | | Fee | FEE | NRef | 125.00 |
| | | Tax | TAX | Ref | 1,615.00 |
| ACX1057123 | 02/20/2023 | Lloyds Bank General Insurance Limited Ambridge Partners LLC 1140 Avenue of the Americas 5th Floor New York, NY 10036 | CYBRSK | 12 | 40,375.00 |
| | | USA | | | |
| | | Fee | FEE | NRef | 125.00 |
| | | Tax | TAX | Ref | 1,615.00 |
| ACX1057123 | 02/20/2023 | Lloyds Bank General Insurance Limited Ambridge Partners LLC 1140 Avenue of the Americas 5th Floor New York, NY 10036 | CYBRSK | 12 | 14,535.00 |
| | | USA | | | |
| | | Fee | FEE | NRef | 45.00 |
| | | Tax | TAX | Ref | 581.40 |
| ACX1057123 | 02/20/2023 | Lloyds Bank General Insurance Limited Ambridge Partners LLC 1140 Avenue of the Americas 5th Floor New York, NY 10036 | CYBRSK | 12 | 8,075.00 |
| | | USA | | | |
| | | Fee | FEE | NRef | 25.00 |
| | | Tax | TAX | Ref | 323.00 |
| CYB-105583 | 02/20/2023 | Crum & Forster Specialty Insurance Company | CYBRSK | 12 | 130,000.00 |
| | | Tax | TAX | Ref | 5,200.00 |
| EO5NACG0FO002 | 02/20/2023 | Liberty Surplus Insurance Corporation | CYBRSK | 12 | 110,500.00 |
| | | Tax | TAX | Ref | 4,420.00 |
| SPR 03419452-01 | 02/20/2023 | Steadfast Insurance Company | CYBRSK | 12 | 93,925.00 |
| | | Tax | TAX | Ref | 3,757.00 |
| 1MRCT0000025-01 | 02/20/2023 | Lloyds Bank General Insurance Limited Bowring Marsh (London) Ltd. . ., N/A 99999 UNITED KINGDOM | CYBRSK | 12 | 79,835.00 |
| | | Tax | TAX | Ref | 3,193.40 |

