**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION**
**FOR ENTRY OF INTERIM AND**
**FINAL ORDERS AUTHORIZING THE**
**DEBTORS TO (I) PAY PREPETITION WAGES,**
**SALARIES, OTHER COMPENSATION, AND REIMBURSABLE**
**EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (the "Motion"):[2]

## Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):  authorizing the Debtors to (i) pay all prepetition wages, salaries, incentives, other compensation, and Reimbursable Expenses on account of the Compensation and Benefits (each as defined herein) and (ii) continue to administer the Compensation and Benefits in the ordinary course of business, including payment of prepetition obligations related thereto.   In addition, the Debtors request that the Court schedule a final hearing approximately thirty (30) days after the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court,

---

[2]     A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Josh Burke, Chief Financial Officer of Thrasio Holdings, Inc., in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on February 28, 2024 (the "Petition Date").  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

2

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of the Bankruptcy Code, rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 9013-1, and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

5.    On the Petition Date, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## The Debtors' Workforce

6.    As of the Petition Date, the Debtors employ approximately 415 employees (the "Employees"), 414 of which are full-time employees.  The Employees include personnel who are intimately familiar with the Debtors' business, processes, and systems, and possess unique skills and experience with respect to the Debtors' core business segments.  Without the continued, uninterrupted services of the Employees, the Debtors' business operations will be halted and the administration of the estates will be materially impaired.  In addition to the Employees, the Debtors' workforce also includes approximately seventy-four (74) independent contractors (the "Independent Contractors", together with the Employees, the "Workforce"), who perform a variety of necessary services for the Debtors, as described herein.

3

7.      The vast majority of the Employees and Independent Contractors rely on their compensation and benefits to pay their daily living expenses.  These workers will be unfairly harmed if the Debtors are not permitted to continue paying compensation and providing health and other benefits during these chapter 11 cases.  Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

**Employee Compensation and Benefits**

8.      To minimize the personal hardship that the Debtors' personnel could suffer if prepetition compensation and benefit-related obligations remain unpaid during these chapter 11 cases, the Debtors seek authority to:  (a) pay and honor certain prepetition claims relating to, among other things, Wage/Pay Obligations, Withholding Obligations, Unpaid Payroll Processing Fees, Reimbursable Expenses, Health and Welfare Coverage and Benefits, the Workers' Compensation Program, 401(k) Plans, Paid Leave Benefits, Additional Benefits Program, Severance Program, Severance Benefits, Non-Insider Bonus Programs, Non-Employee Director Compensation, and certain other benefits that the Debtors have provided in the ordinary course (each as defined herein, and collectively, the "Compensation and Benefits");[3] and (b) pay all costs related to or on account of the Compensation and Benefits.

9.      Subject to the Court's approval, the Debtors intend to continue their prepetition Compensation and Benefits in the ordinary course of business.  Out of an abundance of caution, the Debtors further request confirmation of their right to modify, change, and/or discontinue any of their Compensation and Benefits and/or to implement new programs, policies, and benefits in

---

[3]     Non-Debtor entities in China employ certain individuals.  For the avoidance of doubt, the relief sought under this Motion relates only to payments made to individuals who are employed by the Debtors.

4

the Debtors' sole discretion and in the ordinary course during these chapter 11 cases (subject in all respects to the terms of the Interim Order and Final Order) and without the need for further Court approval, subject to applicable law.

**I.      Compensation, Withholding Obligations, Payroll Processing, and Reimbursable Expenses.**

      **A.      Wage/Pay Obligations.**

10.     In the ordinary course of business, the Debtors incur obligations to their Workforce for Employee Compensation, Independent Contractor Obligations, and Variable Incentives (each as defined below and collectively, the "Wage/Pay Obligations").  As of the Petition Date, the Debtors estimate that they owe approximately $1,140,000 on account of accrued but unpaid Wage/Pay Obligations.  Authority to pay Wage/Pay Obligations and continue paying their Workforce is critical to the Debtors' ability to maintain and administer their estates. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor the Wage/Pay Obligations and to pay any prepetition claims with respect thereto in the ordinary course of business.

      **i.      Employee Compensation.**

11.     In the ordinary course of business, the Debtors incur obligations to their Employees for wages, overtime, and similar obligations (the "Employee Compensation"). Employees are generally paid current; however, certain overtime compensation may be paid in arrears.  Because Employees may be paid overtime compensation in arrears, certain Employees are owed accrued but unpaid Employee Compensation as of the Petition Date (the "Unpaid Employee Compensation").[4]

---

[4]    Certain Employee Compensation may also be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe they should

12.     The majority of the Debtors' payroll is made by direct deposit through electronic transfer of funds to the Employees' bank accounts or other electronic means. Most full-time Employees are salaried and paid on a bi-monthly calendar. Twenty-six of the Employees are "non-exempt" and are paid hourly on a bi-weekly calendar. As of the Petition Date, the Debtors estimate that they owe approximately $40,000 on account of Unpaid Employee Compensation. The Debtors also seek authority to continue paying the Unpaid Employee Compensation in the ordinary course on a postpetition basis.

### ii.     Independent Contractor Obligations.

13.     Typically, the Debtors hire Independent Contractors both themselves and through third-party contracting agencies and, in the ordinary course of business, incur payment obligations to their Independent Contractors for services rendered, and certain third-party contracting fees (the "Independent Contractor Obligations"). The Debtors typically pay their Independent Contractors on a monthly basis at an agreed rate on thirty (30)-day terms, depending on the terms of the Debtors' agreement with the Independent Contractor. The Independent Contractors perform critical staff augmentation for positions, such as talent management, consulting, accounts receivable and revenue specialists, payroll analysts, logistic specialists, and IT subject matter experts or specialists that support the Debtors' Employees and operations. The Debtors believe that the authority to continue paying their Independent Contractors is critical to maintaining and administering their estates.

