**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

# DEBTORS' MOTION FOR
# ENTRY OF INTERIM AND FINAL
# ORDERS (I) AUTHORIZING THE DEBTORS
# TO PAY CERTAIN PREPETITION CLAIMS OF
# (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9)
# CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING
# ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):[2]

## **Relief Requested**

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) authorizing the Debtors to pay, in their sole discretion and in the ordinary course of business, certain prepetition claims of (i) shippers, warehousers, fulfillment centers, logistics providers, distribution vendors, and other lien claimants (the "Lien Claimants"), (ii) foreign vendors (the "Foreign Vendors"), (iii) vendors from which the Debtors received goods or services within the twenty (20) day window immediately preceding the Petition Date (the "503(b)(9) Claimants"), and (iv) Critical Vendors (as defined herein, and together with the Lien Claimants, Foreign Vendors, and 503(b)(9) Claimants, the "Vendors"), and (b) confirming the administrative expense priority status of certain outstanding orders (the "Outstanding Orders") and authorizing the payment of such obligations in the ordinary course of business.  In addition, the Debtors also request that the Court schedule a final hearing within thirty (30) days of the commencement of these chapter 11 cases to consider entry of the Final Order.

## **Jurisdiction and Venue**

2.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

---

[2]   A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Josh Burke, Chief Financial Officer of Thrasio Holdings, Inc., in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on February 28, 2024 (the "Petition Date").  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363, 503, 1107(a), and 1108 of the Bankruptcy Code, rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

5.      On the Petition Date, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## Overview of the Vendors

6.      To operate in the e-commerce industry and manage their global operations, the Debtors rely on third-party Vendors for, among other things, manufacturing, shipping, warehousing, fulfillment, and logistics needs. Such goods and services are crucial to the Debtors' ability to manage source and store inventory as well as promptly ship products to customers worldwide. Without access to the Vendors' good and services, the Debtors would be unable to source inventory and sell products, both of which are crucial to the Debtors' operations. Any

3

disruption in receiving the Vendors' goods and services would bring the Debtors' businesses to a complete halt and severely hinder operations.

7.    The Debtors are making every effort to avoid interruptions to their operations and supply chain during the pendency of these chapter 11 cases.  The Debtors believe that many Vendors who are not party to executory contracts with the Debtors will threaten to cease doing business with the Debtors unless they are paid on account of their prepetition debt.  Without these Vendors, the Debtors would be left without the goods and services necessary to maintain the smooth operation of the Debtors' businesses while in chapter 11.

8.    To maintain stability during the initial days of these chapter 11 cases and to avoid jeopardizing the Debtors' ability to service their customers going forward, the Debtors request authorization to pay certain outstanding prepetition claims of the Vendors (such claims, collectively, the "Trade Claims"),[3] subject to the limitations set forth in the Interim Order and Final Order, in the aggregate amounts and categories listed below.  The following table summarizes the categories of Trade Claims that the Debtors request authority to pay pursuant to this Motion and the estimated prepetition amounts outstanding within each such category:

---

[3]    For the avoidance of doubt, the Debtors do not seek authority to pay prepetition claims to any non-Debtor affiliates, any insiders (as such term is defined in section 101(31) of the Bankruptcy Code), or any affiliate of any insiders.

| Category | Description of Services Provided | Estimated Amount Due or Due to Be Paid Within Thirty (30) Days Following Petition Date | Estimated Amount Outstanding as of Petition Date |
|---|---|---|---|
| Lien Claimants | Suppliers of goods or services utilized or provided to the Debtors that have, or may in the future assert, shipper's, warehouse, possessory, or other similar liens. | $5,340,000 | $8,810,000 |
| Foreign Vendors | Suppliers of goods and services outside of the United States. | $3,690,000 | $8,430,000 |
| 503(b)(9) Claimants | Suppliers that provided goods or services to the Debtors that were received within 20 days before the Petition Date. | $740,000 | $740,000 |
| Critical Vendors | Suppliers of goods and services that are critical to maintain the Debtors' day to day operations, of which are primarily sole or limited source providers of the goods and services necessary for the uninterrupted operations of the Debtors' businesses. | $860,000 | $1,440,000 |
| **Total amount of Claims:** | | **$10,630,000** | **$19,420,000** |

9.     The Debtors intend to apply their business judgment and discretion on a case-by-case basis and pay only those Trade Claims that are critical to maintaining the supply chain and provide the Debtors with favorable postpetition terms.

**I.     Lien Claimants**.

10.     The Debtors routinely transact with a number of Lien Claimants who have, or may during these chapter 11 cases, assert various statutory liens, including shipper's, warehouse, possessory, or other similar liens against the Debtors and their property and the property of the Debtors' customers if the Debtors fail to pay for the services rendered.

11.     The Debtors' business depends on the uninterrupted flow of goods. To maintain their operations, the Lien Claimants transport, distribute, and warehouse the products that the Debtors provide to their customers. The Lien Claimants include commercial common carriers, shippers, freight forwarders/consolidators, delivery services, warehousers, fulfillment centers, logistics providers, and other similar third-party transportation service providers. The Lien

Claimants: (i) ship, transport, store, and otherwise facilitate the movement of goods; (ii) deliver goods through established distribution networks; and (iii) utilize a network of third-party warehouses to store such goods in transit.

12.    Under certain non-bankruptcy laws, the Lien Claimants may be able to assert liens on the goods in their possession or on the property they improved (as applicable) to secure payment of the charges or expenses incurred in connection with these prepetition obligations (the "Lien Claims").  Accordingly, in the event these claims remain unpaid, the Lien Claimants could attempt to assert such liens and refuse to deliver or release goods in their possession or otherwise impede the Debtors' and/or the Debtors' customers' use of property until their claims are satisfied and their liens are redeemed.  The Lien Claimants' possession (and retention) of the Debtors' goods and supplies or enforcement of such liens would disrupt the Debtors' operations, harm the Debtors' customers, and affect the Debtors' ability to efficiently administer these chapter 11 cases.  Likely, the cost of such disruption would be greater than the amounts owed under such Lien Claims.  Furthermore, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of any valid possessory lien, which could drain estate assets.  On average, the Debtors pay approximately $13,220,000 each month to the Lien Claimants.  As of the Petition Date, the Debtors estimate that they have accrued approximately $8,810,000 on account of the Lien Claims, approximately $5,340,000 of which is due or will become due within the first thirty (30) days of these chapter 11 cases.

