**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

**NOTICE OF FILING OF**
**PROPOSED INTERIM ORDER**
**(I) AUTHORIZING THE DEBTORS**
**TO OBTAIN POSTPETITION SECURED**
**FINANCING, (II) GRANTING LIENS AND PROVIDING**
**SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,**
**(III) AUTHORIZING THE USE OF CASH COLLATERAL,**

---

[1]  The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio.  The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

**(IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING
THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING**

**PLEASE TAKE NOTICE** that on February 28, 2024, the Debtors filed the *Debtors'*
*Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors Obtain Postpetition*
*Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense*
*Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection,*
*(V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. 39]
(the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a proposed *Interim*
*Order (I) Authorizing the Debtors Obtain Postpetition Secured Financing, (II) Granting Liens and*
*Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash*
*Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and*
*(VI) Scheduling a Final Hearing*, attached hereto as **Exhibit A** (the "Proposed Interim DIP
Order").

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to materially
alter, amend, or modify the Motion, Proposed Interim DIP Order, and the exhibits attached thereto;
provided, that if the Motion, Proposed Interim DIP Order, and exhibits attached thereto are altered,
amended, or modified in any materials respect, the Debtors will file a revised version of such
documents with the Court.

*[Remainder of Page Intentionally Left Blank]*

Dated: February 29, 2024

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            jfrumkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim DIP Order**

**INTERIM ORDER
(I) AUTHORIZING THE DEBTORS
TO OBTAIN POSTPETITION SECURED
FINANCING, (II) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,
(III) AUTHORIZING THE USE OF CASH COLLATERAL,
(IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING
THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING**

The relief set forth on the following pages, numbered three (3) through seventy-four (74)

is **ORDERED**.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
Evan Swager (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., *et al.*, | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]  The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327.  A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/Thrasio.  The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

(Page | 3)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases (collectively, the "Cases"), pursuant to sections 105, 361, 362, 363, 364, 506(c) (subject to the entry of the Final Order), 507, and 552 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), seeking entry of this interim order (this "Interim Order"):

      (i)      authorizing Thrasio, LLC, in its capacity as borrower (the "DIP Borrower"), to obtain postpetition financing, and for each of the other Debtors (such other Debtors and subsidiaries, the "DIP Guarantors") to guarantee unconditionally, on a joint and several basis, the DIP Borrower's obligations in connection with a superpriority senior secured multiple draw term loan credit facility (the "DIP Facility") in the aggregate principal amount of $360,000,000 (the "DIP Loans"), consisting of:

      (a)      New Money Loans. A superpriority senior secured multiple draw term loan credit facility in the principal amount of $90,000,000 (the "New Money Commitments" and the term loans made thereunder, the "New Money Loans"), of which (x) $35,000,000 shall be available from and after entry of this Interim Order (the "Interim DIP Amount"), (y) $35,000,000 shall be available from and after entry of the Final Order (as defined below) (the "Final DIP Amount"), and (z) up to $20,000,000 shall be committed upon entry of the Final Order and available upon entry of the Confirmation Order (or available up to five business days prior to the estimated entry of the Confirmation Order, solely with the consent of the Required DIP Lenders, in their sole and absolute discretion) (the "Delayed Draw Amount"), in each case pursuant to the terms and conditions of this Interim Order, the Final Order, the DIP Credit Agreement (as defined below), attached hereto as **Exhibit A**, and the other DIP Documents (as defined below);

---

[2]   Capitalized terms used but not defined herein have the meanings given to such terms in the Motion or the DIP Credit Agreement (as defined herein).

(Page | 4)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

(b)  <u>Roll-Up Loans</u>.  A superpriority term loan facility in the principal amount of $270,000,000 (the "<u>Roll-Up Loans</u>"), of which (x) $35,000,000 shall be deemed funded in accordance with clause (i) below upon entry of this Interim Order, and (y) $235,000,000 shall be deemed funded in accordance with clause (ii) below, subject to the entry of and the terms of the Final Order, which Roll-Up Loans shall be deemed converted from an equal amount of Prepetition First Lien Loans (as defined below) into and exchanged for such Roll-Up Loans, in each case, at the times, and in accordance with the terms and conditions set forth in the DIP Credit Agreement and the other DIP Documents and as set forth below;

(i)  On the date of this Interim Order, concurrently with the making of the New Money Loans in the Interim DIP Amount as described above, $35,000,000 in aggregate principal amount of Prepetition First Lien Loans (the Prepetition First Lien Loans rolled-up pursuant to this <u>clause (b)(i)</u>, the "<u>Initial Rolled-Up Prepetition First Lien Loans</u>" and the remaining Prepetition First Lien Loans, the "<u>Remaining Prepetition First Lien Loans</u>") shall be deemed converted into and exchanged for Roll-Up Loans, and Roll-Up Loans in an aggregate principal amount of $35,000,000 shall be deemed funded on the date of this Interim Order, without constituting a novation, and shall satisfy and discharge the Initial Rolled-Up Prepetition First Lien Loans.  The Roll-Up Loans deemed funded on the date of this Interim Order shall be deemed to be made by each Backstop Party (as defined in the DIP Credit Agreement) (or an investment advisor, manager, or beneficial owner for the account of a Backstop Party, or an affiliated fund or trade counterparty designated by such Backstop Party) (such initial lender holding such Roll-Up Loans, the "<u>Closing Date Roll-Up Lenders</u>") in an amount equal to the lesser of (x) the aggregate principal amount of the Prepetition First Lien Loans owing to the applicable Closing Date Roll-Up Lenders on the date of this Interim Order and (y) an amount equal to (I) $35,000,000 <u>multiplied by</u> (II) the quotient of the amount set forth next to each Backstop Party's name on Schedule 1.01 of the DIP Credit Agreement <u>divided by</u> the sum of all amounts set forth on Schedule 2.12(b) of the DIP Credit Agreement;

(Page | 5)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

(ii)     On the date of the entry of the Final Order, concurrently with the making of the New Money Loans in the Final DIP Amount and the commitment of the New Money Loans in the Delayed Draw Amount, each as described in clause (a) above, $235,000,000 in aggregate principal amount of Remaining Prepetition First Lien Loans shall be deemed converted into and exchanged for Roll-Up Loans, and Roll-Up Loans in an aggregate principal amount of $235,000,000 shall be deemed funded on the date of the Final Order, without constituting a novation, and shall satisfy and discharge $235,000,000 in aggregate principal amount of Prepetition First Lien Loans;

(iii)     On the terms set forth in the syndication procedures in form and substance reasonably satisfactory to the Prepetition First Lien Agent as it relates to any of its obligations (the "Syndication Procedures"), upon entry of the Interim Order, each Prepetition First Lien Lender (as defined below) that has properly executed and returned to counsel to the Debtors (Kirkland & Ellis LLP) a signature page to the Restructuring Support Agreement shall be offered the right to purchase and/or fund the DIP Loans (including Roll-Up Loans) on a pro rata basis based on their Prepetition First Lien Loans;

(c)     Interim Facility.  Upon entry of this Interim Order, the maximum amount of the New Money Loans that will be disbursed to the Borrower shall be $35,000,000;

(ii)     authorizing the DIP Borrower and the DIP Guarantors to enter into and perform under that certain Super-Priority Senior Secured Debtor-in-Possession Credit Agreement, attached hereto as **Exhibit A**, among the DIP Borrower, Thrasio Holdings, Inc., as Holdings, Thrasio Intermediate Sub, LLC, as Intermediate Holdings (as defined therein), the lenders party thereto (in such capacities, collectively, the "DIP Lenders") and Wilmington Savings Fund Society, FSB, as Administrative Agent and Collateral Agent (each as defined therein) (in such capacities, the "DIP Agent" and, together with the DIP Lenders, the "DIP Secured Parties") (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Credit Agreement" and, together with this Interim Order, the Final Order, and all other agreements, documents, and instruments delivered or executed in connection therewith, in each case as may be amended, restated, supplemented, waived or otherwise modified from time to time in

(Page | 6)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

accordance with the terms thereof, collectively, the "DIP Documents"), and to perform such other and further acts as may be required in connection with the DIP Documents;

(iii)     authorizing the Debtors to use the proceeds of the DIP Loans and the Prepetition Collateral (as defined below), including Cash Collateral (as defined below), (x) solely in accordance with the Approved DIP Budget (as defined below) (subject to any Permitted Variance set forth herein and in the DIP Documents), (y) to effectuate the exchange of Prepetition First Lien Loans for Roll-Up Loans in accordance with the DIP Credit Agreement, this Interim Order, and, upon entry, the Final Order, and (z) to provide working capital for, and for other general corporate purposes of, the Debtors and certain of the Debtors' subsidiaries, in accordance with the Approved DIP Budget, including for funding the Carve Out (as defined below) and for payment of any Adequate Protection Payments (as defined below);

(iv)     granting adequate protection to the Prepetition First Lien Secured Parties (as defined below) to the extent of any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (as defined below);

(v)     granting valid, enforceable, binding, non-avoidable, and fully perfected first priority priming liens on and senior security interests in substantially all of the property, assets, and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and each Debtor's estate as created by section 541 of the Bankruptcy Code, of any kind or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (as defined below), subject only to the (x) Carve Out (as defined below) and (y) Permitted Prior Liens (as defined below);

(vi)     granting superpriority administrative expense claims against each of the Debtors' estates to the DIP Agent and the DIP Lenders with respect to the DIP Obligations (as defined below) with priority over any and all administrative expenses of any kind or nature subject and subordinate only to the payment of the Carve Out on the terms and conditions set forth herein and in the DIP Documents;

(vii)     subject to entry of a Final Order solely in respect of the Prepetition Collateral, but effective as of the Petition Date, waiving the Debtors' and the estates' right to surcharge against the Prepetition Collateral or DIP Collateral (each as defined below) pursuant to section 506(c) of the Bankruptcy Code;

(Page | 7)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

      (viii)    subject to entry of a Final Order solely in respect of the Prepetition Collateral, but effective as of the Petition Date, for the "equities of the case" exception under Bankruptcy Code section 552(b) to not apply to such parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral, as applicable;

      (ix)    subject to entry of a Final Order, but effective as of the Petition Date, waiving the equitable doctrine of marshaling with respect to the DIP Secured Parties and the Prepetition First Lien Secured Parties; and

      (x)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a final order (the "Final Order"), and approving the form of notice with respect to the Final Hearing.

