**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
anup.sathy@kirkland.com

-and-

Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Francis Petrie (admitted *pro hac vice*)
Evan Swager (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
matthew.fagen@kirkland.com
francis.petrie@kirkland.com
evan.swager@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Jacob S. Frumkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
jfrumkin@coleschotz.com

*Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THRASIO HOLDINGS, INC., et al., | Case No. 24-11840 (CMG) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF**
**TERRENCE F. GROSSMAN, BANKRUPTCY**
**ADMINISTRATION OFFICER OF THRASIO HOLDINGS,**
**INC., IN SUPPORT OF CONFIRMATION OF THE FIRST AMENDED**
**JOINT PLAN OF REORGANIZATION OF THRASIO HOLDINGS, INC. AND ITS**
**DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Terrence F. Grossman, hereby declare under penalty of perjury:

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

## Background and Qualifications

1.      I am a Partner of AlixPartners, LLP ("AlixPartners"), and the Bankruptcy Administration Officer of Thrasio Holdings, Inc., a corporation organized under the laws of Delaware and one of the above-captioned debtors and debtors in possession (collectively, the "Debtors").    AlixPartners has served as a financial advisor to the Debtors since August 23, 2023, and on April 16, 2024, I was appointed as the Debtors' Bankruptcy Administration Officer.[2]

2.      I am generally familiar with the Debtors' operations, business and financial affairs, and books and records.  Except where specifically noted, the statements in this Declaration are based on:  (a) my personal knowledge of the Debtors' operations and finances, (b) my review of relevant documents provided to me by other members of the Debtors' management team and the Debtors' professional advisors, (c) information provided to me by, or discussions with, other members of the Debtors' management team or its professional advisors, and/or (d) my opinion based upon my experience.  If called as a witness, I would testify competently to the facts set forth in this Declaration.

3.      I am over the age of 18 and authorized to submit this declaration (this "Declaration") in support of confirmation of the *First Amended Joint Plan of Reorganization of Thrasio Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1066] (as may be amended, supplemented, or otherwise modified from time to time,

---

[2]    Pursuant to the terms of that certain engagement letter between the Debtors and AlixPartners dated August 23, 2023, and that certain engagement letter between the Debtors and AlixPartners dated April 16, 2024, respectively. On May 13, 2024, the Bankruptcy Court entered the *Amended Order Authorizing the Debtors to (I) Retain AP Services LLC, and (II) Designate Terrence F. Grossman as Bankruptcy Administration Officer Nunc Pro Tunc to February 28, 2024* [Docket No. 746].

the "Plan").[3]  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

### The Proposed Restructuring

4.      The Debtors commenced these chapter 11 cases approximately 3 months ago with the goal of carrying out an expeditious reorganization that would preserve the value of their go-forward business.  Pursuant to the Restructuring Support Agreement executed prior to filing, the Debtors entered these chapter 11 cases with the support of secured lenders holding over 81% of the Debtors' funded debt for a comprehensive restructuring transaction and commitments for a $360 million "DIP-to-exit" financing facility, including $90 million of new-money DIP financing. The Plan memorializes the terms of the Restructuring Support Agreement, and is the culmination of months extensive, hard-fought, arm's-length negotiations between the Debtors and their key stakeholders on the terms of Restructuring Transactions.

5.      I believe that confirmation of the Plan is in the best interests of the Debtors' estates and their stakeholders.  The Plan deleverages the Debtors' balance sheet by approximately $495 million and injects approximately $90 million of new liquidity through the DIP-to-Exit Facilities, which will provide the Reorganized Debtors with sufficient liquidity to operate their business upon emergence.  The Plan is also overwhelmingly supported by voting creditors—based on a preliminary review of ballots received from voting creditors, 100% of Holders of Class 3 First Lien Claims and approximately 95.76% of Holders of Class 4 General Unsecured Claims will vote to accept the Plan.  I believe that the Plan is the product of extensive, good faith, arm's-length

---

[3]     Capitalized terms used but not defined herein shall have the meanings given to such terms in the Plan or the *Debtors' Memorandum of Law in Support of an Order Confirming the First Amended Joint Plan of Reorganization of Thrasio Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Brief"), as applicable.

negotiations between the Debtors and their key stakeholders and, in my opinion, represents the best and only path available to expeditiously conclude these chapter 11 cases and maximize creditor recoveries.