**(2) ASSIGNMENT OF AGREEMENT:** This agreement will be assigned and transferred to and serviced by AFCO Credit Corporation.
**(3) LIMITED POWER OF ATTORNEY:** The insured irrevocably appoints AFCO as its attorney in fact with full authority to cancel the insurance policies for the reasons stated in paragraph (15), and to receive all sums assigned to AFCO or in which it has granted AFCO a security interest. AFCO may execute and deliver on the insured's behalf all documents, instruments of payment, forms, and notices of any kind relating to the insurance policies in furtherance of this agreement.
**(4) PROMISE OF PAYMENT:** The insured requests that AFCO pay the premiums in the Schedule of Policies. The insured promises to pay to AFCO the amount stated in Block E above according to the payment schedule, subject to the remaining terms of this agreement.
**(5) SECURITY INTEREST:** The insured assigns to AFCO as security for the total amount payable in this agreement and any all unearned premiums and dividends which may become payable under the insurance policies for whatever reason and loss payments which reduce the unearned premiums subject to any mortgagee or loss payee interests. The insured gives to AFCO a security interest in all items mentioned in this paragraph. The insured further grants to AFCO its interest which may arise under any state insurance guarantee fund relating to any policy shown in the Schedule of Policies.
**(6) WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the Schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The insured authorizes AFCO to insert or correct in this agreement, if omitted or incorrect, the insured's name, the policy numbers, and the due date of the first installment. AFCO is permitted to correct any obvious errors. In the event of any change or insertion, AFCO will give the insured written notice of those changes or corrections made in accordance with this provision.
**(7) REPRESENTATION OF SOLVENCY:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding.
**(8) ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued.The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.
**(9) SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or is subject to retrospective rating, then the insured promises to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.
**(10) NAMED INSURED:** If the insurance policy provides that the first named insured in the policy shall be responsible for payment of premiums and shall act on behalf of all other insureds with respect to any actions relating to the policy, then the same shall apply to this agreement. If such is not the case, then all insureds' names must be shown on this agreement unless a separate agreement specifies one insured to act in all matters for the others.
**(11) FINANCE CHARGE:** The finance charge shown in Block D begins to accrue as of the earliest policy effective date unless otherwise indicated in the Schedule of Policies.
**(12) AGREEMENT BECOMES A CONTRACT:** This agreement becomes a binding contract when AFCO mails a written acceptance to the insured.
**(13) DEFAULT CHARGES:** If the insured is late in making an installment payment to AFCO by more than the number of days specified by law the insured will pay to AFCO a delinquency charge not to exceed the maximum charge permitted by law.
**(14) DISHONORED CHECK:** If an insured's check is dishonored for any reason and if permitted by law, the insured will pay to AFCO a fee for expenses in processing that check not to exceed the amount permitted by law.
**(15) CANCELLATION:** AFCO may cancel the insurance policies after giving any required statutory notice and the unpaid balance due to AFCO shall be immediately payable by the insured if the insured does not pay any installment according to the terms of this agreement. AFCO at its option may enforce payment of this debt without recourse to the security given to AFCO. If cancellation occurs, the borrower agrees to pay a finance charge on the balance due at the contract rate of interest until that balance is paid in full or until such other date as required by law.
**(16) CANCELLATION CHARGES:** If AFCO cancels any insurance policy in accordance with the terms of this agreement, then the insured will pay AFCO a cancellation charge, if permitted, up to the limit specified by law.
**(17) MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's notice of cancellation of the insurance policy has been mailed may be credited to the insured's account without affecting the acceleration of this agreement and without any liability or obligation on AFCO's part to request reinstatement of a cancelled insurance policy. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to whomever is entitled to the money. No refund of less than $1.00 shall be made. In the event that AFCO does request, on the insured's behalf, a reinstatement of the policy, such request does not guarantee that coverage under the policy will be reinstated or continued.
**(18) ATTORNEY FEES - COLLECTION EXPENSE:** If, for collection, this agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay reasonable attorney fees and costs including those in the course of appeal as well as other expenses, as permitted by law or granted by the court.
**(19) REFUND CREDITS:** The insured will receive a refund credit of the finance charge if the account is voluntarily prepaid in full prior to the last installment due date as required or permitted by law. Any minimum or fully earned fees will be deducted as permitted by law.
**(20) INSURANCE AGENT OR BROKER:** The insurance agent or broker named in this agreement is the insured's agent, not AFCO's, and AFCO is not legally bound by anything the agent or broker represents to the insured orally or in writing.
**(21) NOT A CONDITION OF OBTAINING INSURANCE:** This agreement is not required as a condition of the insured obtaining insurance coverage.
**(22) SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured will not assign the policies without AFCO's written consent except for the interest of mortgagees and loss payees.
**(23) LIMITATION OF LIABILITY:** The insured agrees that AFCO's liability for breach of any of the terms of this agreement or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding except in the event of gross negligence or willful misconduct.
**(24) ENTIRE DOCUMENT - GOVERNING LAW:** This document is the entire agreement between AFCO and the insured and can only be changed in writing and signed by both parties except as stated in paragraph (6). The laws of the state indicated in the insured's address as set forth in the Schedule will govern this agreement unless stated in that Schedule.

ZZJV (10/00-win) c. 2000 Afco Premium Credit LLC

| INSURED'S INITIALS |
|---|
| *Mc* |

## Exhibit E

**Surety Bonds**

| Beneficiary | Bond Issuer | Bond Value | Applicable Year |
|---|---|---|---|
| United States Customs and Border Protection Agency | Roanoke Insurance Group Inc | $400,000 | 2023/2024 |
| United States Customs and Border Protection Agency | Intact Insurance | $2,000,000 | 2023/2024 |