14.     From January to December 2023, the Debtors spent approximately $600,000 per month on average on Independent Contractor Obligations, including amounts paid to the third-

---

have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees as of the Petition Date.

party contracting agencies.    As of the Petition Date, the Debtors estimate that they owe approximately $1,100,000 in accrued but unpaid Independent Contractor Obligations.    The Debtors also seek authority to continue paying the Independent Contractor Obligations in the ordinary course on a postpetition basis.

### iii.    Variable Incentive.

15.    The Debtors recently began paying a variable incentive to one (1) temporary Employee.    This Employee markets the Debtors' products and services and generally receives variable incentives on a monthly, in-arrears basis in varying percentages based on the purchase orders tied to their individual efforts (the "<u>Variable Incentive</u>").    The Variable Incentive is an important part of the Employee's overall compensation package and motivates the Employee to maximize their sales performance.    As of the Petition Date, the Employee does not have an accrued balance on account of the Variable Incentive plan.    Given the fact that the Variable Incentive is only paid to one (1) Employee, the Debtors estimate that they owe *de minimis*, if any, prepetition amounts on account of the Variable Incentive.    However, in the event that there are any amounts outstanding on behalf of the Variable Incentive prior to the Petition Date, the Debtors request authority to pay such Variable Incentive.    The Debtors also seek authority to continue paying the Variable Incentive in the ordinary course on a postpetition basis.

16.    As of the Petition Date, the Debtors do not believe that the accrued prepetition Wage/Pay Obligations exceed the statutory cap set forth in section 507(a)(4) of the Bankruptcy Code.    However, due to the particular importance of the Debtors' ability to maintain workforce morale and sales momentum during these chapter 11 cases, the Debtors are seeking authority to pay all outstanding prepetition Wage/Pay Obligations in full, including Variable Incentives, as they become due and payable in the ordinary course of the Debtors' business.

7

**B.** **Withholding Obligations.**

17. In the ordinary course of business, the Debtors incur obligations on account of Payroll Deductions and Payroll Taxes (each as defined below and collectively, the "Withholding Obligations"). From in the three months ending December 31, 2023, the Debtors incurred a monthly average of approximately $2,000,000 of Withholding Obligations. As of the Petition Date, the Debtors estimate that they owe approximately $100,000 of Withholding Obligations. The Debtors respectfully request that the Court authorize the Debtors to continue to honor their Withholding Obligations and to pay any prepetition claims with respect thereto in the ordinary course of business.

**i.** **Payroll Deductions.**

18. During each applicable payroll period, the Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums, 401(k) contributions, legally ordered deductions, and miscellaneous deductions (collectively, the "Payroll Deductions"). The Payroll Deductions are paid to various third-party recipients. The Debtors immediately pay 401(k) contributions to Fidelity Investments ("Fidelity") and retain all other Payroll Deductions until the applicable third-party recipient invoices the Debtors, which typically occurs on a monthly basis. As of the Petition Date, the Debtors estimate that they owe approximately $90,000 on account of the Payroll Deductions.

**ii.** **Payroll Taxes.**

19. In addition to the Payroll Deductions, certain federal and state laws require that the Debtors withhold amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate

federal, state, or local taxing authorities (collectively, the "Employee Payroll Taxes").    The

Debtors must match the Employee Payroll Taxes with their own funds and pay, based on a

percentage of gross payroll, additional amounts for federal and state unemployment insurance

and Social Security and Medicare taxes (collectively, the "Employer Payroll Taxes" and,

together with the Employee Payroll Taxes, the "Payroll Taxes").    The Payroll Taxes are

generally processed and forwarded to the appropriate federal, state, and local taxing authorities

in accordance with remittance intervals and deadlines established by those taxing authorities.  As

of the Petition Date, the Debtors estimate that they owe approximately $20,000 on account of the

Payroll Taxes.

### C.    Payroll Processing.

20.    Certain Compensation and Benefits for the Debtors' Employees are processed and

administered by Workday, Inc., which calculates payroll, and OneSource Virtual, which handles

payment disbursements.    During the three months ending December 31, 2023, the Debtors

incurred a monthly average of approximately $14,000 on account of these payroll processing and

application hosting services.  Additionally, as of the Petition Date, the Debtors estimate they owe

approximately $28,000 on account of prepetition payroll processing services (the "Unpaid

Payroll Processing Fees").    Accordingly, the Debtors respectfully request that the Court

authorize the Debtors to continue to honor their Unpaid Payroll Processing Fees and to pay any

prepetition claims with respect thereto in the ordinary course of business.

### D.    Reimbursable Expenses.

21.    Prior to the Petition Date and in the ordinary course of business, the Debtors

reimbursed certain Employees for pre-approved expenses incurred on behalf of the Debtors

within the scope of their employment (the "Reimbursable Expenses").  Reimbursable Expenses

include, among other things; (i) travel-related expenses such as air and train travel and costs

associated with obtaining visas needed to facilitate required business travel, (ii) meal allowances; (iii) business-related seminar, subscription, and course fees; (iv) expenses related to purchases of similar products to those sold by the Debtors, and (v) business-related entertainment expenses.[5] Employees who pay for their own Reimbursable Expenses up-front (*i.e.*, not via a Company credit card) apply for reimbursement of such expenses by submitting a reimbursement claim through the Debtors' reimbursement software, Expensify, Inc. ("Expensify"), generally no later than thirty (30) days after the Reimbursable Expense is incurred.  Reports are submitted via Expensify to the relevant Employee's supervisor.  Once the Debtors determine that the charges are for allowable Reimbursable Expenses, the Debtors reimburse such Employees.  The Debtors pay a monthly fee of approximately $8,000 to Expensify for administering the Reimbursable Expense system.  The Debtors estimate that, as of the Petition Date, they owe approximately $16,000 to Expensify for administering the Reimbursable Expense system.

22.     The Debtors' inability to reimburse the Reimbursable Expenses could impose a hardship on the Employees, where such individuals incurred obligations for the Debtors' benefit. Employees incurred the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that such expenses would be reimbursed.