13.    To continue using the Lien Claimants' services, the Debtors request authority to pay the prepetition Lien Claims as they become due and payable and to continue paying the Lien Claims in the ordinary course of business.  For the avoidance of doubt, the Debtors seek authority to pay only those amounts of Lien Claims that the Debtors determine, in their sole discretion, to

be necessary or appropriate to (a) obtain release of critical or valuable goods, (b) maintain reliable, efficient, and smooth operations, and (c) induce the Lien Claimants to continue performing and otherwise supporting the Debtors' operations on a postpetition basis.

## II.    **Foreign Vendors**.

14.    In the ordinary course of business, the Debtors routinely engage in transactions with the Foreign Vendors that are crucial to the Debtors' business operations.  Specifically, the Debtors incur certain obligations from manufacturers and suppliers located outside of the United States, including, but not limited to China, India, Germany, and the United Kingdom.  Additionally, certain Foreign Vendors in the United Kingdom provide necessary logistics services to the Debtors.  The Debtors require these goods and services from the Foreign Vendors to properly operate their businesses in the ordinary course as these goods and services help the Debtors maintain inventory and timely deliver products to customers.

15.    There is significant risk that nonpayment of prepetition claims could cause Foreign Vendors to stop providing goods and services on a timely basis following the Petition Date or sever their business with the Debtors completely.  Many of the Foreign Vendors lack meaningful, if any, contacts with the United States.  Thus, the Foreign Vendors may consider themselves beyond the jurisdiction of the Court, and therefore, may disregard the automatic stay, notwithstanding the automatic stay's global effect.  Lawsuits in non-U.S. courts and efforts to exercise other remedies in non-U.S. jurisdictions, including the assertion of liens by the Foreign Vendors, could result from a failure to make payment to such parties in the ordinary course, including on account of prepetition claims (such claims, the "Foreign Vendor Claims").  It would be unduly time-consuming and burdensome for the Debtors to seek to enforce an order of the Court in a Foreign Vendor's country in many instances, thereby compounding the loss and disruption in services.  As with any company, receiving products and services in a timely and cost-effective

manner is critical to the Debtors' business– the Debtors cannot afford delays of this nature or the increased costs associated therewith.

16.     For the twelve months before the Petition Date, on average, the Debtors paid the Foreign Vendors approximately $8,940,000 per month.   The Debtors estimate that, as of the Petition Date, approximately $8,430,000 is outstanding on account of Foreign Vendors, approximately $3,690,000 of which is due or will become due within the first thirty (30) days of these chapter 11 cases.

17.     To maintain access to the critical goods and services provided by the Foreign Vendors, the Debtors request authority to pay the prepetition Foreign Vendors as they become due and payable and to continue paying the Foreign Vendors in the ordinary course of business.   For the avoidance of doubt, the Debtors intend to pay prepetition Foreign Vendors only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the costs.

### III.    The 503(b)(9) Claimants.

18.     The Debtors may have received certain inventory, goods, and/or materials from the 503(b)(9) Claimants within the twenty (20) days immediately preceding the Petition Date, thereby giving rise to claims that are accorded administrative priority under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims").   Many of the Debtors' relationships with the 503(b)(9) Claimants are not governed by long-term contracts or supply agreements.   Instead, the Debtors obtain inventory, goods, or other materials from such claimants on a purchase order basis.   As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its 503(b)(9) Claims, and such refusal could negatively affect the Debtors' estates as the Debtors' businesses are dependent on the steady flow of inventory and timely shipping of the Debtors' products.

19.     Additionally, certain 503(b)(9) Claimants supply goods or materials that are critical to the Debtors' ongoing operations.  Unless the Debtors pay some or all of the prepetition claims owing to such vendors, the 503(b)(9) Claimants may reduce the Debtors' existing trade credit or refuse to ship postpetition.  Any interruption in the flow of these goods would be highly disruptive to the Debtors' operations, value-destructive for the Debtors' businesses, and potentially harmful for certain of the Debtors' customers given the extremely competitive marketplace in which the Debtors operate.  As such, the Debtors believe that payment of the 503(b)(9) Claimants is essential to avoid disruptions to the Debtors' operations.

20.     The Debtors estimate that, as of the Petition Date, approximately $740,000 is outstanding on account of 503(b)(9) Claims, and the Debtors are seeking authority to pay approximately $740,000 during the first thirty (30) days of these chapter 11 cases.

**IV.     Critical Vendors**.

21.     To survive in the extremely competitive e-commerce industry, it is essential that the Debtors have the ability to timely ship their inventory to customers.  The Debtors' ability to continue generating revenue and operating their businesses, and thus the success of these chapter 11 cases, fundamentally depends on the Debtors' continued access to their essential inventory and shipping services.  The Debtors rely on products and services provided by certain indispensable vendors that enable the Debtors to effectively provide the goods and services that are fundamental to the success of the Debtors' business (the "Critical Vendors").

22.     The ability to maintain relationships with the Critical Vendors throughout the pendency of these chapter 11 cases is imperative to the Debtors' ability to preserve and maximize value of the estate for the benefit of all stakeholders.  The Critical Vendors primarily consist of sole source manufacturers responsible for manufacturing the Debtors' products and related components, including customized chemical formulas, bespoke packaging design, and tailored

9

labeling.    These Critical Vendors provide key products and services related to the Debtors'

operations that are integral to ensuring the Debtors' businesses run smoothly.    Any disruption to

the Debtors' supply of inventory and supply chain services risks significant and irreparable harm

to the Debtors' business, as customers would almost certainly turn to the many alternative sources

in the market for the Debtors' products.    Furthermore, failure to timely provide goods to customers

would harm the Debtors' relationship with Amazon.com Services LLC (together with certain of

its affiliates, "<u>Amazon</u>"), the Debtors' primary selling platform.    The failure to timely provide

goods limit the Debtors' ability to list products on the Amazon marketplace, suspend the Debtors'

Amazon Sale Accounts (as defined in the Amazon Motion),[4] and decrease visibility of the Debtors'

products on the Amazon marketplace.    In addition, the inability to timely procure inventory would

significantly impair the Debtors' ability to navigate through these chapter 11 cases.    Accordingly,

it is essential to the success of the Debtors' restructuring efforts that relationships with key legacy

vendors be unimpeded by the filing of these chapter 11 cases.