This Court having considered the Motion, the exhibits thereto, the *Declaration of Josh Burke, Chief Financial Officer of Thrasio Holdings, Inc., in Support of First Day Motions* [Docket No. 38] (the "First Day Declaration"), the *Declaration of Terrence F. Grossman in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* (the "Grossman Declaration"), and the *Declaration of Samuel M. Greene in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing*, (the "Greene Declaration"), and the other evidence submitted or adduced and the arguments of counsel made at the interim hearing

(Page | 8)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

held pursuant to Bankruptcy Rule 4001(b)(2) on _____ __, 2024; and this Court having heard and resolved or overruled any objections, reservations of rights, or other statements with respect to the relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and the Debtors having provided notice of the Motion as set forth in the Motion, and it appearing that no other or further notice of the interim relief granted herein need be given under the circumstances; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.     *Petition Date*.  On February 28, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy

---

[3]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

(Page | 9)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

Court for the District of New Jersey (the "Court") commencing these Cases.  On [●], 2024, the Court entered an order approving joint administration of the Cases.

B.      *Debtors in Possession*.   The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.      *Jurisdiction and Venue*.  The Court has jurisdiction over the Motion, these Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for these Cases and proceedings on the Motion is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee*.  As of the date hereof, no official committee of unsecured creditors has been appointed in these Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

E.      *Debtors' Stipulations*.  The Debtors admit, acknowledge, stipulate, and agree that (collectively, paragraphs E(i) through (vii) below are referred to herein as the "Debtors' Stipulations"):

        (i)      *Pre-Petition Credit Agreement*.  Under that certain Credit Agreement, dated as of December 18, 2020 (as amended or otherwise modified by that certain First Amendment to

(Page | 10)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

Credit Agreement, dated as of May 28, 2021, that certain Second Amendment and Waiver to Credit Agreement, dated as of September 17, 2021, that certain Third Amendment to Credit Agreement, dated as of June 30, 2023, that certain Forbearance and Fourth Amendment to Credit Agreement, dated as of September 29, 2023, and that certain Forbearance and Fifth Amendment to Credit Agreement, dated as of December 29, 2023, and as may be further amended, restated, waived, amended and restated, supplemented or otherwise modified from time to time, and as in effect on the Petition Date, the "Pre-Petition Credit Agreement" and, together with all other documentation executed in connection therewith, including without limitation, the Collateral Documents and each other Loan Document (each as defined in the Pre-Petition Credit Agreement) executed in connection therewith, the "Prepetition First Lien Loan Documents"), by and among Thrasio, LLC ("Prepetition Borrower"), Royal Bank of Canada, as administrative agent and as collateral agent (in such capacities and including any assignees thereof and successors thereto, the "Prepetition First Lien Agent"), the revolving lenders and Issuing Banks under the Revolving Facility (each as defined in the Pre-Petition Credit Agreement) from time to time party thereto (such lenders and Issuing Banks, the "Revolving Lenders"), and the Term Lenders (as defined in the Pre-Petition Credit Agreement) from time to time party thereto (together with the Revolving Lenders, the "Prepetition First Lien Lenders" and, together with the Prepetition First Lien Agent and each of the other Secured Parties (as defined in the Pre-Petition Credit Agreement), the "Prepetition First Lien Secured Parties"), the Borrower was provided with a first lien secured term loan and revolving credit facility (the loans borrowed thereunder, the "Prepetition First Lien Loans").  As

(Page | 11)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

used herein, the "Prepetition Loan Parties" shall mean, collectively, the Prepetition Borrower, Holdings, the Subsidiary Guarantors (as defined in the Pre-Petition Credit Agreement), and the other Loan Parties (as defined in the Pre-Petition Credit Agreement).

(ii)     *Prepetition First Lien Obligations.*  As of the Petition Date, the Prepetition Loan Parties were jointly and severally indebted to the Prepetition First Lien Secured Parties pursuant to the Prepetition First Lien Loan Documents, without objection, defense, counterclaim, or offset of any kind, (x) in the aggregate principal amount of $62.5 million of outstanding Revolving Loans (as defined in the Pre-Petition Credit Agreement) and $2.5 million of letters of credit outstanding under the Pre-Petition Credit Agreement, (y) in the aggregate principal amount of not less than $723,900,754 on account of outstanding Term Loans under (and as defined in) the Pre-Petition Credit Agreement, *plus*, (z) in the case of each of the preceding clauses (x) and (y), accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, in each case to the extent reimbursable pursuant to the terms of the Prepetition First Lien Loan Documents and all other Obligations (as defined in the Pre-Petition Credit Agreement) owing under or in connection with the Prepetition First Lien Loan Documents (clauses (x), (y), and (z), collectively, the "Prepetition First Lien Obligations").

(Page | 12)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

(iii)     *Prepetition Collateral*.     In connection with the Pre-Petition Credit Agreement, certain of the Debtors entered into the Security Agreement and the Collateral Documents (each as defined in the Pre-Petition Credit Agreement).     Pursuant to the Collateral Documents, and the other Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations are secured by valid, binding, perfected, and enforceable first-priority security interests in and liens on (the "Prepetition First Priority Liens") all of the Collateral (as defined in the Collateral Documents) consisting of substantially all of each Prepetition Loan Party's assets (the "Prepetition Collateral").

(iv)     *Validity, Perfection, and Priority of Prepetition First Priority Liens and Prepetition First Lien Obligations*.     Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date:  (i) the Prepetition First Priority Liens encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (ii) the Prepetition First Priority Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (iii) the Prepetition First Priority Liens are subject and subordinate only to valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition First Lien Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and that are senior to the Prepetition First Lien Secured Parties' liens or security interests as of the Petition Date (such liens, the "Permitted Prior Liens"); (iv) the Prepetition First Priority Liens were granted to or for

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

the benefit of the Prepetition First Lien Agent on behalf of the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (v) the Prepetition First Lien Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (vi) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition First Priority Liens or Prepetition First Lien Obligations exist, and no portion of the Prepetition First Priority Liens or Prepetition First Lien Obligations is subject to any challenge, cause of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (vii) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition First Lien Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out

(Page | 14)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

of, based upon, or related to the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations, or the Prepetition First Priority Liens.

(v)     *Cash Collateral*.   Substantially all of the Debtors' cash, including any amounts generated by the collection of accounts receivable, all cash proceeds of the Prepetition Collateral, and the Debtors' banking, checking, or other deposit accounts with financial institutions as of the Petition Date or deposited into the Debtors' banking, checking, or other deposit accounts with financial institutions after the Petition Date constitutes "cash collateral" of the Prepetition First Lien Secured Parties within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral").

(vi)     *Bank Accounts*.   The Debtors acknowledge and agree that, as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than the accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system.

(vii)     *Intercreditor Provisions*.   Pursuant to section 510 of the Bankruptcy Code, any applicable intercreditor or subordination provisions contained in any of, or entered into as permitted by and in accordance with, the Prepetition First Lien Loan Documents shall (i) remain in full force and effect and (ii) not be deemed to be amended, altered or modified by the terms of this Interim Order or the DIP Documents, in each case, unless expressly set forth herein or therein.

(Page | 15)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

F.    *Findings Regarding the DIP Facility and Use of Cash Collateral*.

(i)    The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral (solely to the extent consistent with the Approved DIP Budget, subject to any Permitted Variance set forth herein and in the DIP Documents) to, among other things, (A) permit the orderly continuation of their businesses; (B) pay certain Adequate Protection Payments; and (C) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors and certain subsidiaries thereof.  The DIP Facility will also reassure the Debtors' customers and employees that the Debtors will have access to additional liquidity to meet its commitments during the Cases and that the Debtors' businesses are likely to continue as a going concern post-emergence.  The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the Debtors' going concern value and successful reorganization.  The Debtors will not have sufficient sources of working capital and financing to operate their businesses in the ordinary course of business throughout the Cases without access to the DIP Facility and authorized use of Cash Collateral, and subject to the Carve Out (defined below) as provided herein.

(ii)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1),

(Page | 16)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting to the DIP Secured Parties the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) under the terms and conditions set forth in this Interim Order and the DIP Documents.