**I.    The Plan Satisfies Section 1129(a) of the Bankruptcy Code.**

6.    I have been advised of the applicable standards under which a plan of reorganization may be confirmed under chapter 11 of the Bankruptcy Code.  For the reasons detailed below, and based on my understanding of the Bankruptcy Code, I believe the Plan satisfies all applicable requirements for confirmation.

**A.    The Plan Satisfies the Applicable Provisions of the Bankruptcy Code — Section 1129(a)(1).**

7.    I understand that section 1129(a)(1) of the Bankruptcy Code requires a chapter 11 plan to comply with all applicable provisions of the Bankruptcy Code.  As set forth below, I believe the Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

**1.    Proper Classification of Claims and Interests — Section 1122.**

8.    It is my understanding that section 1122 of the Bankruptcy Code requires that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.  I believe that valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.

9.     Under Article III of the Plan, Claims and Interests are classified as follows:

| | |
|---|---|
| Class 1: | Other Secured Claims |
| Class 2: | Other Priority Claims |
| Class 3: | First Lien Claims |
| Class 4: | General Unsecured Claims |
| Class 5: | Series X Redeemable Preferred Stock Interests |
| Class 6: | Series D Preferred Stock Interests |
| Class 7: | Series C Preferred Stock Interests |
| Class 8: | Series B Preferred Stock Interests |
| Class 9: | Series A Preferred Stock Interests |
| Class 10: | Series Seed Preferred Stock Interests |
| Class 11: | Common Stock Interests |
| Class 12: | Intercompany Claims |
| Class 13: | Intercompany Interests |

10.    I believe that the Claims and Interests assigned to each Class listed above are substantially similar to the other Claims and Interests in that Class.  In addition, I believe that valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.  Namely, the Plan separately classifies Claims and Interests because each Holder of such Claims or Interests may hold (or may have held) rights in the Debtors' estates legally dissimilar to the Claims or Interests in other Classes or because substantial administrative convenience results from such separate classification.  For example, Other Secured Claims (Class 1) and First Lien Claims (Class 3) are classified separately due to the different circumstances and contractual rights of each Class.  Similarly, each series of Preferred Stock (Classes 5-10) is classified separately because of the differing priorities of their Interests against the Debtors.

11.    For the foregoing reasons, I believe that the Plan satisfies section 1122 of the Bankruptcy Code.

**2.      Specification of Classes, Impairment, and Treatment —
Section 1123(a)(1)– (3).**

12.      Article III of the Plan specifies in detail the classification of Claims and Interests,
whether such Claims and Interests are Impaired or Unimpaired, and the treatment that each Class
of Claims and Interests will receive under the Plan.  Accordingly, I believe the Plan satisfies
sections 1123(a)(1)–(3) of the Bankruptcy Code.

**3.      Equal Treatment of Similarly Situated Claims and Interests —
Section 1123(a)(4).**

13.      It is my understanding that the Plan provides the same treatment for each Claim or
Interest of a particular class, except where the Holder of such Claim or Interest has agreed to a less
favorable treatment.  Put simply, each Holder of Allowed Claims or Interests will receive the same
rights and treatment as all other Holders of Allowed Claims or Interests within such Holder's
respective class.  Accordingly, I believe that the Plan satisfies section 1123(a)(4) of the Bankruptcy
Code.