23.     During the three months ended December 31, 2023, the Debtors incurred a monthly average of approximately $100,000 on account of Reimbursable Expenses, including fees owed to Expensify.  As of the Petition Date, the Debtors estimate that they owe approximately $216,000 on account of Reimbursable Expenses.  The Debtors will not seek to

---

[5]     The Reimbursable Expenses also include certain credit card expenses under the Credit Card Program as described and defined in the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue to Operate Their Cash Management System, (II) Honor Certain Prepetition Obligations Related Thereto, (III) Maintain Existing Business Forms, and (IV) Perform Intercompany Transactions* (the "Cash Management Motion"), filed contemporaneously herewith.

pay any outstanding Reimbursable Expenses or fees related thereto in advance of the date they come due.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor their Reimbursable Expenses and to pay any prepetition claims with respect thereto in the ordinary course of business.

## II.     Health and Welfare Coverage and Benefits.

24.     The Debtors have offered their Employees the ability to participate in a number of health, insurance, and benefits programs, including, but not limited to, medical and prescription, life and disability insurance, dental insurance, vision insurance, savings and spending account programs, and COBRA benefits (collectively, the "Health and Welfare Coverage and Benefits"). The Health and Welfare Coverage and Benefits are, in each case, available to Employees depending on factors such as their level with the Company and their length of service (the "Eligible Employees").

25.     The Debtors' Health and Welfare Coverage and Benefits include:

   a.  **Medical and Prescription Coverage:** The Debtors provide Eligible Employees with a fully insured medical and prescription coverage program through UnitedHealthcare Inc. ("UnitedHealthcare" and such coverage, the "Medical and Prescription Coverage").  Employees have the option to waive coverage if they are covered under another insurance plan.  There are three different UnitedHealthcare plans available to Employees: (i) a high deductible health plan with a health savings account; (ii) a low-deductible, high-premium preferred provider organization; or (iii) a high-deductible, low-premium preferred provider organization.  Moreover, under the Medical and Prescription Coverage, the Debtors and the Employees both pay a portion of the UnitedHealthcare plans.  On average, the Debtors cover approximately 83 percent of the cost of premiums, while the Employees cover the remaining 18 percent.  Legal spouses, domestic partners, and children are considered eligible dependents under the plan.  Approximately 83 percent of Employees enroll in Medical and Prescription Coverage.  The annual cost of the Medical and Prescription Coverage to the Debtors is approximately $4,000,000.  As of the Petition Date, the Debtors estimate they owe approximately $400,000 on account of incurred but yet unpaid (a) Medical and Prescription Coverage premiums and (b) medical claims, pharmacy claims, and medical stop loss claims.

b. **Life Insurance and Other Related Coverage**: The Debtors provide certain basic life insurance (at an amount calculated based on 100 percent of the Employee's salary, up to a fixed maximum amount), and long- and short-term disability insurance to all full-time Employees and their families (collectively, the "Life Insurance and Other Related Coverage"), which are paid on a monthly basis and are administered by Guardian Life Insurance Company of America ("Guardian"). The average annual cost of the Life Insurance and Other Related Coverage to the Debtors is approximately $55,000. As of the Petition Date, the Debtors estimate they owe approximately $5,000 on account of unpaid Life Insurance and Other Related Coverage.

c. **Dental Insurance Coverage**: The Debtors offer Eligible Employees two types of dental preferred provider organization ("PPO") plans administered by UnitedHealthcare: (a) a standard PPO plan (the "Standard PPO Plan"); and (b) a premier PPO plan (the "Premier "PPO Plan," together with the Standard PPO Plan, the "Dental Insurance Coverage"). The Dental Insurance Coverage allows the freedom to use providers in and out of the network. Unlike the Standard PPO Plan, the Premier PPO Plan covers orthodontia, coverage of which is capped at $1,500 per child dependent. On average, the Debtors cover approximately 70 percent of the cost of premiums, while the Employees cover the remaining 30 percent. The average annual cost of the Dental Insurance Coverage to the Debtors is approximately $190,000. As of the Petition Date, the Debtors estimate they owe approximately $30,000 on account of unpaid Dental Insurance Coverage.

d. **Vision Insurance Coverage**: The Debtors offer vision insurance plans provided by UnitedHealthcare (the "Vision Insurance Coverage"). Approximately 90 percent of the vision plan premium is employer-paid. The average annual cost of the Vision Insurance Coverage to the Debtors is approximately $50,000. As of the Petition Date, the Debtors estimate they owe approximately $8,000 on account of unpaid Vision Insurance Coverage.

e. **Flex Spending Accounts and Health Savings Accounts**: The Debtors provide certain Employees[6] with the opportunity to contribute to two types of flexible spending accounts: (i) the Healthcare FSA and the Dependent Care FSA (each, an "FSA"), or (ii) to a health savings account (the "HSA"). The HSAs are administered by Optum Bank and Navia Benefit Solutions ("Navia"), respectively, which make pre-tax contributions through payroll deductions to pay for certain health and welfare needs. The Debtors do not contribute to Employees' FSAs and believe the FSA amounts are generally held in trust by the Debtors and are not property of their estates. The Debtors

---

[6] For the avoidance of doubt, the twenty-six (26) non-exempt Employees are not eligible to contribute to the FSA or HSA (each as defined herein).

contribute either $50 or $100 per month to each HSA, depending on the Employee's healthcare plan, totaling approximately $160,000 per year. The Debtors deduct an average of $300 from each participating U.S. Employee's Wage Obligations on account of the U.S. Employee contributions to the FSA and the HSA on a monthly basis. Currently, approximately 74 Employees contribute to the FSAs, and approximately 145 Employees contribute to the HSA. As of the Petition Date, the Debtors estimate that there are approximately $8,000 in accrued amounts to be remitted on account of the FSA (the "Unremitted FSA Amounts"). As of the Petition Date, there are approximately $29,000 in accrued amounts to be remitted on account of the HSAs (the "Unremitted HSA Amounts"). The Debtors pay approximately $2,000 per month to Optum Bank and Navia in administrative fees. As of the Petition Date, the Debtors owe approximately $40,000 on account of accrued but unpaid FSA and HSA fees (together with the Unremitted FSA Amounts and the Unremitted HSA Amounts, the "Unpaid FSA and HSA Costs"). As a result, the Debtors seek authority to pay and/or remit the Unpaid FSA and HSA Costs and continue the FSAs and the HSAs in the ordinary course of business on a postpetition basis.