23.    In light of these concerns, the Debtors, with the assistance of their advisors, have

spent significant time evaluating the vendor relationships and the supply chain, consulting

operation managers and merchandise managers, reviewing contracts and supply agreements, and

analyzing applicable law, regulations, and historical practices to identify the Critical Vendors that

supply the products and services most vital to the Debtors' go-forward operations.    To that end,

the Debtors identified the Critical Vendors pursuant to the following criteria:

- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods and services from alternative sources;

---

[4]    *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue Utilizing Amazon Services in the Ordinary Course of Business and (II) Honor Any Obligations with Respect Thereto* filed contemporaneously herewith (the "<u>Amazon Motion</u>").

- whether a particular vendor is a "sole source" supplier or service provider;

- whether the services provided by the vendor are so vital, or the vendor's operations are so commingled with the Debtors' business, that even the briefest disruption would cause significant harm to the Debtors' operations;

- whether the Debtors would be unable to obtain comparable products or services from alternative sources on a cost-effective basis within a reasonable timeframe;

- whether alternative vendors are available that can provide the requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether the Debtors' inventory levels or service coverage is sufficient to meet customer demands while an alternative vendor is located;

- the location and nationality of the vendor;

- whether a vendor meeting the foregoing criteria is able or likely to refuse to continue providing essential products or services to the Debtors if their prepetition balances are not paid; and

- whether the business relationship between the Debtors and the supplier is governed by a contract.

24.    The Debtors' selection process balanced the need to ensure that these chapter 11 cases do not disrupt their operations or negatively impact their operations and customers, with the need to limit the expenditure of estate resources.  The Debtors undertook a lengthy process to ensure that the Critical Vendors truly represent those vendors that are most vital to the Debtors' ongoing operations.  Paying targeted prepetition claims of Critical Vendors (the "Critical Vendor Claims") benefits the Debtors' estates, both monetarily and operationally, by preserving liquidity and enabling the Debtors to operate effectively during these chapter 11 cases.

25.     For the twelve (12) months before the Petition Date, on average, the Debtors paid the Critical Vendors approximately $1,590,000 per month.  The Debtors estimate that, as of the Petition Date, approximately $1,440,000 outstanding on account of Critical Vendor Claims, and the Debtors are seeking authority to pay approximately $860,000 during the first thirty (30) days of these chapter 11 cases.

26.     The Debtors rely on Critical Vendors for key products and services that are essential to the smooth functioning of the Debtors' businesses.  To maintain stability during this critical stage of these chapter 11 cases and to avoid jeopardizing the Debtors' business operations going forward, the Debtors request authority to pay the Critical Vendor Claims as they become due and to pay the Critical Vendor Claims only where they believe that the benefits to their estates for making such payments will exceed the costs.

**V.      Customary Trade Terms.**

27.     Subject to the Court's approval, the Debtors intend to pay the Trade Claims only to the extent necessary to preserve the value of their estates.  To that end, in return for paying a portion of the Trade Claims, the Debtors propose that they be authorized to require the Vendors to provide favorable trade terms for the postpetition procurement of their goods and services. The Debtors seek authorization to condition payment of the Trade Claims upon each Vendor's agreement to (a) continue—or recommence—providing goods and/or services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms"), and (b) agree that they shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide such goods and/or services to the Debtors during the course of these chapter 11 cases.  The Debtors also seek

authorization to require, at their discretion, certain Lien Claimants, Foreign Vendors, 503(b)(9) Claimants, and Critical Vendors to enter into a contractual agreement evidencing such Customary Trade Terms, the forms of which are attached to the Interim Order and Final Order, respectively, as Exhibit 1 thereto (together, the "Trade Agreement").  The Debtors shall require that any agreement to Customary Trade Terms be made in writing, either by use of the Trade Agreement or e-mail.

28.     The Debtors request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter ceases to provide goods or services in accordance with the Customary Trade Terms, then  (a) the Debtors may take any and all appropriate steps to recover from such Vendor any payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such party; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if an outstanding postpetition balance is due from the Debtors to such party, (i) the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance, and (ii) such Vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

**VI.     Payment of Outstanding Orders.**

29.     Before the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (collectively, the "Outstanding Orders").  To avoid the risk of becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors

issue substitute purchase orders postpetition. To prevent any disruption to the Debtors' business operations, and given that goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtors seek an order (a) granting administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders, and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business as they come due.

## Basis for Relief

### I.      The Court Should Authorize the Payment of the Trade Claims.

30.      Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments to critical vendors, where necessary to protect and preserve the estate. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

31.      Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides

"broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

32.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825. Specifically, the Court may use its equitable power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

33.     Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine

permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

34.    Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.*

35.    The Debtors have a sound business purpose for the relief requested herein. The authority to honor unpaid, prepetition Lien Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Critical Vendor Claims in the initial days of these chapter 11 cases, without disrupting the Debtors' operations, will maintain the integrity of the Debtors' supply chain, facilitate the sale of the Debtors' products, and allow the Debtors to efficiently administer these chapter 11 cases.

36.    The resulting harm to the Debtors' estates far outweighs the costs associated with paying the Debtors' prepetition obligations to the Lien Claimants, Foreign Vendors, 503(b)(9) Claimants, and Critical Vendors. Thus, the Debtors' other creditors will be no worse off, and likely fare better, if the Debtors are empowered to negotiate such payments to achieve a smooth

transition into chapter 11 with minimal disruption to their operations.  As such, the Debtors believe the relief sought in this Motion will not burden the Debtors but will help them maximize the value of their estates.  Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the Lien Claims, the Foreign Vendor Claims, the 503(b)(9) Claims, and Critical Vendor Claims.