(iii)    The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Documents and all other obligations under the DIP Documents (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Secured Parties in "good faith" as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code and reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted to, or payments made to the DIP Agent or the DIP Lenders hereunder prior to the effective date of any such vacatur, reversal, or modification of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(Page | 17)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

(iv)    *Roll-Up Loans*.  Upon entry of this Interim Order, without any further action by the Debtors or any other party, $35,000,000 of the Prepetition First Lien Loans shall be converted into DIP Obligations, as Roll-Up Loans.  Such conversion (or "roll-up") shall be authorized as compensation for, in consideration for, and solely on account of, the Prepetition First Lien Lenders that are also DIP Lenders or affiliates thereof to fund the New Money Loans and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  The Prepetition First Lien Lenders would not otherwise consent to the use of their Cash Collateral, or the subordination of their liens to DIP Liens, and the DIP Lenders would not be willing to provide the DIP Loans without the inclusion of the Roll-Up Loans in the DIP Obligations.

(v)    *Adequate Protection*.  Each of the Prepetition First Lien Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(c) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, for any diminution in the value thereof.

(vi)    *Sections 506(c), 552(b), and Marshaling*.  In light of the Prepetition First Lien Secured Parties' agreement to subordinate their liens and superiority claims to the DIP Obligations and the Carve Out and to permit the use of their Cash Collateral as set forth herein, the Prepetition First Lien Secured Parties are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to and upon entry of the Final Order, (i) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, (ii) a waiver of the

(Page | 18)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

provisions of section 506(c) of the Bankruptcy Code, and (iii) a waiver of the equitable doctrine of marshaling.

(vii)    *Consent by Prepetition First Lien Agent*.  The Prepetition First Lien Agent (at the direction of the Required Lenders (as defined in the Pre-Petition Credit Agreement)), on behalf and for the benefit of each of the Prepetition First Lien Secured Parties, has consented to, conditioned on the entry of this Interim Order, the Debtors' incurrence of the DIP Facility, and proposed use of Cash Collateral on the terms and conditions set forth in this Interim Order, including, without limitation, the terms of the adequate protection provided for in this Interim Order.

G.    *No Control*.  None of the Prepetition First Lien Secured Parties control the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order and/or the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations, or the Prepetition First Priority Liens.

H.    *Findings Regarding Corporate Authority*.  Each Debtor has all requisite corporate or limited liability company authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

I.    *Good Cause Shown; Best Interest*.  Good cause has been shown for entry of this Interim Order, and entry of this Interim Order is in the best interests of the Debtors' respective

(Page | 19)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization.  Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.

J.      *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and the Local Rules, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested herein, and of the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and applicable Local Rules.

K.      *Arm's Length, Good Faith Negotiations*.  The terms of this Interim Order were negotiated in good faith and at arm's length between the Debtors and the Prepetition First Lien Secured Parties.  The Prepetition First Lien Secured Parties have acted without negligence or violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility and the Debtors' use of Cash Collateral, including in respect of all of the terms of this Interim Order, all documents related thereto, and all transactions contemplated by the foregoing.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
|---|---|
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

IT IS HEREBY ORDERED THAT:

1.      <u>DIP Financing Approved</u>.  The Motion is granted on an interim basis as set forth herein, the DIP Facility is approved on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2.      <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements with respect to the Motion and entry of this Interim Order, to the extent not withdrawn or resolved, are overruled on the merits.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and the Local Rules.  This Interim Order shall become effective immediately upon its entry.

3.      <u>Authorization of the DIP Facility and the DIP Documents</u>.

(a)      The DIP Borrower and the DIP Guarantors are hereby immediately authorized and empowered to enter into, execute and deliver, the DIP Documents, including the DIP Credit Agreement, and such additional documents, instruments, certificates and agreements as may be reasonably required or requested by the DIP Secured Parties to implement the terms or effectuate the purposes of this Interim Order and the DIP Documents and to effectuate the exchange of Prepetition First Lien Loans for Roll-Up Loans.  To the extent not entered into as of the date hereof, the Debtors and the DIP Secured Parties shall negotiate the DIP Documents in good faith, and in all respects such DIP Documents shall be, subject to the terms of this Interim Order and the Final Order, materially consistent with the terms of the DIP Credit Agreement and otherwise reasonably acceptable to the DIP Agent (acting at the direction of the Required Lenders

(Page | 21)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

under and pursuant to the DIP Credit Agreement (the "Required DIP Lenders")) and the Required DIP Lenders.  Any material DIP Documents not entered into as of the date hereof shall be filed with the Bankruptcy Court and subject to review by all parties in interest, who reserve the right to object and schedule a hearing.  Upon entry of this Interim Order and until execution and delivery of the DIP Credit Agreement and other DIP Documents required to be delivered thereunder, the Debtors and the DIP Secured Parties shall be bound by (x) the terms, conditions and other provisions set forth in the other executed DIP Documents, with the same force and effect as if duly executed and delivered to the DIP Agent by the Debtors, and (y) this Interim Order and the other executed DIP Documents shall govern and control the DIP Facility.  Upon entry of this Interim Order, the Interim Order, the DIP Credit Agreement, and other DIP Documents shall govern and control the DIP Facility.  The DIP Agent is hereby authorized to execute and enter into its respective obligations under the DIP Documents, subject to the terms and conditions set forth therein and this Interim Order.  Upon execution and delivery thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms.  To the extent there exists any conflict among the terms and conditions of the Motion, the DIP Documents and this Interim Order, the terms and conditions of this Interim Order shall govern and control.  To the extent there is a conflict between the terms and conditions of the Motion and the DIP Documents, the terms and conditions of the DIP Documents shall govern and control.

(b)     Upon entry of this Interim Order, the DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to guaranty, borrowings up to an aggregate

(Page | 22)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

principal amount of $70,000,000 of DIP Loans (inclusive of the Roll-Up Loans described in paragraph (c) below), with $35,000,000 of New Money Loans available to be drawn on an interim basis, subject to and in accordance with this Interim Order, without any further action by the Debtors or any other party.

(c)     Upon the entry of this Interim Order, without any further action by the Debtors or any other party, the Debtors shall be authorized and deemed to have effectuated the exchange of $35,000,000 in aggregate principal amount of Prepetition First Lien Loans for Roll-Up Loans, subject to the occurrence of the Closing Date (as defined in the DIP Credit Agreement).

(d)     Entry of this Interim Order shall constitute final approval of the Backstop Payment (as defined in the Restructuring Support Agreement) to be paid to the Backstop Parties. Further, upon entry of this Interim Order, the terms and conditions of the Backstop Payment shall have been fully satisfied by the DIP Lenders and the Backstop Parties and the Backstop Payment shall have been fully and finally earned as a bargained for and integral part of the DIP Facility contemplated in these Chapter 11 Cases.

(e)     In accordance with the terms of this Interim Order and the other DIP Documents, proceeds of the DIP Loans shall be used solely for the purposes permitted under this Interim Order and the DIP Documents, and in accordance with the Approved DIP Budget, subject to the Carve Out and any Permitted Variance as set forth in this Interim Order and the DIP Documents.  Attached as **Exhibit B** hereto and incorporated herein by reference is a budget

(Page | 23)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

prepared by the Debtors and approved by the Required DIP Lenders in accordance with the DIP Credit Agreement (the "Initial DIP Budget").

(f)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby or by the DIP Credit Agreement and any other DIP Documents), and to pay all fees (including all amounts owed to the DIP Lenders and the DIP Agent under the DIP Documents) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(1)    the execution, delivery, and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent required thereby;

(2)    the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents (in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the DIP Agent, and the Required DIP Lenders may reasonably agree), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other

(Page | 24)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

modifications to and under the DIP Documents or the DIP Obligations that are not material;

(3)     the non-refundable payment to each of and/or on behalf of the DIP Secured Parties, as applicable, of the premiums or fees referred to in the DIP Documents, including (a) all fees and other amounts owed to the DIP Agent and the DIP Lenders and (b) all reasonable and documented costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Documents and this Interim Order (whether incurred before, on or after the Petition Date), including, for the avoidance of doubt, (x) Gibson, Dunn & Crutcher LLP (as counsel), Evercore Group L.L.C. (as financial advisor), and Sills Cummis & Gross, P.C. (as local bankruptcy counsel) (collectively, the "DIP/First Lien Advisors") necessary to represent the interests of the DIP Lenders and the ad hoc group of the Prepetition First Lien Lenders (the "DIP/First Lien Group") in connection with the Cases; and (y) ArentFox Schiff LLP, as counsel to the DIP Agent, to the extent necessary for the DIP Agent to exercise its rights and fulfill its obligations under the DIP Documents (the "DIP Agent Advisors"), which such fees and expenses shall not be subject to the approval of the Court, nor shall any

(Page | 25)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

recipient of any such payment be required to file with respect thereto any monthly, interim or final fee applications with the Court, *provided* that any fees and expenses of a professional shall be subject to the provisions of paragraph 18 of this Interim Order; and

(4)      the performance of all other acts required under or in connection with the DIP Documents. The Prepetition First Lien Agent and the DIP Agent are authorized to take all actions reasonably necessary in furtherance of the Syndication Procedures, and all reasonable and documented fees and out-of-pocket expenses arising from or related to any such action of the Prepetition First Lien Agent and DIP Agent will be paid by the Debtors, which such fees and expenses shall not be subject to the approval of the Court. The terms of the Pre-Petition Credit Agreement, including all exculpatory provisions in Section 8.03 thereof, will apply to actions taken by the Prepetition First Lien Agent pursuant to this paragraph 3(f).