**4.      Means for Implementation — Section 1123(a)(5).**

14.      I believe that the Plan provides adequate means for implementation as required
under section 1123(a)(5) of the Bankruptcy Code.  Specifically, Article IV of the Plan, among
other things:

> (i)      constitutes a good faith compromise and settlement of all Claims, Interests,
> and controversies resolved pursuant to the Plan;
>
> (ii)     authorizes the Debtors or the Reorganized Debtors to take all actions
> necessary or appropriate to effectuate the Plan
>
> (iii)    provides for the cancellation of documents evidencing Claims or Interests
> and provides that the obligations of the Debtors thereunder are satisfied,
> cancelled, and discharged;
>
> (iv)     provides for certain securities law exemptions;
>
> (v)      provides the sources of consideration for the Restructuring Transactions;

(vi)    authorizes the Reorganized Debtors to enter into the New Stockholders Agreement;

(vii)   authorizes the Reorganized Debtors to issue the New Common Stock;

(viii)  authorizes the Reorganized Debtors to enter into the Exit Facilities;

(ix)    preserves the Debtors' corporate existence following the Effective Date;

(x)     provides for the vesting of Estate assets in the Reorganized Debtors;

(xi)    authorizes and approves all corporate actions contemplated under the Plan;

(xii)   provides for the designation and appointment of the directors and officers of the Reorganized Debtors;

(xiii)  provides for the preservation and vesting of Claims and Causes of Action not released pursuant to the Plan in the Reorganized Debtors;

(xiv)   provides for the implementation of the Management Incentive Plan;

(xv)    provides for the implementation of the settlement between the Debtors and the official committee of unsecured creditors excluding certain parties from the releases in the Plan; and

(xvi)   authorizes the Reorganized Debtors to assume all employment agreements unless otherwise provided in the Plan.

15.     The precise terms governing the execution of many of these transactions will be set forth in greater detail in the applicable definitive documents or forms of agreements included in the Plan Supplement.  Accordingly, I understand that the Plan complies with section 1123(a)(5) of the Bankruptcy Code.

**5.      Prohibition of Issuance of Non-Voting Stock — Section 1123(a)(6).**

16.     I am advised that section 1123(a)(6) of the Bankruptcy Code requires that a corporate debtor's chapter 11 plan provide for the inclusion in the reorganized debtor's charter (if any) of a prohibition against the issuance of non-voting equity securities.  I understand that the

New Organizational Documents will prohibit the issuance of non-voting equity securities.[4]

Accordingly, I believe that the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

### 6.      Selection of Officers and Directors — Section 1123(a)(7).

17.      I understand that section 1123(a)(7) of the Bankruptcy Code requires that any provisions in the Plan with respect to the manner of selection of any director, officer, or trustee be consistent with the interests of creditors, equity holders, and public policy.  Article IV.L of the Plan provides that, on the Effective Date, the term of the current board of directors of the Debtors shall expire, and the directors for the initial term of the New Board shall be designated and appointed.  Article IV.L further provides that the initial members of the New Board and those Persons that will serve as officers of the Reorganized Debtors will be identified in the Plan Supplement.[5]  Provisions regarding the removal, appointment, and replacement of members of the New Board will be disclosed in the New Organizational Documents.  Accordingly, I believe that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

### 7.      Discretionary Contents of the Plan — § 1123(b).

18.      I understand that section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.  I have been advised that under section 1123(b) of the Bankruptcy Code, among other things, a plan may:  (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases not previously rejected pursuant to section 365 of the Bankruptcy Code; (c) provide for a settlement or adjustment of a claim or interest; and (d) include any other provision not inconsistent with applicable provisions of the Bankruptcy Code.

---

[4]    *See* Plan Art. IV.K.

[5]    *See* Plan Art. IV.L.