f.   **COBRA Benefits**:   The Debtors provide COBRA benefits for Eligible Employees. The COBRA program, administered by Navia, allows certain eligible full-time and part-time Employees to receive COBRA subsidies if their employment is terminated due to a workforce adjustment or any not-for-cause employer-initiated termination. Eligible Employees may receive a COBRA subsidy consisting of the Debtors' payment of COBRA premiums, which is equal to the portion of group health insurance premiums paid on behalf of similarly situated active employees through the earliest of (i) the end of the Severance Benefit Period (as defined below), (ii) the expiration of the terminated Employee's COBRA eligibility, and (iii) the date the terminated Employee becomes eligible to enroll in group health insurance through another employer or entity. The Debtors estimate that, as of the Petition Date, there is approximately $50,000 outstanding in COBRA benefits.

26.   As described above, failure to continue the Health and Welfare Coverage and Benefits could cause Employees to experience severe hardship and make it difficult to retain the Debtors' Employees through these chapter 11 cases. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor their Health and Welfare Coverage and Benefits and to pay any prepetition claims with respect thereto in the ordinary course of business.

### III.    Workers' Compensation.[7]

27.    The Debtors maintain workers' compensation insurance for their Employees at the statutorily required level for each state in which they have Employees (collectively, and as described herein, the "Workers' Compensation Program"). As part of the Workers' Compensation Program, the Debtors maintain a workers' compensation insurance policy with MEMIC Indemnity Company (the "Workers' Compensation Insurance Policy").

28.    The Debtors must continue claim assessment, determination, adjudication, and payment pursuant to the Workers' Compensation Program, without regard to whether such liabilities are outstanding before the Petition Date, to ensure that the Debtors comply with applicable workers' compensation laws and requirements.[8]  There are currently zero active open claims under the Workers' Compensation Program.[9]  To the extent any Employees assert claims arising under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit the Employees to proceed with such claims.  This requested modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

---

[7]    In addition to the Workers' Compensation Insurance Policy (as defined below), the Debtors maintain numerous other insurance policies, which are described in the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Pay their Obligations Under Prepetition Insurance Policies and Surety Bonds, (II) Continue to Pay Certain Broker Fees, (III) Renew, Supplement, Modify, or Purchase Insurance and Surety Coverage, and (IV) Enter Into New Financing Agreements in the Ordinary Course of Business*, filed contemporaneously herewith and incorporated herein by reference.

[8]    The Debtors' Workers' Compensation Program may change postpetition in the ordinary course due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.  By this Motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any necessary modifications thereto.

[9]    For the avoidance of doubt, there is no deductible on the Workers' Compensation Program and, therefore, the Debtors incur no obligations for the open claims.

29.     Because the Debtors are statutorily and/or contractually obligated to maintain the
Workers' Compensation Program, their inability to do so may result in adverse legal
consequences that potentially could disrupt the Debtors' reorganization process.   As of the
Petition Date, the Debtors do not believe that they owe any outstanding amounts on account of
accrued but unpaid Workers' Compensation Program obligations.   Accordingly, the Debtors
request authority (a) to continue the Workers' Compensation Program in the ordinary course of
business, and (b) to the extent applicable, modify the automatic stay solely to allow Employees
to assert claims under the Workers' Compensation Program.

**IV.     The 401(k) Plans.**

30.     The Debtors maintain retirement savings plans for the benefit of their Employees
that satisfy the requirements of section 401(k) of the Internal Revenue Code
(the "401(k) Plans").   The 401(k) Plans are administered by Fidelity.   The 401(k) Plans allow for
automatic pre-tax and Roth salary deductions of eligible compensation, up to the limits set forth
by the Internal Revenue Code.

31.     The Debtors have the ability to match Employees' 401(k) contributions at a
discretionary rate, and any discretionary match is automatically 100 percent vested
(the "401(k) Matching Contributions").   A discretionary match can be given at any point in time,
and an annual discretionary match may be made for the following calendar year.   Historically,
however, no 401(k) Matching Contributions have been made.

32.     Given that no 401(k) Matching Contributions have been made historically, the
Debtors do not estimate that there are any amounts outstanding that they owe on account of
401(k) Matching Contributions.   However, in the event that the Debtors, in their discretion,
decide to match Employees' 401(k) contributions in the future, the Debtors respectfully request
that the Court authorize the Debtors to honor such 401(k) Matching Contributions.

## V.      Paid Leave Benefits.

33.      The Debtors have, in the past, provided paid time off to all Employees as a benefit (the "Paid Leave Benefits").  The Debtors' Paid Leave Benefits program includes:  (a) flexible time off, which provides Employees paid time off for vacation, medical appointments, and other short-term absences due to minor illnesses, family matters, or other personal reasons; and (b) parental leave.

34.      When an Employee elects to use Paid Leave Benefits, that Employee is paid his or her regular hourly or salaried rate.  Flexible time off does not accrue and will not be paid to Employees while they are employed or upon termination of employment.

35.      The Debtors believe that the continuation of the Paid Leave Benefits policies in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases.  Further, the policies are broad-based programs upon which all Employees have come to depend.  Because of the nature of the Paid Leave Benefits, the Debtors do not estimate that there are any amounts accrued but unpaid on behalf of the Paid Leave Benefits.  The Debtors respectfully request that the Court authorize the Debtors to continue to honor their obligations on account of Paid Leave Benefits if and when they come due in the ordinary course of business, to the extent required by applicable law or consistent with internal policy.