### A.    The Court Should Authorize the Payment of Lien Claims.

37.    Certain Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain shipper's, warehouse, or possessory liens on the Debtors' goods or equipment in their possession in an attempt to secure payment of their prepetition claim.    Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay. *See* 11 U.S.C. § 362(b)(3); 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires right in such property before the date of perfection.").  The Debtors anticipate that certain of the Lien Claimants may assert or perfect liens, simply refuse to turn over goods in their possession, or stop performing their ongoing obligations. Even absent a valid lien, to the extent certain Lien Claimants have possession of the Debtors' equipment or other property, mere possession or retention could disrupt the Debtors' operations,

38.    Paying the Lien Claimants should not impair unsecured creditor recoveries in these chapter 11 cases.  In instances where the amount owed to a Lien Claimant is less than the value of the goods that could be held to secure a Lien Claimant's claim, such party may be a fully secured creditor of the Debtors' estates.  In such instances, payment now only provides such party with what they might be entitled to receive under a plan of reorganization, without any interest costs

17

that might otherwise accrue during these chapter 11 cases.  Conversely, all creditors will benefit
from the seamless transition of the Debtors' operations into bankruptcy.

39.    Further, the Debtors require a steady provision of the services related to the Lien
Claimants to maintain operational stability.  Without the Lien Claimants, the Debtors could be
forced to unexpectedly halt operations while they search for substitute vendors and service
providers, thereby preventing the Debtors from capturing revenue, and more critically, maintaining
standards of care and service.  Any disruption to the Debtors' supply chain could result in a
significant loss of operational efficiency, which could irreparably harm the Debtors' businesses.

40.    For these reasons, courts in this circuit have authorized the payment of prepetition
lien claims under similar circumstances in recent chapter 11 cases.  *See, e.g.*, *In re Invitae Corp.*,
No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (authorizing payment of certain lien claims
on an interim basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24,
2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20, 2023)
(authorizing payment of certain lien claims on a final basis); *In re WeWork Inc.*, No. 23-19865
(JKS) (Bankr. D.N.J. Dec. 6, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS)
(Bankr. D.N.J June 29, 2023) (same).[5]  Accordingly, for the reasons set forth herein, the Debtors
submit that it is appropriate for the Court to authorize the Debtors to satisfy the Lien Claims.

**B.    The Court Should Authorize the Payment of the Foreign Vendor Claims.**

41.    Each of the Foreign Vendors are based outside the United States.  The Foreign
Vendors may, and likely do, lack minimum contacts with the United States.  Thus, there is
significant risk that the Foreign Vendors consider themselves beyond the jurisdiction of the Court

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request of the Debtors' proposed counsel.

and therefore may disregard the automatic stay, notwithstanding the automatic stay's global effect. Failure to make payment to such parties in the ordinary course could lead to a proliferation of lawsuits in foreign courts and efforts to exercise other detrimental remedies overseas. In many instances, it would be unduly time-consuming and expensive to seek to enforce an order of the Court in the creditor's home country.

42.     Accordingly, non-payment of any claims owing to Foreign Vendors could lead to immediate and significant disruption to the Debtors' business that would heavily outweigh the cost of paying such parties in connection with their prepetition claims, and continuing to pay them on a postpetition basis, in the ordinary course of business. The Debtors believe that paying prepetition Foreign Vendors Claims is necessary to protect the Debtors' business and ensure that the Debtors are able to maximize the value of their estates during these chapter 11 cases.

43.     Courts in this circuit regularly grant relief consistent with that which the Debtors are seeking in this Motion. *See, e.g.*, *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (authorizing the debtors to pay foreign vendor claims on an interim basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (authorizing the debtors to pay foreign vendor claims on a final basis); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J June 29, 2023) (same).[6] Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the Foreign Vendor Claims.

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

**C.**      **The Court Should Authorize the Payment of 503(b)(9) Claims.**

44.      Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within [twenty] days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."   The 503(b)(9) Claims must be paid in full for the Debtors to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(A).  Payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan, unless they consented otherwise.   The timing of such payments also lies squarely within the Court's discretion. *See In re Global Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").  The Debtors' ongoing ability to obtain goods is key to their survival and necessary to preserve the value of their estates.  Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases, the Debtors could be denied access to the goods necessary to maintain the Debtors' business operations and maximize the value of the Debtors' estates.

45.      Moreover, the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation.  As administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.   *See, e.g.*, Transcript of Hearing held on October 31, 2006 at 49, *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Nov. 6, 2006) ("THE COURT: I think arguably the debtor could pay its 503(b)(9) claimants without court approval.").  Again, the timing of such payments lies squarely within the Court's discretion. *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3.

46.    For these reasons, courts in this circuit have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *See, e.g.*, *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (authorizing payment to parties with section 503(b)(9) claims on an interim basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20, 2023) (authorizing payment to parties with section 503(b)(9) claims on a final basis); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J June 29, 2023) (same).[7]  Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the 503(b)(9) Claims.

**D.    The Court Should Authorize the Payment of Critical Vendor Claims.**

47.    The Debtors require the provision of the goods and services provided by the Critical Vendors to continue operating their businesses and maintain operational stability, to the ultimate benefit of the Debtors' estate.  Without the products and services provided by the Critical Vendors, the Debtors could be forced to unexpectedly halt operations while they search for substitute vendors and service providers and may have to forego existing favorable trade terms as a result of their haste to find new vendors, preventing the Debtors from capturing revenue.  Critical Vendor Claims must be processed quickly and timely, as any delay in scheduled payment could pose disruption to the business.  Any disruption to the provision of goods and services provided by the Critical Vendors could jeopardize the Debtors' ability to timely ship their products to customers

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

and properly manage inventory, which in turn could completely bar the Debtors from selling products on the Amazon store.