(g)      Upon entry of this Interim Order, the DIP Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor in accordance with their respective terms and the terms of this Interim Order for all purposes during the Cases, any subsequently converted Case of any Debtor to a case under chapter 7 of the Bankruptcy Code or after the dismissal of any Case. No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Documents,

(Page | 26)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 542, 544, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All payments or proceeds remitted (a) to or on behalf of the DIP Agent on behalf of any DIP Secured Parties or (b) to or on behalf of the Prepetition First Lien Secured Parties and/or the Prepetition First Lien Agent, in each case, pursuant to the DIP Documents, the provisions of this Interim Order, or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code (and, solely in the case of waivers of rights under sections 506(c) and 552(b) with respect to the Prepetition First Lien Secured Parties, subject to the entry of the Final Order).

(h)     The DIP Guarantors are hereby authorized and directed to jointly, severally, and unconditionally guarantee, and upon entry of this Interim Order shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.

4.     <u>Budget and Variance Reporting</u>.

(a)     On or before the Friday before the end of each Budget Period (as defined below) beginning with the fourth full week following the Petition Date (or more frequently if

(Page | 27)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

determined by the Debtors), the Debtors will deliver to the DIP Agent, the DIP Agent Advisors, the DIP/First Lien Advisors, the Prepetition First Lien Agent Advisors, and any statutory committees appointed in these cases, an updated budget for the subsequent 13-week period (a "Subsequent DIP Budget"), which shall be in form and substance satisfactory to the Required DIP Lenders in their sole discretion.  The Initial DIP Budget or any Subsequent DIP Budget shall be deemed to constitute the "Approved DIP Budget" for purposes of this Interim Order with the most recently delivered budget constituting the "Approved DIP Budget" solely upon approval by the Required DIP Lenders (which must be in writing, email being sufficient, or which shall be deemed an Approved DIP Budget absent objection by the Required DIP Lenders within five days' after delivery of the Budget) in their sole discretion.  In the event the conditions for the most recently delivered Subsequent DIP Budget to constitute an "Approved DIP Budget" are not met as set forth herein, the prior Approved DIP Budget shall remain in full force and effect and the Debtors shall be required to work in good faith with the Required DIP Lenders to modify such Subsequent DIP Budget until the Required DIP Lenders approve such Subsequent DIP Budget as an "Approved DIP Budget."  "Budget Period" means the initial four-week period set forth in the Approved DIP Budget in effect at such time.

(b)     Commencing on the Friday of the second full calendar week after the Petition Date, Permitted Variances (as defined below) shall be tested weekly on Friday (each such date, a "Testing Date").  If such Testing Date is not a Business Day, the Testing Date shall be the next day that is a Business Day.  On each Testing Date, the Debtors shall deliver to the DIP Agent,

(Page | 28)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

the DIP/First Lien Advisors, the Prepetition First Lien Agent Advisors, and any statutory committees appointed in these cases, a budget variance report/reconciliation in form and substance reasonably satisfactory to the DIP/First Lien Group (the "Approved DIP Budget Variance Report"), setting forth in detail (i) the Debtors' actual disbursements (the "Actual Disbursements"), including, without limitation, capital expenditures and M&A transaction costs, on a line-by-line and aggregate basis for the trailing two, three, or four-weeks, as applicable,[4] preceding the applicable Testing Date; (ii) the Debtors' actual ordinary course receipts (the "Actual Receipts"), excluding, for the avoidance of doubt, any intercompany transactions, on a line-by-line and aggregate basis for the applicable Variance Testing Period; (iii) a comparison (whether positive or negative, in dollars and expressed as a percentage) for the applicable Variance Testing Period of the Actual Receipts (and each line item thereof), the Actual Disbursements (and each line item thereof), and the fees and expenses of Professional Persons (as defined below) for such applicable Variance Testing Period to the amount of Debtors' projected cash receipts (and each line item thereof) set forth in the Approved DIP Budget for such applicable Variance Testing Period and the Debtors' projected disbursements (and each line item thereof),

---

[4]    Notwithstanding anything to the contrary herein, for (i) the first Testing Date on March 2, 2024, the Variance Testing Period shall be the two-week period ending on the Friday of the second calendar week occurring after the Petition Date (the "Two-Week Variance Testing Period"), (ii) the second Testing Date on March 9, 2024, the Variance Testing Period shall be the three-week period ending on the Friday of the third calendar week occurring after the Petition Date (the "Three-Week Variance Testing Period"), and (iii) for the third Testing Date as of March 16, 2024 and thereafter, the Variance Testing Period shall be the four-week period preceding the applicable Testing Date (the "Four-Week Variance Testing Period" and together with the Two-Week Variance Testing Period and the Three-Week Variance Testing Period, the "Variance Testing Periods").

(Page | 29)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

respectively, set forth in the Approved DIP Budget for such applicable Variance Testing Period; and (iv) as to each variance contained in the Approved DIP Budget Variance Report, an indication as to whether such variance is temporary or permanent and an analysis and explanation in reasonable detail for any variance.

(c)     As of any Testing Date, the Debtors shall not permit: (i) (A) during the Two-Week Variance Testing Period and the Three-Week Variance Testing Period, the Debtors' Actual Disbursements to be more than 130% of the projected disbursements as set forth in the Approved DIP Budget in the aggregate for such period (the "Initial Permitted Disbursement Variances") and (B) during the Two-Week Variance Testing Period and the Three-Week Variance Testing Period, the Debtors' Actual Receipts for such period to be less than 70% of the projected receipts as set forth in the Approved DIP Budget in the aggregate for such period (the "Initial Permitted Receipt Variances" and, together with the Initial Permitted Disbursement Variances, the "Initial Permitted Variances"), and (ii) (A) during the Four-Week Variance Testing Period, the Debtors' Actual Disbursements to be more than 120% of the projected disbursements as set forth in the Approved DIP Budget in the aggregate for such period (the "Permitted Disbursement Variances") and (B) during the Four-Week Variance Testing Period, the Debtors' Actual Receipts for any Variance Testing Period during such Budget Period to be less than 80% of the projected receipts as set forth in the Approved DIP Budget in the aggregate for such period (the "Permitted Receipt Variances" and, together with the Permitted Disbursement Variances, the "Permitted Variances"; all references in this Interim Order and the DIP Documents to "Approved DIP Budget" shall mean

(Page | 30)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

the Approved DIP Budget as it is subject to the Initial Permitted Variances or Permitted Variances, as applicable).  Commencing with the first full calendar week after the Petition Date, the Debtors shall maintain Liquidity (as defined in the DIP Credit Agreement) of not less than $30,000,000 as of the last business day of every calendar week.  For purposes of Permitted Variances testing, the fees and expenses of Professional Persons (as defined below), the Prepetition First Lien Agent Advisors, the DIP/First Lien Advisors, and the DIP Agent Advisors shall be excluded.

5.     <u>Access to Records</u>.  The Debtors shall provide the DIP/First Lien Advisors and the DIP Agent Advisors with all reporting and other information required to be provided to the DIP Agent under the DIP Documents.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Documents, upon reasonable notice to counsel to the Debtors (email being sufficient), at reasonable times during normal business hours, the Debtors shall permit representatives, professionals, agents, and employees of the DIP Secured Parties to have reasonable access to (i) inspect the Debtors' assets, and (ii) reasonably requested information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other advisors of the Debtors (during normal business hours), and the DIP Secured Parties shall be provided with access to all information they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to attorney-client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

(Page | 31)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

6.     <u>DIP Superpriority Claims</u>.  Subject to, and subordinated in all respects to, the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "<u>DIP Superpriority Claims</u>") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, their estates or their property, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, subject to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "<u>Avoidance Actions</u>"), subject only to the payment of the Carve Out.  Except as set forth in this Interim Order or the Final Order, no other superpriority claims shall be granted or allowed in these Cases.

(Page | 32)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

7.      <u>DIP Liens</u>.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Secured Parties (all property identified in clause (a), (b), and (c) below being collectively referred to as the "<u>DIP Collateral</u>"), subject only to (x) Permitted Prior Liens and (y) the Carve Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "<u>DIP Liens</u>"):

(a)      <u>First Priority Lien On Any Unencumbered Property</u>.  Subject only to the Carve Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors and non-Debtor Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), including, without limitation (in each case, to the extent not subject to valid, perfected, and non-avoidable liens), a 100% equity pledge of all first-tier foreign subsidiaries and all unencumbered assets of the Debtors; all prepetition property and post-petition property of the Debtors' estates, and the proceeds, products, rents and

(Page | 33)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, unencumbered cash (and any investment of such cash) of the Debtors (whether maintained with the DIP Agent or otherwise); all equipment, all goods, all accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date); all insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements of the Debtors; all owned real estate, real property leaseholds and fixtures of the Debtors; patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtors; all commercial tort claims of the Debtors; and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred on or following the Petition Date); any and all proceeds, products, rents, and profits of the foregoing, and, subject to entry of the Final Order, all proceeds and property recovered in respect of Avoidance Actions (collectively, the "Previously Unencumbered Property"); *provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to this Interim Order shall attach to the Debtors' economic rights, including, without limitation, any and all proceeds of the foregoing.

(Page | 34)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

(b)      <u>Liens Priming the Prepetition First Priority Liens</u>.  Subject only to the Carve

Out, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected first priority senior priming security interest in and lien upon all

property of the Debtors and non-Debtor Loan Parties that was subject to the Prepetition First

Priority Liens, including, without limitation, the Prepetition Collateral and Cash Collateral;

*provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained

herein, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the

liens granted pursuant to this Interim Order shall attach to the Debtors' economic rights, including,

without limitation, any and all proceeds of the foregoing.