19.     I understand that the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Specifically, under Article III of the Plan, Classes 1 and 2 are Unimpaired because the Plan leaves unaltered the legal, equitable, and contractual rights of the Holders of Claims within such Classes.[6]  Alternatively, I understand that Classes 3, 4, 5, 6, 7, 8, 9, 10, and 11 are Impaired since the Plan modifies the rights of the Holders of Claims and Interests within such Classes.  Classes 12 (Intercompany Claims) and 13 (Intercompany Interests) may be Impaired or Unimpaired under the Plan.  Accordingly, I believe that the Plan satisfies section 1123(b)(1) of the Bankruptcy Code.

20.     Additionally, I understand that Article V.A of the Plan provides that, on the Effective Date, all Executory Contracts and Unexpired Leases that were not previously assumed, assumed and assigned, or rejected will be deemed automatically assumed unless otherwise stated in the Plan.[7]  Accordingly, I believe that the Plan complies with section 1123(b)(2) of the Bankruptcy Code.

**8.     The Debtors Will Cure Monetary Defaults Under Any Assumed Executory Contracts — § 1123(d).**

21.     I understand that section 1123(d) of the Bankruptcy Code requires that cure amounts be determined in accordance with the underlying agreement and non-bankruptcy law.

22.     I believe that the Plan complies with section 1123(d) of the Bankruptcy Code.  The Plan provides for the satisfaction of cure amounts under each Executory Contract to be assumed under the Plan on the Effective Date or as soon as reasonably practicable thereafter in the ordinary course of business, subject to the limitations described in Article V of the Plan, and that the Reorganized Debtors shall pay such cure amounts.

---

[6]     *See* Plan Art. III.

[7]     *See* Plan Art. V.A.

**B.     The Debtors Have Satisfied the Applicable Provisions of the Bankruptcy Code — Section 1129(a)(2).**

23.     I have been advised that section 1129(a)(2) encompasses both the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code, as well as the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.  Based on my review of information provided by the Debtors and their advisors I understand that the Debtors, through their Claims, Noticing, and Solicitation Agent, complied with the content and delivery requirements of the Disclosure Statement Order, and the Debtors solicited votes on the Plan in accordance with the solicitation procedures approved by the Bankruptcy Court.

24.     Furthermore, I understand the Debtors solicited votes from the Holders of Claims in Impaired Classes entitled to vote under the Plan.  Holders of Claims and Interests in the Classes listed in the table below are either Unimpaired under the Plan and therefore were deemed to accept the Plan or will not receive any distribution under the Plan and are therefore deemed to reject the Plan.  While the Debtors did not solicit votes from the Holders of Claims and Interests in such classes, the Debtors served the Confirmation Hearing Notice and a Notice of Non-Voting Status to such Holders in accordance with the Disclosure Statement Order.  The Classes not entitled to vote on the Plan and each Class's respective status are as follows:

| Class | Claim or Interest | Status |
|---|---|---|
| 1 | Other Secured Claims | Unimpaired (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired (Presumed to Accept) |
| 5 | Series X Redeemable Preferred Stock Interests | Impaired (Deemed to Reject) |
| 6 | Series D Preferred Stock Interests | Impaired (Deemed to Reject) |
| 7 | Series C Preferred Stock Interests | Impaired (Deemed to Reject) |
| 8 | Series B Preferred Stock Interests | Impaired (Deemed to Reject) |
| 9 | Series A Preferred Stock Interests | Impaired (Deemed to Reject) |
| 10 | Series Seed Preferred Stock Interests | Impaired (Deemed to Reject) |
| 11 | Common Stock Interests | Impaired (Deemed to Reject) |

| Class | Claim or Interest | Status |
|-------|-------------------|--------|
| 12 | Intercompany Claims | Unimpaired (Presumed to Accept) / Impaired (Deemed to Reject) |
| 13 | Intercompany Interests | Unimpaired (Presumed to Accept) / Impaired (Deemed to Reject) |

## C.    The Debtors Proposed the Plan in Good Faith — Section 1129(a)(3).

25.    I believe that the Plan was proposed in good faith, with the legitimate and honest purpose of maximizing value for the Debtors and their estates.