## VI.      Additional Benefit Programs.

36.      In addition to the foregoing, the Debtors offer Employees the opportunity to participate in a lifestyle savings account reimbursement ("LSA Reimbursement"), which reimburses Employees for discretionary spending related to the Employees' physical, mental, and financial wellbeing, including meditation and certain legal expenses.  LSA Reimbursements are administered by Forma Inc ("Forma") and are capped at $200 per quarter, which amount may be increased during the pendency of these chapter 11 cases.  LSA Reimbursements are provided

16

through one of three options:  (i) Employees can purchase lifestyle or fitness products or services from the Forma platform, the value not to exceed $200 per quarter; (ii) Employees can use a Forma credit card and purchase eligible lifestyle and fitness items or services with a value not exceeding $200 per quarter; and (iii) Employees can receive a cash reimbursement for reimbursable expenses, made via payroll, of up to $200 per quarter.  Forma submits a $4,000 monthly invoice to the Debtors on account of the LSA Reimbursement.  As of the Petition Date, the Debtors estimate that approximately $4,000 is accrued and outstanding on account of the LSA Reimbursement program, including with respect to Forma.

37.    The Debtors also offer Employees the opportunity to purchase certain Company–owned brand products at a discounted rate (the "Thrasher Perks Program").  Additionally, the Debtors provide immigration-related assistance to Employees who need a visa in connection with their job, such as filing fees, legal fees, and other administrative expenses (the "Visa Sponsorship Program," and together with the LSA Reimbursement and the Thrasher Perks Program,  the "Additional Benefit Programs").    During    the    three    months    ending December 31, 2023, the Debtors spent approximately $100,000 on account of the Additional Benefit Programs.  As of the Petition Date, approximately $54,000 is accrued and outstanding under the Additional Benefit Programs.

## VII.    Severance Program.

38.    In the ordinary course of business, the Debtors maintain a severance program for the benefit of certain Employees (together, the "Severance Program").[10]  Under the Severance Program, certain full-time and part-time Employees may be eligible to receive cash severance

---

[10]    For the avoidance of doubt, the Debtors do not seek to make any payments to insiders (as such term is defined in section 101(31) of the Bankruptcy Code, "Insiders") under the Severance Program above the cap set forth in section 503(c)(2) of the Bankruptcy Code.

benefits if their employment is terminated due to a workforce adjustment or any not-for-cause employer-initiated termination.    Such severance benefits (the "<u>Severance Benefits</u>") are determined based on a terminated Employee's position and level in accordance with standard Debtor-instituted guidelines.  These guidelines provide that Employees are eligible to receive a cash severance benefit equal to two, three, six, or twelve months (the "<u>Severance Benefit Period</u>") of the terminated Employee's base salary, depending on the Employee's position and level.  Severance Benefits are paid in equal installments in accordance with regular payroll practices.

39.    The Debtors' maintenance of the Severance Program and payment of Severance Benefits are critical to maintaining Employee morale and loyalty.  Failure to maintain the Severance Program will result in increased instability in the Debtors' workforce, which will undermine the Debtors' ability to strengthen their financial and operational foundation, generate growth, and position themselves for long-term success.

40.    As of the Petition Date, the Debtors believe that no former Employees are entitled to Severance Benefits.  The Debtors estimate that, as of the Petition Date, there is no balance outstanding under the Severance Program.  The Debtors respectfully request that the Court authorize the Debtors to continue to pay amounts on account of the Severance Program if and when they come due in the ordinary course of business.

## VIII.   PEO Providers.

41.    The Debtors contract with several third-party professional employee organizations that handle administrative functions related to human resources, including payroll processing, withholding, remittance, reporting of payroll taxes (including the Employer Payroll Taxes) for the Employees, and the administration of their benefits and retirement plans and programs, including claims processing and tax reporting (collectively, the "<u>PEO Providers</u>").  The Debtors

pay service fees ("PEO Fees") to the respective PEO Providers on a monthly or annual basis depending on the PEO Provider. The Debtors incur a monthly average of approximately $800,000 in PEO Fees.

42.     As of the Petition Date, the Debtors estimate that they owe approximately $2,100,000 in PEO Fees, all of which will become due and owing during the first twenty–one (21) days after the Petition Date. The Debtors' relationships with the PEO Providers allow the Debtors to realize substantial cost savings with respect to the administration of the Compensation and Benefits by not having to employ additional human resources professionals. In addition to saving costs, third-party intermediaries like the PEO Providers enable the Debtors to administer payroll and benefit programs internationally, offer better and broader benefits to their Employees, and otherwise effectively and efficiently administer the Compensation and Benefits. The Debtors therefore seek authorization to pay any prepetition PEO Fees outstanding and to continue to pay PEO Fees on a postpetition basis as they come due.

**IX.     Non-Debtor Employees.**

43.     Thrasio Supply Chain (Suzhou) Co. Ltd., Thrasio Global Cross-border E–Commerce (Shenzhen) Co. Ltd., and Thrasio E-Commerce (Shanghai) Co., Ltd. (the "Non-Debtor Employers") are non-Debtor entities and subsidiaries of Debtor Thrasio Holdings, Inc. The Non-Debtor Employers pay the wages and salaries of their employees (the "Non-Debtor Employees") as well as the withholding obligations related thereto. The Non-Debtor Employers also provide and administer the benefits for the Non-Debtor Employees. Debtor Thrasio Holdings, Inc. reimburses the Non-Debtor Employers for such payments, recorded through an intercompany transaction. As of the Petition Date, the Debtors owe approximately $500,000 through intercompany transactions to the Non-Debtor Employers.