48.     The Debtors operate in a highly competitive market, and customers have many readily available alternative providers for the products delivered by the Critical Vendors.  As discussed herein, if the Debtors are unable to continue providing these goods and services, then the Debtors' customers will certainly take their business elsewhere.  In short, without the relief requested, the Debtors' core businesses will suffer immediate and irreparable harm.

49.     Allowing the Debtors to pay the Critical Vendor Claims is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors.  *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).  Indeed, reflecting the recognition that payment of prepetition claims of certain essential suppliers and vendors is, in fact, both critical to a debtor's ability to preserve any going-concern value and maximize creditor recovery—thereby increasing prospects for a successful reorganization—courts in this circuit regularly grant relief consistent with that which the Debtors are seeking in this Motion.  *See, e.g.*, *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (authorizing the debtors to pay critical vendor claims on an interim basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20, 2023) (authorizing the debtors to pay critical vendor claims on a final basis); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr.

D.N.J June 29, 2023) (same).[8]  Accordingly, for the reasons set forth herein, the Debtors submit

that it is appropriate for the Court to authorize the Debtors to satisfy the Critical Vendor Claims.

## II.    The Court Should Confirm That Outstanding Orders Are Administrative Expense Priority Claims and That Payment of Such Claims Is Authorized.

50.    Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in

connection with the postpetition delivery of goods and services, including goods ordered

prepetition, are administrative expense priority claims because they benefit the estate postpetition.

*See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of

preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797,

809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition

are entitled to administrative priority).  Thus, granting the relief sought herein with respect to the

Outstanding Orders will not afford such claimants any greater priority than they otherwise would

have if the relief requested herein were not granted and will not prejudice any other party in

interest.

51.    Absent such relief, however, the Debtors may be required to expend substantial

time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of

such administrative priority.  The attendant disruption and delay to the continuous and timely flow

of critical materials and other goods to the Debtors would force the Debtors to potentially halt

operations and production, disrupt the Debtors' business, and lead to a loss of revenue, all to the

detriment of the Debtors and their creditors.

52.    Indeed, courts in this circuit routinely grant the type of relief requested herein.

*See, e.g.*, *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (granting

---

[8]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

administrative expense priority to undisputed obligations on account of outstanding orders on an interim basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20, 2023) (granting administrative expense priority to undisputed obligations on account of outstanding orders on a final basis); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J June 29, 2023) (same).[9] Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

53.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

---

[9]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

54.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first thirty (30) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Having authority to pay the Vendors in the ordinary course is vital to a smooth transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

55.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Waiver of Memorandum of Law

56.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

57.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the

Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## No Prior Request

58.     No prior request for the relief sought in this Motion has been made to this or any other court.

## Notice

59.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the Office of the United States Trustee for the District of New Jersey; (b) the Debtors' (30) largest unsecured creditors (on a consolidated basis); (c) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc Group; (d) counsel to the Administrative Agent under the Revolving Credit Facility; (e) the United States Attorney's Office for the District of New Jersey; (f) the Internal Revenue Service; (g) the attorneys general in the states where the Debtors

conduct their business operations; (h) the U.S. Securities and Exchange Commission; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, and granting such other relief as is just and proper.

Dated: February 28, 2024

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
          wusatine@coleschotz.com
          fyudkin@coleschotz.com
          jfrumkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

## **Exhibit A**

**Proposed Interim Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>THRASIO HOLDINGS, INC., *et al.*,<br><br>                   Debtors.[1] | Chapter 11<br><br>Case No. 24-11840 (CMG)<br><br>(Joint Administration Requested) |

## INTERIM ORDER
## (I) AUTHORIZING THE DEBTORS
## TO PAY CERTAIN PREPETITION CLAIMS
## OF (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9)
## CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING
## ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS

The relief set forth on the following pages, numbered three (3) through eleven (11), is

**ORDERED**.

---

[1]   The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio.  The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

Upon the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Lien Claimants, (B) Foreign Vendors, (C) 503(b)(9) Claimants, and (D) Critical Vendors, and (II) Confirming Administrative Expense Priority of Outstanding Orders* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to pay, in their sole discretion and in the ordinary course of business, certain prepetition claims of (i) Lien Claimants, (ii) Foreign Vendors, (iii) 503(b)(9) Claimants, and (iv) Critical Vendors, and (b) confirming the administrative expense priority status of the Outstanding Orders and authorizing the payment of such obligations in the ordinary course of business; and (c) scheduling a final hearing to consider approval of the Motion on a final basis (the "Final Hearing"), all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____, 2024 at _____ **(prevailing Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtor's proposed counsel on or before _____, **2024 at 4:00 p.m. (prevailing Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized, subject to this Interim Order to pay the prepetition Trade Claims described in the Motion, in an aggregate amount not to exceed $10,630,000 on an interim basis as set forth in the categories and amounts in the Motion; *provided*, that any lump sum payment above $750,000 to a single Vendor will be made in consultation with the Ad Hoc Group.

4.      The Debtors shall require that, as a condition to receiving any payment under this Interim Order, any Lien Claimant who has obtained a lien on the Debtors' or their customers' assets that accepts any payment pursuant to the authority granted in this Interim Order shall further

(Page | 5)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

agree to take whatever action is necessary to remove the lien at the Lien Claimant's sole cost and expense.

5.     The Debtors are authorized to condition payment of Trade Claims upon each Vendor's written agreement to (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms"), and (b) agree that such specified Vendors shall not cancel on less than ninety (90) days' notice any contract or agreement pursuant to which they provide goods or services to the Debtors.  The Debtors reserve the right to require additional favorable trade terms with any Vendor as a condition to payment of any Trade Claim. The Debtors reserve the right to require, in their sole discretion, that the Customary Trade Terms be made in writing, including by email or through a Trade Agreement, as a condition to payment.

6.     The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; and (d) the payment due.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc Group, and the advisors to any statutory committee appointed in these cases every thirty (30) days beginning upon entry of this Interim Order.