(c)      <u>Liens Junior to Certain Other Liens</u>.  Subject only to the Carve Out, pursuant

to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully

perfected security interest in and lien upon all prepetition and post-petition property of the Debtors

that is subject to the Permitted Prior Liens.  Subject to the Carve Out, the Permitted Prior Liens,

and the rights and limitations set forth in paragraph 11 (if applicable), and except as expressly set

forth in this Interim Order, the DIP Liens:  (i) shall not be made subject to or *pari passu* with (A)

any lien or security interest heretofore or hereinafter granted in any of the Cases or any successor

cases, and shall be valid and enforceable against the Debtors, their estates, any trustee or any other

estate representative appointed or elected in the Cases or any successor cases and/or upon the

dismissal of any of the Cases or any successor cases and (B) any lien that is avoided and preserved

for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; and (ii)

(Page | 35)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

shall not be subject to sections 506(c) (subject to entry of the Final Order, but effective as of the Petition Date), 510, 549, 550, or 551 of the Bankruptcy Code.

8. <u>Adequate Protection for the Prepetition First Lien Secured Parties</u>. Subject only to the payment of the Carve Out, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), for any diminution in value of such interests (each such diminution, a "<u>Diminution in Value</u>"), resulting from, among other things, the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve Out, the Debtors' use of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, in each case, from and after the Petition Date, the Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Secured Parties, is hereby granted the following (collectively, the "<u>Adequate Protection Obligations</u>"):

(a) <u>Adequate Protection Liens</u>. As security for any Diminution in Value, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the date of this Interim Order (together, the "<u>Adequate Protection Liens</u>"), without the necessity of the execution by the Debtors (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral and, upon entry of the Final Order, all proceeds or property recovered from Avoidance Actions. Subject to the terms of this Interim Order, the Adequate Protection Liens shall be subordinate only

(Page | 36)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

to the (A) Carve Out, (B) the DIP Liens, and (C) Permitted Prior Liens. The Adequate Protection

Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of

the DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is

avoided and preserved for the benefit of the Debtors and their estates under section 551 of the

Bankruptcy Code).

(b)     Adequate Protection Superpriority Claims. As further adequate protection,

and to the extent provided by sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, allowed

administrative expense claims in each of the Cases ahead of and senior to any and all other

administrative expense claims in such Cases to the extent of any postpetition Diminution in Value

(the "Adequate Protection Superpriority Claims"), but junior to the Carve Out and the DIP

Superpriority Claims. Subject to the Carve Out and the DIP Superpriority Claims in all respects,

the Adequate Protection Superpriority Claims will not be junior to any claims and shall have

priority over all administrative expense claims against each of the Debtors, now existing or

hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative

expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331,

365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(d), 726, 1113

and 1114 of the Bankruptcy Code.

(c)     Adequate Protection Payments. As further adequate protection, the Debtors

are authorized and directed to pay, in accordance with the terms of paragraph 18 of this Interim

Order, all reasonable and documented fees and out-of-pocket expenses, whether incurred before,

(Page | 37)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

on or after the Petition Date, to the extent not duplicative of any fees and/or expenses paid pursuant to paragraph 3(f)(3) hereof, including all reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Documents and this Interim Order, including, for the avoidance of doubt, of (i) Simpson Thacher & Bartlett LLP, as counsel, and Porzio, Bromberg & Newman, P.C., as local counsel to the Prepetition First Lien Agent (the "Prepetition First Lien Agent Advisors"), and (ii) the DIP/First Lien Advisors (all payments referenced in this sentence, collectively, the "Adequate Protection Payments"). The Debtors shall also pay, in accordance with and as and when due under the Prepetition First Lien Loan Documents, any administration or agency fees of the Prepetition First Lien Agent, whether such amounts are due prior to or after the Petition Date. None of the Adequate Protection Payments or such agency fees shall be subject to separate approval by this Court or the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any monthly, interim, or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(d) <u>Right to Seek Additional Adequate Protection</u>. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition First Lien Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the

(Page | 38)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition First Lien Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition First Lien Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

(e) *Other Covenants*. The Debtors shall maintain their cash management arrangements in a manner consistent with the cash management order approving the Debtors' cash management motion. The Debtors shall comply with the covenants contained in the DIP Credit Agreement regarding conduct of business, including, without limitation, preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations and intellectual property rights material to the conduct of their business and the maintenance of properties and insurance.

(f) *Reporting Requirements*. As additional adequate protection to the Prepetition First Lien Secured Parties, the Debtors shall comply with all reporting requirements set forth in the DIP Credit Agreement.

(g) *Miscellaneous*. Except for (i) the Carve Out and (ii) as otherwise provided in paragraphs 6 and 7, the Adequate Protection Liens and Adequate Protection Superpriority Claims granted to the Prepetition First Lien Secured Parties pursuant to paragraph 8 of this Interim Order shall not be subject, junior, or *pari passu*, to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under the Bankruptcy Code, including, without

(Page | 39)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

limitation, pursuant to section 551 or otherwise, and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under the Bankruptcy Code, including, without limitation, pursuant to section 364 or otherwise.

9.    <u>Carve Out</u>.

(a)    <u>Carve Out</u>.  As used in this Interim Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below) with respect to the Cases; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $4.5 million incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim

(Page | 40)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, counsel to the DIP Lenders, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     Carve Out Reserves.  Notwithstanding the occurrence of an Event of Default, on the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for New Money Loans (on a pro rata basis based on the then outstanding New Money Commitments), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute New Money Loans, as applicable) and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by

(Page | 41)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

the Debtors for New Money Loans (on a pro rata basis based on the then outstanding New Money Commitments), in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute New Money Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. On the first business day after the DIP Agent gives such notice to such DIP Lenders, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for New Money Loans under the DIP Facility, any termination of the Commitments with respect to New Money Loans following an Event of Default, or the occurrence of the Maturity Date, each DIP Lender of New Money Loans with an outstanding Commitment (on a pro rata basis based on the then outstanding Commitments) shall make available to the DIP Agent such DIP Lender's pro rata share with respect to such borrowing in accordance with the DIP Facility. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the

(Page | 42)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition First Lien Parties in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition First Lien Parties in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Documents, or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 9, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 9, prior to making any payments to the DIP Agent or the Prepetition First Lien Parties, as applicable. Notwithstanding anything to the contrary in the DIP Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition First Lien Agent shall not sweep or foreclose on cash (including cash received

(Page | 43)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Documents. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors *provided*, however, in no event shall the DIP Lenders be obligated to make DIP Obligations in excess of the aggregate amount of New Money Loans set forth in the DIP Documents. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Facility, or in any Prepetition Secured Facilities, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(c)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(Page | 44)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

(d)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  The Prepetition First Lien Parties and Prepetition First Lien Agent reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget.  Except for permitting the funding of the Carve Out Reserves as provided herein, none of the DIP Agent, DIP Lenders, or the Prepetition First Lien Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition First Lien Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Following the delivery of the Carve Out Trigger Notice, all Allowed Professional Fees shall be paid from the applicable Carve Out Reserve, and no Professional Person shall seek payment of any Allowed Professional Fees from any other source until the applicable Carve Out Reserve has been exhausted.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise

(Page | 45)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

10.    Reservation of Rights of the DIP Agent, DIP Lenders, and Prepetition First Lien Secured Parties.  Subject only to the Carve Out, notwithstanding any other provision in this Interim Order or the other DIP Documents to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Prepetition First Lien Secured Parties to seek any other or supplemental relief in respect of the Debtors including the right to seek additional adequate protection at and following the Final Hearing; *provided* that any such further or different adequate protection shall at all times be subordinate and junior to the Carve Out and the claims and liens of the DIP Secured Parties granted under this Interim Order and the other DIP Documents; (b) any of the rights of the DIP Secured Parties or the Prepetition First Lien Secured Parties under the DIP Documents, the Prepetition First Lien Loan Documents, any intercreditor agreement, or the Bankruptcy Code or under non-bankruptcy law (as applicable), including, without limitation, the right of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Cases, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

Secured Parties or the Prepetition First Lien Secured Parties. The delay in or failure of the DIP Secured Parties and/or the Prepetition First Lien Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Secured Parties' or the Prepetition First Lien Secured Parties' rights and remedies. For all adequate protection purposes throughout the Cases, each of the Prepetition First Lien Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Diminution in Value from and after the Petition Date. For the avoidance of doubt, such request will survive termination of this Interim Order.

11.     <u>Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims</u>. The stipulations, admissions, waivers, and releases contained in this Interim Order, including the Debtors' Stipulations, shall be binding upon the Debtors, their estates, and any of their respective successors in all circumstances and for all purposes and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date. The stipulations, admissions, and waivers contained in this Interim Order, including, the Debtors' Stipulations, shall be binding upon all other parties in interest, including any Committee and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by order of the Court (or other court of competent jurisdiction) has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (i) as to any party in interest other than the Committee, sixty (60) calendar days after entry of the Final Order, and in the case of any such adversary proceeding or contested matter

(Page | 47)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

filed by any Committee, sixty (60) calendar days after the appointment of such Committee (the

"Challenge Period" and the date of expiration of the Challenge Period, the "Challenge Period

Termination Date"); *provided,* that if, prior to the end of the Challenge Period, (x) the cases convert

to chapter 7, or (y) if a chapter 11 trustee is appointed, then, in each such case, the Challenge

Period shall be extended by the later of (A) the time remaining under the Challenge Period plus

ten (10) days or (B) such other time as ordered by the Court solely with respect to any such trustee,

commencing on the occurrence of either of the events discussed in the foregoing clauses (x) and

(y); (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations

regarding: (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security

interests, and liens of the Prepetition First Lien Secured Parties; or (b) the validity, enforceability,

allowability, priority, secured status, or amount of the Prepetition First Lien Obligations (any such

claim, a "Challenge"), and (iii) in which the Court enters a final order in favor of the plaintiff

sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.

Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge

(or if any such Challenge is filed and overruled): (a) any and all such Challenges by any party

(including the Committee, any chapter 11 trustee, and/or any examiner or other estate

representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or

other estate representative appointed or elected in any successor case) shall be forever barred; (b)

the Prepetition First Lien Obligations shall constitute allowed claims, not subject to counterclaim,

setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all

(Page | 48)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

purposes in the Cases and any successor cases; (c) the Prepetition First Priority Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected secured claims, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition First Lien Secured Parties' claims, liens, and interests contained in this Interim Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Cases and any successor cases.  If any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules and remains pending and the Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates.  Furthermore, if any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules, the stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date.  Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, any Committee appointed in the Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation any challenges (including a Challenge)

(Page | 49)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

with respect to the Prepetition First Lien Loan Documents, the Prepetition First Priority Liens, and the Prepetition First Lien Obligations, and a separate order of the Court conferring such standing on any Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest. Upon a successful Challenge brought pursuant to this paragraph 11, including but not limited to a Challenge to the Prepetition First Priority Liens comprised of the roll-ups granted in this Interim Order, the Court may fashion an appropriate remedy.

12.     <u>Termination Date</u>. On the Termination Date (as defined below), consistent with the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable, all Commitments will terminate, and the Carve Out Reserves shall be funded as set forth in this Interim Order; (b) all authority to use Cash Collateral shall cease; *provided*, *however*, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to fund the Carve Out and pay payroll and other expenses critical to the administration of the Debtors' estates in accordance with the Approved DIP Budget, subject to any Permitted Variances set forth herein and in the DIP Documents; and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim Order.

13.     <u>Events of Default</u>. The occurrence of any of the following events, unless waived in writing (email being sufficient) by the Required DIP Lenders in accordance with the terms of the DIP Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>"): (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions,

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

conditions, covenants, or obligations under this Interim Order, (b) the failure of the Debtors to comply with any of the Required Milestones (as defined below) or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement (which Events of Default are explicitly incorporated by reference into this Interim Order).

14.     Milestones.  The Debtors' failure to comply with any of the case milestones set forth in section [___] of the DIP Credit Agreement (collectively, the "Required Milestones") shall constitute an "Event of Default" in accordance with the terms of the DIP Credit Agreement unless waived or extended by the DIP Lenders.

15.     Rights and Remedies Upon Event of Default.  Subject to the terms of the applicable DIP Documents, immediately upon the occurrence and during the continuation of an Event of Default notwithstanding the provisions of section 362 of the Bankruptcy Code (which is expressly vacated and modified for such purposes), without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order and the Remedies Notice Period (defined below), (a) the DIP Agent (at the direction of the Required DIP Lenders) or the Required DIP Lenders may declare (any such declaration shall be referred to herein as a "Termination Declaration") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, and thereupon the principal of the DIP Obligations so declared to be due and payable, together with accrued interest thereon and all fees and other applicable DIP Obligations, shall become due and payable immediately, in each case, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or other notice of any kind,

(Page | 51)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

which is waived by the Debtors pursuant to the DIP Credit Agreement, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, (iv) that the Carve Out shall be triggered, through the delivery of the Carve Out Trigger Notice to the DIP Borrower, and (v) that the default rate of interest under the DIP Facility has been triggered, and (b) subject to paragraph 12(b), the DIP Agent (at the direction of the Required DIP Lenders) or the Required DIP Lenders may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date on which a Termination Declaration is delivered, the "Termination Date"). The automatic stay in the Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties is hereby modified so that five (5) business days after the Termination Date (the "Remedies Notice Period"): (a) the DIP Secured Parties shall be entitled to exercise their respective rights and remedies in accordance with the DIP Documents and this Interim Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out; (b) subject to the foregoing clause (a), the applicable Prepetition First Lien Secured Parties shall be entitled to exercise their respective rights and remedies in accordance with the applicable Prepetition First Lien Loan Documents and this Interim Order with respect to the Debtors' use of Cash Collateral. During the Remedies Notice Period, the Debtors, the Committee (if appointed), and/or any party in interest shall be entitled to seek an emergency hearing within

(Page | 52)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

the Remedies Notice Period with the Court for the sole purpose of contesting whether an Event of Default has occurred or is continuing.  Except as set forth in this paragraph 15 or otherwise ordered by the Court prior to the expiration of the Remedies Notice Period, after the Remedies Notice Period, the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties under this Interim Order.  Unless the Court orders otherwise prior to the expiration of the Remedies Notice Period, the automatic stay, as to all of the DIP Agent, DIP Lenders, and Prepetition First Lien Secured Parties shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall be permitted to exercise all remedies set forth herein, and in the DIP Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Interim Order; *provided* that the Prepetition First Lien Secured Parties shall be permitted to exercise remedies to the extent available solely with respect to the Debtors' use of Cash Collateral.

16.    <u>Limitation on Charging Expenses Against Collateral</u>.    No expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (a) the DIP Collateral (except to the extent of the Carve Out), the DIP

(Page | 53)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

Agent, or the DIP Lenders or (b) subject to entry of the Final Order, the Prepetition Collateral (except to the extent of the Carve Out) or the Prepetition First Lien Secured Parties, in each case, pursuant to sections 105(a) or 506(c) (subject to entry of a Final Order) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties.

17.    <u>Use of Cash Collateral</u>.  The Debtors are hereby authorized to use all Cash Collateral of the Prepetition First Lien Secured Parties, but solely for the purposes set forth in this Interim Order and in accordance with the Approved DIP Budget (subject to Permitted Variances as set forth in this Interim Order and the DIP Documents), including, without limitation, to make payments on account of the Adequate Protection Obligations provided for in this Interim Order, from the date of this Interim Order through and including the date of termination of the DIP Credit Agreement.  Except in accordance with the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any time using any Cash Collateral.

18.    <u>Expenses and Indemnification</u>.

(a)    The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, backstop, fronting, closing, arrangement or commitment

(Page | 54)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

payments (including all payments and other amounts owed to the DIP Lenders), administrative agent's fees, and collateral agent's fees (including all fees and other amounts owed to the DIP Agent), the reasonable and documented fees and disbursements of counsel and other professionals to the extent set forth in paragraphs 3(f)(3) and 8(c) of this Interim Order, whether or not such fees arose before, on or after the Petition Date, all to the extent provided in this Interim Order or the DIP Documents. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Documents) all reasonable and documented fees, costs, and expenses, including the fees and expenses of counsel to the DIP Lenders, the DIP Agent, the Prepetition First Lien Agent, and the DIP/First Lien Group, incurred on or prior to such date without the need for any professional engaged by the DIP Lenders, the DIP Agent, the Prepetition First Lien Agent, or the DIP/First Lien Group to first deliver a copy of its invoice as provided for herein.

(b) The Debtors shall be jointly and severally obligated to pay all fees and expenses described above, which obligations shall constitute the DIP Obligations. The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in paragraphs 3(f)(3) and 8(c) of this Interim Order (collectively, the "Lender Professionals" and, each, a "Lender Professional") no later than ten (10) business days (the "Review Period") after the receipt by counsel for the Debtors, any Committee, and the U.S. Trustee of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines,

(Page | 55)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

including such amounts arising before the Petition Date.  Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, provided that the Debtors, the U.S. Trustee, and any statutory committee appointed in these cases may request additional information regarding Invoiced Fees; and provided, further, that invoice summaries for Invoiced Fees may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.  The Debtors, any Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, any Committee that may be appointed in these Cases, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days prior written notice to the submitting party of any hearing on such motion or other pleading).  For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(Page | 56)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

(c)     In addition, the Debtors will indemnify each of the DIP Lenders, the DIP Agent, and each of their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing, in each chase, in their respective capacity as such, pursuant to the DIP Credit Agreement.

19.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

20.     Section 507(b) Reservation.  Subject only to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition First Lien Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition First Lien Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

21.     Insurance.  Until the DIP Obligations have been indefeasibly paid in full, at all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and shall name the DIP Agent as loss payee or additional insured, as applicable, thereunder.

(Page | 57)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

22.     <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the DIP Agent or the

Required DIP Lenders to exercise rights and remedies under this Interim Order, the DIP

Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective

rights or remedies hereunder, thereunder, or otherwise.  All such rights and remedies are expressly

reserved and preserved.

23.     <u>Perfection of the DIP Liens and Adequate Protection Liens</u>.