26.    It is my understanding that the Plan is the result of collaborative efforts between the Debtors, their advisors and legal counsel, and their stakeholders.  I believe the Plan maximizes the economic return to creditors in light of the totality of the facts and circumstances of the case.

## D.    Payment of Professional Fees and Expenses Is Subject to Bankruptcy Court Approval — Section 1129(a)(4).

27.    It is my understanding that section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, a debtor, or a person receiving distributions of property under the plan, be approved by the Bankruptcy Court or remain subject to approval by the Bankruptcy Court as reasonable.  The Plan provides that Professional Fee Claims and corresponding payments are subject to prior Bankruptcy Court approval.[8]  Moreover, Article II.B.1 of the Plan provides that all final requests for payment of Professional Fee Claims must be filed no later than forty-five (45) days after the Effective Date for determination by the Bankruptcy Court, after notice and a hearing, in accordance with the procedures established by the Bankruptcy Court.  Accordingly, I believe that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

---

[8]    *See* Plan, Art. II.B.1.

**E.      The Plan Satisfies the Bankruptcy Code's Governance Disclosure Requirements — Section 1129(a)(5).**

28.      It is my understanding that section 1129(a)(5) of the Bankruptcy Code requires the plan proponent to disclose the affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan and requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy and to disclose the identity of insiders to be retained by the reorganized debtor and the nature of any compensation for such insider.  The Debtors will disclose the identities and affiliations of the members of the New Board, as applicable, the officers of the Reorganized Debtors, if any, and other information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code prior to the Effective Date of the Plan.  Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.      The Plan Does Not Require Government Regulatory Approval of Rate Changes — Section 1129(a)(6).**

29.      It is my understanding that the Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and, accordingly, will not require governmental regulatory approval.  As such, I believe that section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**G.      The Plan Is in the Best Interests of Holders of Claims and Interests — Section 1129(a)(7).**

30.      I have reviewed the classification of Claims and Interests under the Plan and the proposed distributions to each class of Claims or Interests.  Specifically, I believe that the Plan satisfies the requirements of the Bankruptcy Code regarding the "best interests of creditors" test.

31.      I understand that section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired Claim or Interest either (a) accepts the Plan or (b) receives or retains property

having a value, as of the Effective Date, that is not less than the value such holder would receive

if the Debtors were liquidated under chapter 7 of the Bankruptcy Code under the Plan. This

requirement is known as the "best interests" test. The best interests test applies to each

non-consenting member of an impaired class and is generally satisfied through a comparison of

the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that

debtor's estate against the estimated recoveries under that debtor's plan of reorganization. I

believe that the projected recoveries for the impaired Claims and Interests under the Plan are equal

to or in excess of the recoveries estimated in a hypothetical chapter 7 liquidation.

32.     To determine whether the Plan satisfies the best interests test, the Debtors, with the

assistance of AlixPartners, prepared a hypothetical liquidation analysis, which is attached to

the Disclosure Statement, as <u>Exhibit F</u> (the "<u>Liquidation Analysis</u>"). I oversaw the preparation of

the Liquidation Analysis and worked closely with the Debtors and a team of AlixPartners

professionals in its development. The Liquidation Analysis was completed after due diligence by

the Debtors and AlixPartners and was based on a variety of assumptions, which I believe are

reasonable under the circumstances. The Liquidation Analysis is based on the estimated value of

the Debtors' assets and liabilities as of May 31, 2024 (the "<u>Liquidation Date</u>"), assumes an orderly

liquidation of inventory and other certain assets and subsequent wind-down by a chapter 7 trustee,

and incorporates various estimates and assumptions that are customarily used in chapter 11 cases

similar to this one, including the projected costs associated with the administration of the estates

and the support required to wind down the Debtors' operations and estates in a hypothetical

conversion to a chapter 7 liquidation.