44.     In an abundance of caution, by this Motion the Debtors request authorization to continue reimbursing the Non-Debtor Employers for payments paid on behalf of wages, salaries, withholding obligations, and benefits to the Non-Debtor Employees upon entry of the Interim Order and Final Order and to continue such reimbursements on a postpetition basis in the ordinary course of business consistent with their prepetition practices.  For the avoidance of doubt, the Debtors are seeking authorization to continue intercompany transactions, including the transactions to the Non-Debtor Employers in the ordinary course of business pursuant to the Cash Management Motion filed contemporaneously herewith.

**X.     Non-Insider Bonus Programs.**

45.     The Debtors maintain certain retention and incentive bonus programs for certain non-Insider Employees (the "Non-Insider Bonus Programs").  The Debtors implemented the Non-Insider Bonus Programs to retain certain valuable Employees that are vital to maintaining the Debtors' business and to encourage Employees to outperform and drive value for all stakeholders.  The Debtors may pay discretionary bonuses under the Non-Insider Bonus Programs during the pendency of these chapter 11 cases, but do not believe that there are any prepetition amounts outstanding on account of the Non-Insider Bonus Programs.  The Debtors nevertheless seek authority to pay any prepetition amounts on account of the Non-Insider Bonus Programs, and to pay any amounts that may come due during the pendency of these chapter 11 cases and to continue the Non-Insider Bonus Programs on a postpetition basis in the ordinary course of business.  For the avoidance of doubt, the relief sought with respect to the Non-Insider Bonus Programs does not include payment of any obligations to any Insider.  The Debtors shall not make any non-ordinary course bonus or incentive payments to any Insiders without further order of this Court.

**XI.    Non-Employee Director Compensation.**

46.    As of the Petition Date, the Debtors' boards of directors (collectively, the "Boards") include non-Employee individuals who serve as directors (the "Non-Employee Directors"). Debtor Thrasio Holdings, Inc.'s Board includes certain Non-Employee Directors, two of whom are disinterested directors (the "Disinterested Directors"). The Disinterested Directors receive monthly cash payments of $35,000 (the "Disinterested Director Payments"). Non-Employee Directors are also entitled to expense reimbursement for certain Reimbursable Expenses (the "Director Reimbursable Expenses," and together with the Disinterested Director Payments, the "Director Compensation").

47.    As of the Petition Date, the Debtors believe they owe *de minimis*, if any, amounts on account of Director Compensation and believe that they are authorized to pay any postpetition Director Compensation in the ordinary course. However, out of an abundance of caution, the Debtors seek authority to continue to pay the Director Compensation on a postpetition basis in the ordinary course of business and consistent with their prepetition practices.

## Basis for Relief

**I.    Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits Obligations.**

    **A.    Certain of the Compensation and Benefits Are Entitled to Priority Treatment.**

48.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Compensation and Benefits to priority treatment to the extent such payments do not exceed $15,150 for each individual as provided for under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. *See* 11 U.S.C. § 507(a)(4) and (5). As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See id.* § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4)

and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  To the extent that an Employee receives no more than $15,150 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to Employees and does not have any material negative impact on recoveries for general unsecured creditors.  To the extent an Employee is owed more than $15,150 on account of certain Compensation and Benefits, the Debtors submit that the full payment of such obligations in the ordinary course is warranted under section 363(b)(1) of the Bankruptcy Code and the doctrine of necessity.  *See id.* § 363(b)(1).

49.     The Debtors' Workforce is essential to the Debtors' business, and payment of the Compensation and Benefits at this time is necessary to avoid potential material disruption to the Debtors' ordinary-course operations.  Finding, attracting, and training new qualified talent would be extremely difficult, particularly given current labor market conditions.  Such recruitment efforts would most likely require, among other things, higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to the Workforce.

**B.      Payment of Certain Compensation and Benefits Is Required by Law.**

50.     As discussed above, the Debtors seek authority to pay the Withholding Obligations to the appropriate third-party payees.  These amounts principally represent earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages.  Certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' wages on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Further, federal, state, and local laws require the Debtors to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon*

*Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business.  *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998).

51.    Similarly, state laws require the Debtors to maintain the Workers' Compensation Program.  If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Payment of all obligations related to the Workers' Compensation Program is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases.

52.    The Debtors, therefore, respectfully request that the Court recognize that the Withholding Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary course of business.

## II.    Payment of the Compensation and Benefits Is Warranted Under Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

53.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World*

*Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

54. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

55. Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its power under section 105(a) of the

24

Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

56. These standards are satisfied here. The Debtors submit that the payment of the Compensation and Benefits in the ordinary course represents a sound exercise of the Debtors' business judgment and is necessary to avoid immediate and irreparable harm to the Debtors' estates and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying the Compensation and Benefits in the ordinary course will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption. Indeed, the Debtors believe that without the relief requested herein, the Workforce may seek alternative employment opportunities, perhaps with the Debtors' competitors. Such a development would deplete the Debtors' Workforce, thereby hindering the Debtors' ability to operate their businesses and, likely, diminishing stakeholder confidence in the Debtors' ability to

successfully reorganize.  The loss of the valuable Workforce and the resulting need to recruit

new personnel (and the costs attendant thereto) would be distracting at this crucial time when the

Debtors need to focus on stabilizing their business operations.  Accordingly, the Debtors must do

their utmost to retain their Workforce by, among other things, paying the Compensation and

Benefits in the ordinary course.

57.    In addition, many members of the Workforce rely exclusively on the

Compensation and Benefits to satisfy their daily living expenses.  Consequently, members of the

Workforce will be exposed to significant financial difficulties if the Debtors are not permitted to

pay the Compensation and Benefits in the ordinary course.  Moreover, failure to timely satisfy

such obligations will jeopardize Workforce morale and loyalty at this critical time, when needed

most.  Furthermore, if this Court does not grant the relief requested herein, Employees will not

receive health coverage and, thus, may be obligated to pay certain healthcare claims that the

Debtors have not satisfied.  The loss of healthcare coverage will result in considerable anxiety

for Employees (and likely attrition) at a time when the Debtors need all Employees to perform

their best.  Additionally, as set forth above, Employee attrition would cause the Debtors to incur

additional expenses to find appropriate and experienced replacements, severely disrupting the

Debtors' operations at this critical juncture.