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

7.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code; *provided*, however that the Debtors can terminate any Outstanding Orders prior to delivery and any canceled orders are not afforded administrative priority; *provided*, however, that the Debtors can terminate any outstanding orders prior to delivery and any canceled orders are not afforded administrative priority.

8.      Prior to entry of a Final Order, the Debtors shall not pay any obligations under this Interim Order unless they are due and deemed necessary to be paid in the Debtors' reasonable business judgment to ensure ongoing provision of goods or services or otherwise to avoid an adverse effect on operations.

9.      Any party that accepts payment from the Debtors on account of a Trade Claim or any of the obligations of the kind set forth in the Motion shall be provided with a copy of this Interim Order and shall be deemed to have agreed to the terms and provisions of this Interim Order.

10.      The form of Trade Agreement, substantially in the form attached hereto as **<u>Exhibit 1</u>**, is approved in its entirety.  The Debtors are authorized to enter into any such Trade Agreements on an interim basis.

11.      Regardless of whether a Trade Agreement has been executed or if the parties have agreed in writing that Customary Trade Terms are a condition to payment, if any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms then, subject

(Page | 7)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

to the entry of the Final Order: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to immediately repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

12.     Nothing herein shall impair or prejudice the ability of the Debtors and any party in interest to contest, in their discretion, the extent, perfection, priority, validity, or amounts of the Trade Claims. Neither the Debtors nor any parties in interest concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors and all parties in interest expressly reserve all rights to contest the extent, validity, or perfection or to seek the avoidance of all such liens or the priority of such claims.

13.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, priority of, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other

(Page | 8)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or this Interim Order or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief authorized in this Interim Order are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

14.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee or any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Interim Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or any affiliate of an insider to the Debtors.  To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall provide five (5) business days' advance notice to, and opportunity to object by, the U.S. Trustee and any statutory committee appointed in these chapter 11 cases;

(Page | 9)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

*provided* that if any party objects to a payment, the Debtors shall not make such payment without further order of this Court.

15.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

16.     The banks and financial institutions on which checks were drawn or electronic fund transfer requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic fund transfer requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic fund transfer requests as approved by this Interim Order.

(Page | 10)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

17.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

18.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

19.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

20.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

22.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

23.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

24.     The Debtors shall serve a copy of this Interim Order on all required parties pursuant to Local Rule 9013-5(f).

25.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

(Page | 11)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS AND (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

26.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## Exhibit 1

**Form Trade Agreement**

> **THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.  ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN.  THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE.  THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

Thrasio Holdings, Inc. (the "Company"), on the one hand, and the vendor identified in the signature block below (the "Vendor"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the latest date in the signature blocks below.

## Recitals

WHEREAS on February 28, 2024 (the "Petition Date"), the Company and certain of its indirect and direct subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court").

WHEREAS on February [●], 2024, the Court entered its *Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Lien Claimants, (B) Foreign Vendors, (C) 503(b)(9) Claimants, and (D) Critical Vendors, and (II) Confirming Administrative Expense Priority of Outstanding Orders* (the "Vendors Order") [Docket No. [●]] authorizing the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain vendors, including the Vendor, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, the Vendor delivered goods to the Company and/or performed services for the Company, and the Company paid the Vendor for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and the Vendor (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims the Vendor may hold against the Company.

## Agreement

1. Recitals.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. Vendor Payment.  The Vendor represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to the Vendor is $[___] (the "Agreed Vendor Claim").  Following execution of this Trade Agreement, the Company shall,

---

[1]    Capitalized terms used but not defined herein shall have the meanings set forth in the Vendors Order.

in full and final satisfaction of the Agreed Vendor Claim, pay the Vendor $[__] on account of its Agreed Vendor Claim (the "<u>Vendor Payment</u>") (without interest, penalties, or other charges).

3. <u>Agreement to Supply</u>.

    a.    The Vendor shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services from the Vendor (to the extent the Company seeks such services), for the duration of the Debtors' chapter 11 cases based on the following terms (the "<u>Customary Trade Terms</u>"):  those trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, the number of days for timing of payments and payment terms, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the twelve months prior to the Petition Date, or are otherwise acceptable to the Company in light of customary industry practices, except for any partial payments or other payments (or assurances) the Company made with respect to any unfinished product.  "Duration of the Debtors' chapter 11 cases" means until the earlier of:  (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets pursuant to Bankruptcy Code section 363 resulting in a cessation of the Company's business operations; or (iii) the liquidation of the Company or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

    b.    The Vendor shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

    c.    The Vendor shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business pursuant to the Customary Trade Terms.

    d.    The Vendor shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide services to the Debtors for the duration of the Debtors' chapter 11 cases.

4. <u>Other Matters</u>.

    a.    The Vendor agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Debtors' chapter 11 cases on account of any outstanding administrative claims the Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due.  The Vendor agrees that such claims will be paid in

2

the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

b. The Vendor will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

c. The Vendor will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Company arising from prepetition agreements or transactions. Furthermore, if the Vendor has taken steps to file or assert such a lien prior to entering into this Trade Agreement, the Vendor will promptly take all necessary actions to remove such liens and hereby authorizes the Company to take any such actions on its behalf.

5. Breach.

a. In the event that the Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a "Vendor Breach"), upon written notice to the Vendor, the Vendor shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Company from the postpetition receivables then owing to the Vendor from the Company.

b. In the event that the Company recovers the Vendor Payment pursuant to Section 5(a) hereof or otherwise, the Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

c. The Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Company. Accordingly, the Vendor agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. The Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions

3

instituted for injunctive relief, specific performance, or other equitable remedies.

6. <u>Notice</u>.

If to the Vendor, then to the person and address identified in the signature block hereto.