(a)     The DIP Agent and the Prepetition First Lien Agent are hereby authorized,

but not required, to file or record financing statements, intellectual property filings, mortgages,

depository account control agreements, notices of lien, or similar instruments in any jurisdiction

in order to validate and perfect the liens and security interests granted hereunder or under the DIP

Documents.  Whether or not the DIP Agent or the Prepetition First Lien Agent shall (at the

direction of the applicable required lenders) choose to file such financing statements, intellectual

property filings, mortgages, notices of lien, or similar instruments, such liens and security interests

shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not, subject to the

Challenge Period, subject to challenge, dispute, or subordination as of the date of entry of this

Interim Order.  If the DIP Agent or the Prepetition First Lien Agent (at the direction of the

applicable required lenders) determines to file or execute any financing statements, agreements,

notice of liens, or similar instruments, the Debtors shall use commercially reasonable efforts to

cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent

(Page | 58)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

or the Prepetition First Lien Agent (at the direction of the applicable required lenders), and the automatic stay shall be modified solely to allow such filings as provided for in this Interim Order.

(b) A certified copy of this Interim Order may, at the direction of the applicable Required DIP Lenders, be filed with or recorded in filing or recording offices by the DIP Agent or the Prepetition First Lien Agent in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Interim Order.

(c) Any provision of any lease, license, contract or other agreement that requires (i) the consent or approval of one or more landlords, lessors, or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, license, contract or other agreement or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law. Any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens on such leasehold interest, license, contract or other agreement, or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Interim Order, subject to applicable law.

(Page | 59)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

24.    <u>Release</u>.  Effective upon entry of this Interim Order, each of the Debtors and the

Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors,

and assigns, shall, to the maximum extent permitted by applicable law, unconditionally,

irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge,

effective upon entry of this Interim Order, each of the DIP Secured Parties and each of their

respective affiliates, former, current, or future officers, employees, directors, agents,

representatives, owners, members, partners, financial advisors, legal advisors, shareholders,

managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each

in their capacity as such (collectively, the "<u>Related Parties</u>"), and, effective upon entry of the

Interim Order, each of the Prepetition First Lien Secured Parties and each of their respective

Related Parties, of and from any and all claims, demands, liabilities, responsibilities, disputes,

remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions,

suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or

judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected,

accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all

legal and equitable theories of recovery, arising under common law, statute, or regulation or by

contract, of every nature and description that exist on the date hereof with respect to or relating to

the DIP Obligations, the DIP Liens, the DIP Documents, the Prepetition First Lien Obligations,

the Prepetition First Priority Liens or the Prepetition First Lien Loan Documents, as applicable,

including, without limitation: (i) any so-called "lender liability" or equitable subordination claims

(Page | 60)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties and the Prepetition First Lien Secured Parties; *provided* that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Documents.

25.    Credit Bidding.  The DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition First Lien Agent (at the direction of the Required Lenders (as defined in the Pre-Petition Credit Agreement)) shall have the right to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the underlying lenders' respective claims, including, for the avoidance of doubt, Adequate Protection Superpriority Claims, if any, in any sale of all or any portion of the Prepetition Collateral or the DIP Collateral including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii).

26.    Preservation of Rights Granted Under this Interim Order.

(a)    Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all Commitments are terminated, the Prepetition First Lien Secured Parties shall:  (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted pursuant to the Prepetition First Lien Loan Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in paragraph 23 herein.

(b)     In the event this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Prepetition First Lien Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and DIP Secured Parties and the Prepetition First Lien Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 364(e) of the Bankruptcy Code.

(c)     Unless and until all DIP Obligations, Prepetition First Lien Obligations, and Adequate Protection Payments are indefeasibly paid in full, in cash, and all Commitments are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the DIP Documents or, if not provided for therein, with the prior written consent of the DIP Agent, the Required DIP Lenders, and the Prepetition First Lien Agent (acting at the direction of the Required Lenders, and, if impacting the rights and obligations of the Prepetition First Lien Agent, with the approval of the Prepetition First Lien Agent), (x) any modification, stay, vacatur, or amendment of this Interim Order or (y) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases, *pari passu* with or senior to the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, or the Prepetition First Lien Obligations, or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the DIP Documents (including the Carve Out), any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens or the Prepetition First Priority Liens, as applicable; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order; and (iv) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor.

(d)      Notwithstanding any order dismissing any of the Cases entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Payments are indefeasibly paid in full in cash (and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Interim Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) to the fullest extent permitted by law the Court shall retain jurisdiction,

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(e)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition First Lien Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until the DIP Obligations and the Adequate Protection Payments are indefeasibly paid in full, in cash or, with

(Page | 64)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the Required DIP

Lenders and the DIP Agent (acting at the direction of the Required DIP Lenders).

(f)     Other than as set forth in this Interim Order, subject to the Carve Out,

neither the DIP Liens nor the Adequate Protection Liens shall be made subject to or *pari passu*

with any lien or security interest granted in any of the Cases or arising after the Petition Date, and

neither the DIP Liens nor the Adequate Protection Liens shall be subject or junior to any lien or

security interest that is avoided and preserved for the benefit of the Debtors' estates under section

551 of the Bankruptcy Code.

27.     <u>Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral</u>.

Notwithstanding anything to the contrary in this Interim Order, none of the DIP Facility, the DIP

Collateral, the Prepetition Collateral, including Cash Collateral, or the Carve Out or proceeds

thereof may be used:   (a) to investigate (including by way of examinations or discovery

proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or

prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion,

objection, defense, adversary proceeding, or other litigation of any type (i) against any of the

DIP Secured Parties or the Prepetition First Lien Secured Parties (each in their capacities as such),

and each of their respective affiliates, officers, directors, employees, agents, representatives,

attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any

transaction, occurrence, omission, action, or other matter (including formal discovery proceedings

in anticipation thereof), including, without limitation, any so-called "lender liability" claims and

(Page | 65)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

causes of action, or seeking relief that would impair the rights and remedies of the DIP Secured

Parties or the Prepetition First Lien Secured Parties (each in their capacities as such) under the DIP

Documents, the Prepetition First Lien Loan Documents, or this Interim Order, including, without

limitation, for the payment of any services rendered by the professionals retained by the Debtors

or any Committee appointed in these Cases in connection with the assertion of or joinder in any

claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense,

adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of

which would be to obtain, any order, judgment, determination, declaration, or similar relief that

would impair the ability of any of the DIP Secured Parties or the Prepetition First Lien Secured

Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief

against any of the DIP Secured Parties or the Prepetition Parties related to the DIP Obligations or

the Prepetition First Lien Obligations; (ii) invalidating, setting aside, avoiding, or subordinating,

in whole or in part, the DIP Obligations or the Prepetition First Lien Obligations, or the DIP

Agent's, the DIP Lenders', and the Prepetition First Lien Secured Parties' liens or security interests

in the DIP Collateral or Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or

other affirmative relief against the DIP Secured Parties or the Prepetition First Lien Secured

Parties, or the DIP Agent's, the DIP Lenders', the Prepetition First Lien Secured Parties' respective

liens on or security interests in the DIP Collateral or the Prepetition Collateral that would impair

the ability of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties, as

applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on

| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
|---|---|
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

the DIP Obligations or the Prepetition First Lien Obligations, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition First Priority Liens) held by or on behalf of each of the Prepetition First Lien Secured Parties related to the Prepetition First Lien Obligations, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the DIP Obligations, the DIP Liens, the Prepetition First Lien Obligations, or the Prepetition First Priority Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens, or (y) any of the Prepetition First Priority Liens or any other rights or interests of any of the Prepetition First Lien Secured Parties related to the Prepetition First Lien Obligations or the Prepetition First Priority Liens, *provided* that no more than $50,000 of the proceeds of the DIP Facility, the DIP Collateral, or the Prepetition Collateral, including the Cash Collateral, in the aggregate, may be used by any Committee appointed in these Cases, if any, solely to investigate or prosecute, within the Challenge Period (as defined below), the claims, causes of action, adversary proceedings, or other litigation against the Prepetition First Lien Secured Parties solely concerning the legality, validity, priority, perfection, enforceability or extent of the claims, liens,

(Page | 67)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

or interests (including the Prepetition First Priority Liens) held by or on behalf of each of the

Prepetition First Lien Secured Parties related to the Prepetition First Lien Obligations.

28.    <u>Conditions Precedent</u>.  Except as provided for in the Carve Out, no DIP Lender

shall have any obligation to make any DIP Loan under the respective DIP Documents unless all

of the conditions precedent to the making of such extensions of credit under the applicable DIP

Documents have been satisfied in full or waived in accordance with such DIP Documents.

29.    <u>Intercreditor Provisions</u>.  Pursuant to section 510 of the Bankruptcy Code, any

applicable intercreditor or subordination provisions contained in any of the Prepetition First Lien

Loan Documents shall remain in full force and effect; *provided* that nothing in this Interim Order

shall be deemed to provide liens to any Prepetition First Lien Secured Party on any assets of the

Debtors except as set forth herein.

30.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions

of this Interim Order, including all findings herein, shall be binding upon all parties in interest in

these Cases, including, without limitation, the DIP Secured Parties, the Prepetition First Lien

Secured Parties, any Committee appointed in these Cases, and the Debtors and their respective

successors and permitted assigns (including any chapter 7 or chapter 11 trustee hereinafter

appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section

1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of

the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to

the benefit of the DIP Secured Parties and the applicable Prepetition First Lien Secured Parties;

(Page | 68)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

*provided* that, except to the extent expressly set forth in this Interim Order, the Prepetition First Lien Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors. In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise) to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

31.    <u>Limitation of Liability</u>. In determining to make any loan under the DIP Documents, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition First Lien Secured

(Page | 69)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

32. <u>No Requirement to File Claim for DIP Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the DIP Agent nor any DIP Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's or any DIP Lender's rights, remedies, powers, or privileges under any of the DIP Documents, this Interim Order, or applicable law. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

33. <u>No Requirement to File Claim for Prepetition First Lien Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or

(Page | 70)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the Prepetition First Lien Agent nor any Prepetition First Lien Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition First Lien Obligations; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Prepetition First Lien Loan Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Prepetition First Lien Agent's or any Prepetition First Lien Lender's rights, remedies, powers, or privileges under any of the Prepetition First Lien Loan Documents, this Interim Order, or applicable law. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest. However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition First Lien Agent is authorized (but not directed), to file in the Debtors' lead Chapter 11 Case (Case No. 24-11840 (CMG)), a master proof of claim on behalf of their respective Prepetition First Lien Secured Parties, as applicable, on account of any and all of their respective claims arising under the Prepetition First Lien Loan Documents and hereunder (as applicable) (each, a "Master Proof of Claim") against each of the applicable Debtors. Upon the filing of any such Master Proof of Claim, the Prepetition First Lien Agent shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims of any type or nature whatsoever

(Page | 71)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

with respect to the applicable Prepetition First Lien Loan Documents, and the claim of each applicable Prepetition First Lien Secured Party (and each of its successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases of the applicable Debtors. The Master Proofs of Claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by the Debtors to the applicable Prepetition First Lien Secured Parties. Any proof of claim filed by the Prepetition First Lien Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition First Lien Secured Parties. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the Prepetition First Lien Secured Parties with respect to the Prepetition First Lien Obligations or any claims arising under the Prepetition First Lien Loan Documents.

34.    <u>No Marshaling</u>.  The DIP Agent and the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to this Interim Order, the DIP Documents and the Prepetition First Lien Loan Documents, notwithstanding any other agreement or provision to the contrary, and subject to entry of the Final Order, the Prepetition First Lien Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral.

(Page | 72)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

35. <u>Application of Proceeds of DIP Collateral</u>.  Subject to entry of a Final Order, the DIP Obligations, at the option of the Required DIP Lenders, to be exercised in their sole and absolute discretion, shall be repaid (a) first, from the DIP Collateral comprising Previously Unencumbered Property and (b) second, from all other DIP Collateral.

36. <u>Equities of the Case</u>.  The DIP Secured Parties shall each be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code, subject to and upon entry of the Final Order, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties with respect to proceeds, product, offspring, or profits of any of the DIP Collateral (including the Prepetition Collateral).  The Prepetition First Lien Secured Parties shall be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition First Lien Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

37. <u>Final Hearing</u>.  The Final Hearing on the Motion shall be held on _____, 2024, at__:__ _.m., prevailing Eastern time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2024, and shall be served on:  (a) the Debtors; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Ave, New York, NY 10022, Attn: Kirkland & Ellis LLP, 300 LaSalle Street, Chicago, Illinois 60654; Attn: Anup Sathy, P.C., and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Matthew C. Fagen, P.C., Francis Petrie, and Evan

(Page | 73)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al.* |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

Swager; (c) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Warren A. Usatine, Esq., Felice R. Yudkin, Esq., Jacob S. Frumkin, Esq.; (d) counsel to the DIP Lenders and the DIP/First Lien Group, Gibson, Dunn & Crutcher LLP, 200 Park Ave., New York, NY 10166, Attn: Scott J. Greenberg, Esq., Joseph Zujkowski, Esq., Michelle Choi, Esq., and Matthew Rowe, Esq.; (e) co-counsel to the DIP Lenders and the DIP/First Lien Group, Sills Cummis & Gross, P.C., One Riverfront Plaza, Newark, NJ 07102, Attn: Andrew H. Sherman, Esq., S. Jason Teele, Esq. and Gregory A. Kopacz, Esq.; (f) counsel to the DIP Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019, Attn: Jeffrey R. Gleit, Esq. and Brett D. Goodman, Esq.; (g) counsel to the Prepetition First Lien Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Ave, New York, NY 10017, Attn: Nicholas Baker, Esq., Hyang-Sook Lee, Esq., and Philip L. DiDonato, Esq. (h) the United States Trustee, Attn: Jeffrey M. Sponder and Lauren Bielskie; and (i) counsel to any statutory committee appointed in these chapter 11 cases. In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

38.    <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

(Page | 74)

| | |
|---|---|
| Debtors: | THRASIO HOLDINGS, INC., *et al*. |
| Case No. | 24-11840 (CMG) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING |

39.      The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Interim Order.

40.      <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

## <u>EXHIBIT A</u>

**DIP Credit Agreement**

**[To Come]**

## **EXHIBIT B**

**Budget**

**Thrasio Holdings, Inc.**
**Approved Budget**
*$ in 000s*

| | *Fcst* Week 1[1] 2-Mar | *Fcst* Week 2 9-Mar | *Fcst* Week 3 16-Mar | *Fcst* Week 4 23-Mar | *Fcst* Week 5 30-Mar | *Fcst* Week 6 6-Apr | *Fcst* Week 7 13-Apr | *Fcst* Week 8 20-Apr | *Fcst* Week 9 27-Apr | *Fcst* Week 10 4-May | *Fcst* Week 11 11-May | *Fcst* Week 12 18-May | *Fcst* Week 13 25-May | *Fcst* 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL COLLECTIONS** | $ 5,402 | $ 6,121 | $ 6,284 | $ 6,691 | $ 7,014 | $ 7,623 | $ 7,795 | $ 7,855 | $ 7,620 | $ 7,716 | $ 7,276 | $ 7,452 | $ 12,447 | $ 97,298 |
| **OPERATING DISBURSEMENTS** | | | | | | | | | | | | | | |
| Merchandise | - | (5,325) | (2,662) | (2,960) | (2,692) | (2,086) | (2,086) | (2,086) | (2,086) | (2,086) | (2,086) | (2,086) | (2,086) | (30,329) |
| Supply Chain | - | (4,964) | (2,487) | (3,287) | (2,487) | (2,428) | (2,428) | (3,528) | (2,528) | (2,478) | (2,478) | (3,478) | (2,578) | (35,148) |
| SG&A | - | (4,792) | (4,398) | (2,658) | (6,927) | (2,790) | (4,674) | (3,217) | (4,675) | (5,533) | (2,479) | (4,375) | (3,079) | (49,597) |
| Sales & Other Taxes | - | (1,310) | (307) | (217) | (149) | - | (12) | - | (444) | (23) | (3) | (136) | (46) | (2,646) |
| **Total Operating Disbursements** | $ - | $ (16,391) | $ (9,854) | $ (9,122) | $ (12,255) | $ (7,304) | $ (9,200) | $ (8,831) | $ (9,733) | $ (10,121) | $ (7,046) | $ (10,075) | $ (7,790) | $ (117,720) |
| Net Cash Flow - Adjacent Businesses | - | (373) | (292) | (284) | (117) | (245) | (130) | (142) | 82 | (119) | 131 | (243) | 166 | (1,566) |
| **NON-OPERATING CASH FLOWS** | | | | | | | | | | | | | | |
| Interest & Fees | - | (828) | - | - | (25) | (401) | (803) | - | - | (375) | (388) | - | - | (2,820) |
| Restructuring Professionals Fees | - | (70) | (228) | - | - | (70) | (1,668) | - | (5,484) | (70) | (1,418) | - | - | (9,008) |
| Divestitures/Asset Dispositions | - | - | - | - | - | - | - | - | - | 200 | - | - | - | 200 |
| Other Non-Operating | - | (475) | (464) | (200) | (354) | (200) | (200) | - | - | - | - | - | - | (1,893) |
| **Total Non-Operating Cash Flows** | $ - | $ (1,373) | $ (692) | $ (200) | $ (379) | $ (671) | $ (2,671) | $ - | $ (5,484) | $ (245) | $ (1,806) | $ - | $ - | $ (13,521) |
| **Net Cash Flow Before Financing** | $ 5,402 | $ (12,015) | $ (4,553) | $ (2,915) | $ (5,736) | $ (596) | $ (4,206) | $ (1,118) | $ (7,515) | $ (2,769) | $ (1,446) | $ (2,866) | $ 4,823 | $ (35,510) |
| DIP Draw / (Repayment) | - | 35,000 | - | - | - | - | 35,000 | - | - | - | - | - | - | 70,000 |
| **NET CASH FLOW** | $ 5,402 | $ 22,985 | $ (4,553) | $ (2,915) | $ (5,736) | $ (596) | $ 30,794 | $ (1,118) | $ (7,515) | $ (2,769) | $ (1,446) | $ (2,866) | $ 4,823 | $ 34,490 |
| **Beginning Operating Cash** | $ 25,692 | $ 31,094 | $ 54,079 | $ 49,526 | $ 46,611 | $ 40,875 | $ 40,279 | $ 71,073 | $ 69,955 | $ 62,440 | $ 59,671 | $ 58,226 | $ 55,359 | $ 25,692 |
| Add: Net Cash Flows | 5,402 | 22,985 | (4,553) | (2,915) | (5,736) | (596) | 30,794 | (1,118) | (7,515) | (2,769) | (1,446) | (2,866) | 4,823 | 34,490 |
| **Ending Operating Cash** | $ 31,094 | $ 54,079 | $ 49,526 | $ 46,611 | $ 40,875 | $ 40,279 | $ 71,073 | $ 69,955 | $ 62,440 | $ 59,671 | $ 58,226 | $ 55,359 | $ 60,182 | $ 60,182 |

*(1) Week 1 covers the period from February 27, 2024 to March 2, 2024*