33.     The Liquidation Analysis outlines (a) the estimated cash proceeds that would be

generated if the Debtors conducted a 3-month orderly liquidation of assets on the Liquidation Date

13

followed by a conversion to chapter 7 and a 3-month period to fully wind down the Debtors' operations and estates and (b) the estimated distribution that each class of claims or interests would receive from the liquidation proceeds under the priority scheme dictated by the Bankruptcy Code. Asset balances are based on the Debtors' unaudited financial statements as of January 31, 2024 rolled forward to the Liquidation Date based on the Debtors' Approved DIP Budget dated February 26, 2024 [Docket No. 297], the Company's financial projections, and other management estimates. The estimated proceeds received from the liquidation are based on the assumption that the Debtors would sell and/or liquidate all inventory, brand intellectual property and substantially all other assets over the 90-day liquidation period.

34.    The Liquidation Analysis estimates liquidation proceeds based on these asset value assumptions, less the costs incurred during asset liquidation and wind down period, including (a) all costs associated with storing, transporting, marketing and disposing of inventory; (b) personnel costs associated with the monetization of inventory and other assets as well as the wind down of the estates; (c) professional fees for those professionals that continue to provide necessary services to the Debtors; (d) IT costs for services that are assumed to be necessary during this period; and (e) chapter 7 trustee fees.  The assumptions contained within the Liquidation Analysis are subject to potential material changes, including with respect to economic and business conditions, as well as legal rulings.

35.    A comparison of the range of estimated liquidation recoveries to the estimated Plan recoveries indicates that each holder of an impaired Claim or Interest will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  Specifically,

14

the projected recoveries under the Plan and the results of the Liquidation Analysis for all Holders

of Claims and Interests are as follows:

| Class | Claims or Interests | Estimated Plan Recovery (Per Disclosure Statement) | Estimated Liquidation Recovery |
|---|---|---|---|
| 1 | Other Secured Claims | 100% | 21 - 46% |
| 2 | Other Priority Claims | 100% | 0% |
| 3 | First Lien Claims | 20% | 0% |
| 4 | General Unsecured Claims | 0.06%[9] | 0% |
| 5 | Series X Redeemable Preferred Stock Interests | 0% | 0% |
| 6 | Series D Preferred Stock Interests | 0% | 0% |
| 7 | Series C Preferred Stock Interests | 0% | 0% |
| 8 | Series B Preferred Stock Interests | 0% | 0% |
| 9 | Series A Preferred Stock Interests | 0% | 0% |
| 10 | Series Seed Preferred Stock Interests | 0% | 0% |
| 11 | Common Stock Interests | N/A | 0% |
| 12 | Intercompany Claims | N/A | N/A |
| 13 | Intercompany Interests | N/A | N/A |

36.     Pursuant to section 1129(a)(7) of the Bankruptcy Code, the Court may not confirm

a plan of reorganization unless each holder in impaired classes will receive value under the plan

that is not less than what they would receive in a chapter 7 liquidation.  Importantly, in a

hypothetical chapter 7 liquidation, all creditors junior to the Other Secured Claims, including

General Unsecured Claims—which will receive a partial recovery under the Plan—would receive

zero recovery.  Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(7)

of the Bankruptcy Code.

---

[9] Class 4 Plan recoveries likely improved as a result of the settlement between the Debtors and the Committee.

**H.      Voting Requirements — Section 1129(a)(8).**

37.      I understand that the Bankruptcy Code generally requires that each class of claims or interests must either accept the plan or be unimpaired under the plan.  I further understand that if any class of claims or interests rejects the plan, the plan must satisfy the "cram down" requirements with respect to the claims or interests in that class.  I understand that, because certain Classes are deemed to reject the Plan, the Debtors do not satisfy section 1129(a)(8) of the Bankruptcy Code.  However, even though certain Classes are deemed to reject the Plan, I understand that the Debtors still satisfy section 1129(b) of the Bankruptcy Code.  I believe that the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the deemed rejecting Classes and, therefore, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