58.    The importance of a debtor's workforce to its operations has been repeatedly

recognized by courts in this district, and such courts have granted relief similar to the relief

requested herein.  *See, e.g.*, *In re Invitae Corp.,* No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 13,

2024) (authorizing the debtors to (a) pay prepetition employee wages, salaries, and other

compensation, and reimbursable expenses, and (b) continue employee benefits programs);

*In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same);

*In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Nov. 8, 2023) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (same); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D.N.J. May 18, 2023) (same).

59.    Additionally, courts in this district and others have authorized payments of prepetition commission obligations made in the ordinary course.  *See, e.g.*, *In re Invitae Corp.,* No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 13, 2024) (authorizing the debtors to continue employee compensation and benefit programs and pay certain prepetition obligations in the ordinary course); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (same); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D.N.J. May 18, 2023) (same); *In re BlockFi, Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 17, 2023) (same);[11] Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue the Compensation and Benefits and pay related obligations in the ordinary course of business.

**III.    The Non-Insider Bonus Programs Should Be Approved Because They Are Valid Exercise of the Debtors' Business Judgment and Are Justified by the Facts and Circumstances of these Chapter 11 Cases.**

60.    The Debtors believe they have authority to continue any Non-Insider Bonus Programs as it is an ordinary course continuation of the Debtors' prepetition practices authorized by section 363(c) of the Bankruptcy Code and constitutes a sound exercise of the Debtors' business judgment.  *See, e.g., In re Dana Corp.*, 358 B.R. 567, 581 (Bankr. S.D.N.Y. 2006); *In re Glob. Home Prods., LLC*, 369 B.R. 778, 786 (Bankr. D. Del. 2007).  However, out of an abundance of caution, the Debtors further believe that the Non-Insider Bonus Programs comply

---

[11]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

with the requirements of sections 503(b) and (c) of the Bankruptcy Code.  Accordingly, for the reasons more fully set forth below, any payments under the Non-Insider Bonus Programs, to the extent there are any, are justified by the facts and circumstances of the Debtors' chapter 11 cases and should be approved.

61.     The standard for determining if the Non-Insider Bonus Programs do not run afoul of section 503(c)(3) of the Bankruptcy Code's requirement that such contemplated payments be justified by the facts and circumstances of the case is essentially the same business judgment standard articulated under section 363(b) of the Bankruptcy Code.  *See In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012) ("Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."). Section 503(c)(3) of the Bankruptcy Code generally prohibits certain transfers made to officers, managers, consultants, and others that are not justified by the facts and circumstances of the case.  11 U.S.C. § 503(c)(3).

62.     Because implementing the Non-Insider Bonus Programs will motivate the Debtors' Employees to the benefit of all parties in interest, the Non-Insider Bonus Programs reflect a sound exercise of the Debtors' business judgment and is justified by the facts and circumstances of these chapter 11 cases.  *See, e.g., In re Glob. Home Prods., LLC*, 369 B.R. at 784 ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."); *In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 WL 3810899, *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (holding that bonus payments are "'justified by the facts and circumstances of the case' under section 503(c)(3) [where] they are within the 'sound business judgment' of the Debtors" (citation omitted)).  Accordingly, to the extent necessary, the Non-Insider Bonus Programs satisfy section 503(c)(3) of the Bankruptcy Code.

IV.    **A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here.**

63.    Section 362(a) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

64.    Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id*. at § 362(d)(1).

65.    In accordance with section 362(d) of the Bankruptcy Code, the Debtors seek to modify the automatic stay to permit Employees to proceed with their workers' compensation claims in the appropriate judicial or administrative forum.  Cause exists here to modify the automatic stay because staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of certain Employees and lead to the departure of Employees who are critical at this juncture.  Such departures could cause a severe disruption in the Debtors' business, which would be to the detriment of all parties in interest.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

66.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments,

will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**The Requirements of Bankruptcy Rule 6003(b) Are Satisfied**

67.      Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first thirty (30) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Payment of the Compensation and Benefits and other relief discussed herein is vital to a smooth transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

68.      To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Waiver of Memorandum of Law**

69.      The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## **Reservation of Rights**

70.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## **No Prior Request**

71.     No prior request for the relief sought in this Motion has been made to this or any other court.

**Notice**

72.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the Office of the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc Group; (d) counsel to the Administrative Agent under the Revolving Credit Facility; (e) the United States Attorney's Office for the District of New Jersey; (f) the Internal Revenue Service; (g) the attorneys general in the states where the Debtors conduct their business operations; (h)  the U.S. Securities and Exchange Commission; (i)  Workday, Inc.; (j)  OneSource Virtual; (k) UnitedHealthcare; (l) Guardian; (m) Optum Bank; (n) Navia; (o) MEMIC Indemnity Company; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice is needed.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order

and the Final Order, in substantially the forms submitted herewith, granting the relief requested

herein and such other relief as is just and proper under the circumstances.

Dated: February 28, 2024

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
          wusatine@coleschotz.com
          fyudkin@coleschotz.com
          jfrumkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>THRASIO HOLDINGS, INC., *et al.*,<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 24-11840 (CMG)<br><br>(Joint Administration Requested) |

## INTERIM ORDER AUTHORIZING THE
## DEBTORS TO (I) PAY PREPETITION WAGES,
## SALARIES, OTHER COMPENSATION, AND REIMBURSABLE
## EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

Upon the Debtors' *Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (II) Continue Employee Benefits Programs* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (i) authorizing the Debtors to pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (ii) scheduling a final hearing (the "Final Hearing") to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

1.      The Motion is **GRANTED** on an interim basis as set forth in this Interim Order.

2.      The Final Hearing on the Motion will be held on _____, **2024**, at _____ (**prevailing Eastern Time**).  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtors' proposed counsel on or before _____, **2024 at 4:00 p.m.** (**prevailing Eastern Time**).  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized to continue to provide, and to pay any claims or obligations on account of the Compensation and Benefits in the ordinary course and in accordance with the Debtors' prepetition policies and prepetition practices and the terms of this Interim Order; *provided* that the Debtors shall not make any payments in excess of the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code to any individual Employee without further order of this Court; *provided, further* that (a) the Debtors shall seek Court approval, on notice, of any modification or change that would implicate any portion of section 503(c) of the Bankruptcy Code; and (b) nothing herein shall be deemed to authorize the payment of any amounts that violate, implicate, or are otherwise subject to section 503(c) of the Bankruptcy Code.  If the Debtors seek to pay any amounts that are subject to section 503(c) of the Bankruptcy Code, the Debtors will seek approval of such payments, if any, by separate motion under section 503(c) of the Bankruptcy Code.  Nothing in this Interim Order shall be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code.