If to the Company:

Thrasio Holdings, Inc.
85 West Street
Walpole, Massachusetts 02081
Attn:  Josh Burke, Michael Fahey

-and-

If to Proposed Co-Counsel to the Debtors:

Kirkland & Ellis LLP
601 Lexington Avenue, New York, New York, 10022
Attn:   Matthew C. Fagen, P.C., Francis Petrie, and Evan Swager
E-mail:  matthew.fagen@kirkland.com,
E-mail:  francis.petrtie@kirkland.com
E-mail:  evan.swager@kirkland.com

-and-

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attn: Anup Sathy, P.C.
Email:  anup.sathy@kirkland.com

-and-

Cole Schotz P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Attn: Michael D., Sirota, Warren A. Usatine, Felice R. Yudkin, and Jacob S. Frumkin
Email:  msirota@coleschotz.com
Email:  wusatine@coleschotz.com
Email: fyudkin@coleschotz.com
Email: jfrumkin@coleschotz.com

7. <u>Representations and Acknowledgements</u>. The Parties agree, acknowledge, and represent that:

      a.    the Parties have reviewed the terms and provisions of the Vendors Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Vendors Order;

      b.    any payments made on account of the Agreed Vendor Claim shall be subject to the terms and conditions of the Vendors Order;

      c.    if the Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Vendors Order, the Bankruptcy Code, or applicable law; and

      d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from the Vendor to the Company, until a ruling of the Court is obtained.

8. <u>Confidentiality</u>. In addition to any other obligations of confidentiality between the Vendor and Company, the Vendor agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided* that if any party seeks to compel the Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or the Vendor intends to disclose any or all of the Confidential Information, the Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order, or any other available remedy to prevent such disclosure; *provided*, *further*, that if such remedy is not obtained, the Vendor shall furnish only such information as the Vendor is legally required to provide.

9. <u>Miscellaneous</u>.

      a.    The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

      b.    This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties. Moreover, Vendor agrees to vote all claims now or hereafter beneficially owned by Vendor in favor of, and not take any direct or indirect

action to oppose or impede confirmation of any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith if such chapter 11 plan provides for a treatment of any Agreed Vendor Claim that is materially consistent with this Agreement.

c.      Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d.      This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e.      The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

f.      This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

*[Signature Page Follows]*

AGREED AND ACCEPTED AS OF THE LATEST DATE SET FORTH BELOW:

**[DEBTOR ENTITY]**                                    **[VENDOR]**


_____        _____
By: [●]                                                By:
Title: [●]                                             Title:
                                                       Address:

                                                       Date:

**<u>Exhibit B</u>**

**Proposed Final Order**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

# FINAL ORDER
# (I) AUTHORIZING THE DEBTORS
# TO PAY CERTAIN PREPETITION CLAIMS OF
# (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9)
# CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING
# ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

---

[1]   The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio.  The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

Upon the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Lien Claimants, (B) Foreign Vendors, (C) 503(b)(9) Claimants,* and *(D) Critical Vendors, and (II) Confirming Administrative Expense Priority of Outstanding Orders* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to pay, in their sole discretion and in the ordinary course of business, certain prepetition claims of (i) Lien Claimants, (ii) Foreign Vendors, (iii) 503(b)(9) Claimants and (iv) Critical Vendors; and (b) confirming the administrative expense priority status of the Outstanding Orders and authorizing the payment of such obligations in the ordinary course of business, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized, subject to this Final Order, to pay the prepetition Trade Claims described in the Motion in the ordinary course of business and consistent with their prepetition practices on a final basis as set forth in the categories and amounts in the Motion and as the Debtors deem necessary; *provided*, that any lump sum payment above $750,000 to a single Vendor will be made in consultation with the Ad Hoc Group.

3.      The Debtors are authorized to condition payment of Trade Claims upon each Vendor's written agreement to (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms"), and (b) agree that such specified Vendors shall not cancel on less than ninety (90) days' notice any contract or agreement pursuant to which they provide goods or services to the Debtors.  The Debtors reserve the right to require additional favorable trade terms with any Vendor as a condition to payment of any Trade Claim.  The Debtors

(Page | 5)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

reserve the right to require, in their sole discretion, that the Customary Trade Terms be made in writing, including by email or through a Trade Agreement, as a condition to payment.

4.      The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Final Order including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; and (d) the payment due.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc Group, and the advisors to any statutory committee appointed in these cases every thirty (30) days beginning upon entry of this Final Order.

5.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code; *provided*, however that the Debtors can terminate any Outstanding Orders prior to delivery and any canceled orders are not afforded administrative priority; *provided*, however that the Debtors can terminate any outstanding orders prior to delivery and any canceled orders are not afforded administrative priority.

6.      Any party that accepts payment from the Debtors on account of a Trade Claim or any of the obligations of the kind set forth in the Motion shall be provided with a copy of this Final Order and shall be deemed to have agreed to the terms and provisions of this Final Order.

7.      The form of Trade Agreement, substantially in the form attached hereto as **Exhibit 1**, is approved in its entirety on a final basis.  The Debtors are authorized to enter into any such Trade Agreements on a final basis.

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

8.      Regardless of whether a Trade Agreement has been executed or if the parties have agreed in writing that Customary Trade Terms are a condition to payment, if any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms then, subject to the entry of this Final Order:  (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to immediately repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

9.      Nothing herein shall impair or prejudice the ability of the Debtors and any party in interest to contest, in their discretion, the extent, perfection, priority, validity, or amounts of the Trade Claims.  Neither the Debtors nor any parties in interest concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors and all parties in interest expressly reserve all rights to contest the extent, validity, or perfection or to seek the avoidance of all such liens or the priority of such claims.

(Page | 7)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

10.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the amount of, basis for, priority of, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or this Final Order or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief authorized in this Final Order are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

11.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee or any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Final Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or any affiliate of an insider to the Debtors.  To the

(Page | 8)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall to the extent reasonably practicable, provide three (3) business days' advance notice to, and opportunity to object by, the U.S. Trustee and any statutory committee appointed in these chapter 11 cases.

12.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

13.     The banks and financial institutions on which checks were drawn or electronic fund transfer requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic fund transfer requests when presented for payment, and all such banks and financial institutions are authorized to rely on the

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) LIEN CLAIMANTS, (B) FOREIGN VENDORS, (C) 503(B)(9) CLAIMANTS, AND (D) CRITICAL VENDORS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS |

Debtors' designation of any particular check or electronic fund transfer requests as approved by this Final Order.