**I.      Priority Cash Payments — Section 1129(a)(9).**

38.      I understand that section 1129(a)(9) requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments.

39.      I understand that Article II.A of the Plan provides that each Holder of an Allowed Administrative Claim allowed on or prior to the Effective Date will receive payment in full in Cash no later than thirty (30) days after the Effective Date or as soon as reasonably practicable thereafter.  Further, I understand that Article II.D of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that Holders of Allowed Priority Tax Claims will be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**J.     At Least One Impaired Class of Claims Accepted the Plan — Section 1129(a)(10).**

40.     I understand that section 1129(a)(10) of the Bankruptcy Code requires that if any class of claims is impaired under the plan, then at least one class of impaired claims must accept the plan, without including any acceptance of the plan by any insider.  My understanding is that, based on a preliminary review of ballots received from voting creditors, each Voting Class will vote to accept the Plan.  Accordingly, I believe that the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**K.     The Plan Is Feasible — Section 1129(a)(11).**

41.     I understand that section 1129(a)(11) of the Bankruptcy Code requires a court to determine that a chapter 11 plan is feasible, and that confirmation of such plan is not likely to be followed by the liquidation or further financial reorganization of the Debtors (or any successors thereto) unless such liquidation or reorganization is proposed in the Plan.  I believe that the Plan is feasible and not likely to be followed by liquidation or further reorganization.

42.     The Debtors, with the assistance AlixPartners, prepared projections of the Debtors' financial performance through fiscal year 2028, which are attached to the Disclosure Statement as Exhibit D (the "Financial Projections").  I reviewed the Financial Projections while they were being prepared and I agree with its conclusions.  The Financial Projections were prepared under the assumption that the Plan will be implemented in accordance with its stated terms and consummated by May 24, 2024.  The Financial Projections were prepared on a consolidated basis using accounting policies that are generally consistent with those applied in the Debtors' historical financial statements.

43.     In proposing and presenting the Plan to the Court for Confirmation, the Debtors thoroughly analyzed their ability to meet their respective obligations under the Plan and to continue

as a going concern without the need for further financial restructuring.  No significant, unexpected events have occurred as of the filing of this Declaration that materially change the Financial Projections or my conclusion that the Plan is feasible.  As such, I do not believe that any amendments or modifications to the Financial Projections are necessary.  I believe that the Financial Projections demonstrate that the Reorganized Debtors will be positioned when they emerge from bankruptcy to execute their business plan and to service their debt obligations without the need for further financial reorganization.

44.     Accordingly, I believe that the Plan is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**L.     The Plan Provides for Payment of All Statutory Fees — Section 1129(a)(12).**

45.     I understand that section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.  Article II.G of the Plan includes an express provision requiring payment of all fees in compliance with the Bankruptcy Code.  Accordingly, I believe the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**M.     Retiree Benefit Obligations — Section 1129(a)(13).**

46.     Based on my knowledge of the Debtors' businesses and information provided by the Debtors' advisors, it is my understanding that section 1129(a)(13) of the Bankruptcy Code is inapplicable because the Debtors do not have any obligations related to retiree benefits.  However, out of the abundance of caution, it is my understanding that to the extent the Debtors have any such retiree benefit obligations, they shall continue to be paid in accordance with applicable law.

**N.     Sections 1129(a)(14) through 1129(a)(16) of the Bankruptcy Code Do Not Apply to the Plan.**

47.     Based on my knowledge of the Debtors' businesses and information provided by the Debtors' advisors, I believe that sections 1129(a)(14)-(16) of the Bankruptcy Code do not apply

to the Plan because the Debtors are not subject to domestic support obligations, are not "individuals," and are not nonprofit corporations.

## II.  The Plan Satisfies the Requirements for Confirmation of the Plan Over Nonacceptance of Impaired Classes — Section 1129(b).

48.      I understand that if all applicable requirements of section 1129(a) of the Bankruptcy Code are satisfied, other than section 1129(a)(8), a plan may still be confirmed so long as the requirements set forth in section 1129(b) are satisfied.

49.      To the best my knowledge, the Plan distributes value to Holders of Claims and Interests in the priorities set forth in the Bankruptcy Code, there is no Class receiving more than a 100 percent recovery and no junior Class is receiving a distribution under the Plan until all senior Classes have received a 100 percent recovery or have agreed to receive a different treatment under the Plan.  Therefore, distributions under the Plan are in accordance with the "absolute priority" rule of section 1129(b)(2)(B)(ii) of the Bankruptcy Code

50.      I believe the Plan's treatment of the Rejecting Classes is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment and the Plan's classification scheme rests on a legally acceptable rationale.  Claims in the Rejecting Classes are not similarly situated to any other Classes given their distinctly different legal character from all other Claims and Interests.  The Plan's treatment of the Rejecting Classes is proper because no similarly situated class will receive more favorable treatment.  Furthermore, where the Plan provides differing treatment for certain Classes of Claims or Interests, the Debtors have a rational basis for doing so.  Therefore, I believe that the Plan does not unfairly discriminate among creditors and interest holders with similar legal rights in accordance with section 1129(b)(1) of the Bankruptcy Code.

51.     Accordingly, I understand that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**III.    Only One Plan Is Eligible to Be Confirmed — Section 1129(c).**

52.     I understand that section 1129(c) of the Bankruptcy Code prohibits the confirmation of multiple plans.  Section 1129(c) of the Bankruptcy Code is not implicated here because there is only one proposed plan.

**IV.    The Principal Purpose of the Plan Is Not the Avoidance of Taxes or Securities Laws — Section 1129(d).**

53.     The Plan has not been filed for the purpose of avoidance of taxes or the application of section 5 of the Securities Act of 1933, as amended.  Moreover, as of the date hereof, no party that is a governmental unit, or any other entity, has requested that the Bankruptcy Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

**V.    Section 1129(e) of the Bankruptcy Code Is Inapplicable.**

54.     I understand that section 1129(e) of the Bankruptcy Code does not apply to the Plan because none of the Debtors' chapter 11 cases is a "small business case" within the meaning of the Bankruptcy Code.

**VI.    The Plan Modifications Are Reasonable, Do Not Require Resolicitation, and Should Be Approved.**

55.     I understand that section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  I have also been advised that under section 1125 of the Bankruptcy Code, a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated, unless such affected creditors

consent to the treatment.  Here, the Debtors made certain modifications to the Plan after the

solicitation period ended.  I believe that such modifications are either (a) immaterial or technical

clarifications; (b) modifications that resolve objections to the Plan; or (c) modifications that

provide flexibility with respect to the treatment of certain claims with the consent of such

claimholders.  Accordingly, I believe that no additional solicitation or disclosure is required on

account of the modifications, and that such modifications should be deemed accepted by all

creditors that previously accepted the Plan.

**VII.    Good Cause Exists to Waive the Stay of the Confirmation Order.**

56.    I understand that certain Bankruptcy Rules provide for the stay of an order

confirming a chapter 11 plan, but that such a stay may be waived upon court order after a showing

of good cause.

57.    Given that these chapter 11 cases and the related transactions have been negotiated

and implemented in good faith and with a high degree of transparency and public dissemination

of information and that each day the Debtors remain in chapter 11 they incur significant

administrative and professional costs, the Debtors may take certain steps to effectuate the Plan in

anticipation of and to facilitate the occurrence of the Effective Date so that the Effective Date can

occur as soon as needed.  Accordingly, I believe that good cause exists to waive any stay imposed

by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately

upon its entry.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 4, 2024

/s/ Terrence F. Grossman
Name: Terrence F. Grossman
Title: Bankruptcy Administration Officer
Thrasio Holdings, Inc.