(Page | 5)

| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
|---|---|
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

4. Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is modified solely to the extent necessary to allow Employees to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum, and Employees are authorized to so proceed. The Debtors are authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business in accordance with the Debtors' prepetition policies and practices. The modification of the automatic stay set forth in this paragraph pertains solely to claims under the Workers' Compensation Program.

5. The Debtors will provide seven (7) days' notice of any material changes to the programs and policies of their Employees and any new Employee compensation or Employee obligations including Compensation and Benefits to Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc Group, the U.S. Trustee and any statutory committees appointed in these cases.

6. The Debtors shall not make any bonus, incentive, or severance payments to any "Insider" (as such term is defined in section 101(31) of the Bankruptcy Code) without consulting with the Ad Hoc Group.

7. For the avoidance of doubt, to the extent any obligations arise under the WARN Acts, the Debtors will provide the U.S. Trustee and the Ad Hoc Group, on a confidential basis, notice within 5 business days of making payments in connection thereto.

8. The Debtors are authorized to forward any unpaid amounts on account of Withholding Obligations to the appropriate third-party recipients or taxing authorities in the ordinary course of business in accordance with the Debtors' prepetition policies and practices.

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

9.     The Debtors are authorized to pay in the ordinary course of business any costs and expenses incidental to payment of the Compensation and Benefits obligations, including all administrative and processing costs, and necessary payments in accordance with the Debtors' prepetition policies and practices.

10.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits obligations.

11.     Nothing herein shall be deemed to authorize the Debtors to cash out unpaid Paid Leave Benefits except upon termination of an Employee, if applicable nonbankruptcy law requires such payment.

12.     For the avoidance of doubt, to the extent any obligations arise under the WARN Acts, the Debtors will provide the U.S. Trustee and the Ad Hoc Group notice within five (5) business days of making payments in connection thereto.

13.     Nothing in the Motion or this Interim Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to this Interim Order is or is not an "insider" (as such term is defined in section 101(31) of the Bankruptcy Code).

14.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

(Page | 7)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

15.     Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

16.     Notwithstanding anything to the contrary contain in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting*

| (Page | 8) | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

*Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

17.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

18.     The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

19.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

21.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

(Page | 9)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

22.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

23.     The Debtors shall serve a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f).

24.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>THRASIO HOLDINGS, INC., *et al.*,<br><br>                                   Debtors.[1] | Chapter 11<br><br>Case No. 24-11840 (CMG)<br><br>(Joint Administration Requested) |

**FINAL ORDER**
**AUTHORIZING THE DEBTORS TO**
**(I) PAY PREPETITION WAGES, SALARIES,**
**OTHER COMPENSATION, AND REIMBURSABLE**
**EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

The relief set forth on the following pages, numbered three (3) through eight (8), is

**ORDERED.**

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio.  The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

Upon the Debtors' *Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (II) Continue Employee Benefits Programs (*the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") authorizing the Debtors to pay prepetition wages, salaries, other compensation, and reimbursable expenses, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

1.      The Motion is **GRANTED** on a final basis as set forth in this Final Order.

2.      The Debtors are authorized to continue to provide, and to pay any claims or obligations on account of the Compensation and Benefits in the ordinary course and in accordance with the Debtors' prepetition policies and prepetition practices and the terms of this Final Order; *provided* that the Debtors shall not make any payments in excess of the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code to any individual Employee without further order of this Court.

3.      Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is modified solely to the extent necessary to allow Employees to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum, and Employees are authorized to so proceed.  The Debtors are authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business.  The modification of the automatic stay set forth in this paragraph pertains solely to claims under the Workers' Compensation Program.

4.      The Debtors will provide seven (7) days' notice to Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc Group, of any non-ordinary course changes or modifications to the programs and policies for their Employees and any new Employee compensation or Employee obligations; *provided*, *however*, no such non-ordinary course changes or modifications shall be made without consulting with the Ad Hoc Group, including any changes or modifications that implicate any provision of section 503(c) of the Bankruptcy Code.

(Page | 5)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

5.      The Debtors shall not make any bonus, incentive, or severance payments to any "insider" (as such term is defined in section 101(31) of the Bankruptcy Code) without consulting with the Ad Hoc Group.

6.      The Debtors are authorized to forward any unpaid amounts on account of Withholding Obligations to the appropriate third-party recipients or taxing authorities in the ordinary course of business.

7.      The Debtors are authorized to pay in the ordinary course of business any costs and expenses incidental to payment of the Compensation and Benefits obligations, including all administrative and processing costs, and necessary payments to outside professionals.  Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits obligations.

8.      Nothing herein shall be deemed to authorize the Debtors to cash out unpaid Paid Leave Benefits except upon termination of an Employee, if applicable nonbankruptcy law requires such payment.

9.      Nothing in the Motion or this Final Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to this Final Order is or is not an "insider" (as such term is defined in section 101(31) of the Bankruptcy Code).

10.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

11.     Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

12.     Notwithstanding anything to the contrary contain in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to*

(Page | 7)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

*Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* filed substantially contemporaneously herewith (the "<u>DIP Orders</u>"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

13.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

14.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

(Page | 8)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS |

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.