14.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

15.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

16.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

17.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

19.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

20.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## Exhibit 1

**Form Trade Agreement**

**HIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.  ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN.  THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE.  THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

Thrasio Holdings, Inc. (the "Company"), on the one hand, and the vendor identified in the signature block below (the "Vendor"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the latest date in the signature blocks below.

## Recitals

WHEREAS on February 28, 2024 (the "Petition Date"), the Company and certain of its indirect and direct subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court").

WHEREAS on February [●], 2024, the Court entered its *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Lien Claimants, (B) Foreign Vendors, (C) 503(b)(9) Claimants, (D) Critical Vendors, and (II) Confirming Administrative Expense Priority of Outstanding Orders;* (the "Vendors Order") [Docket No. [●]] authorizing the Debtors on a final basis, under certain conditions, to pay the prepetition claims of certain vendors, including the Vendor, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, the Vendor delivered goods to the Company and/or performed services for the Company, and the Company paid the Vendor for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and the Vendor (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims the Vendor may hold against the Company.

## Agreement

1.  Recitals.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.  Vendor Payment.  The Vendor represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to the Vendor is $[__] (the "Agreed Vendor Claim").  Following execution of this Trade Agreement, the Company shall,

---

[1]    Capitalized terms used but not defined herein shall have the meanings set forth in the Vendors Order.

in full and final satisfaction of the Agreed Vendor Claim, pay the Vendor $[__] on account of its Agreed Vendor Claim (the "Vendor Payment") (without interest, penalties, or other charges).

3. Agreement to Supply.

a. The Vendor shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services from the Vendor (to the extent the Company seeks such services), for the duration of the Debtors' chapter 11 cases based on the following terms (the "Customary Trade Terms"): those trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, the number of days for timing of payments and payment terms, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the twelve months prior to the Petition Date, or are otherwise acceptable to the Company in light of customary industry practices, except for any partial payments or other payments (or assurances) the Company made with respect to any unfinished product. "Duration of the Debtors' chapter 11 cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets pursuant to Bankruptcy Code section 363 resulting in a cessation of the Company's business operations; or (iii) the liquidation of the Company or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

b. The Vendor shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

c. The Vendor shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business pursuant to the Customary Trade Terms.

d. The Vendor shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide services to the Debtors for the duration of the Debtors' chapter 11 cases.

4. Other Matters.

a. The Vendor agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Debtors' chapter 11 cases on account of any outstanding administrative claims the Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. The Vendor agrees that such claims will be paid in

2

the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

b.  The Vendor will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

c.  The Vendor will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Company arising from prepetition agreements or transactions. Furthermore, if the Vendor has taken steps to file or assert such a lien prior to entering into this Trade Agreement, the Vendor will promptly take all necessary actions to remove such liens and hereby authorizes the Company to take any such actions on its behalf.

5.  Breach.

a.  In the event that the Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a "Vendor Breach"), upon written notice to the Vendor, the Vendor shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Company from the postpetition receivables then owing to the Vendor from the Company.

b.  In the event that the Company recovers the Vendor Payment pursuant to Section 5(a) hereof or otherwise, the Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

c.  The Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Company. Accordingly, the Vendor agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. The Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions

3

instituted for injunctive relief, specific performance, or other equitable remedies.

6. <u>Notice</u>.

If to the Vendor, then to the person and address identified in the signature block hereto.

If to the Company:

Thrasio Holdings, Inc.
85 West Street
Walpole, Massachusetts 02081
Attn: Josh Burke, Michael Fahey

-and-

If to Proposed Co-Counsel to the Debtors:

Kirkland & Ellis LLP
601 Lexington Avenue, New York, New York, 10022
Attn: Matthew C. Fagen, P.C., Francis Petrie, and Evan Swager
E-mail: matthew.fagen@kirkland.com,
E-mail: francis.petrtie@kirkland.com
E-mail: evan.swager@kirkland.com

-and-

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attn: Anup Sathy, P.C.
Email: anup.sathy@kirkland.com

-and-

Cole Schotz P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Attn: Michael D., Sirota, Warren A. Usatine, Felice R. Yudkin, and Jacob S. Frumkin
Email: msirota@coleschotz.com
Email: wusatine@coleschotz.com
Email: fyudkin@coleschotz.com
Email: jfrumkin@coleschotz.com

7.  <u>Representations and Acknowledgements</u>.    The Parties agree, acknowledge, and represent that:

      a.      the Parties have reviewed the terms and provisions of the Vendors Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Vendors Order;

      b.      any payments made on account of the Agreed Vendor Claim shall be subject to the terms and conditions of the Vendors Order;

      c.      if the Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Vendors Order, the Bankruptcy Code, or applicable law; and

      d.      in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from the Vendor to the Company, until a ruling of the Court is obtained.

8.  <u>Confidentiality</u>.  In addition to any other obligations of confidentiality between the Vendor and Company, the Vendor agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided* that if any party seeks to compel the Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or the Vendor intends to disclose any or all of the Confidential Information, the Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order, or any other available remedy to prevent such disclosure; *provided*, *further*, that if such remedy is not obtained, the Vendor shall furnish only such information as the Vendor is legally required to provide.

9.  <u>Miscellaneous</u>.

      a.      The Parties hereby represent and warrant that:  (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

      b.      This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both

Parties.   Moreover, Vendor agrees to vote all claims now or hereafter beneficially owned by Vendor in favor of, and not take any direct or indirect action to oppose or impede confirmation of any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith if such chapter 11 plan provides for a treatment of any Agreed Vendor Claim that is materially consistent with this Agreement.

c.      Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d.      This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e.      The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

f.      This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

*[Signature Page Follows]*

AGREED AND ACCEPTED AS OF THE LATEST DATE SET FORTH BELOW:

**[DEBTOR ENTITY]**                              **[VENDOR]**

_____        _____
By: [●]                                          By:
Title: [●]                                        Title:
                                                 Address:

                                                 Date: