Lorenzo Marinuzzi, Esq. (admitted *pro hac vice*)
Doug Mannal, Esq. (admitted *pro hac vice*)
Theresa A. Foudy, Esq. (admitted *pro hac vice*)
Raff Ferraioli, Esq. (admitted *pro hac vice*)
Darren Smolarski, Esq. (NJ Bar No. 307592020)
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile:  (212) 468-7900
Email: lmarinuzzi@mofo.com
       dmannal@mofo.com
       tfoudy@mofo.com
       rferraioli@mofo.com
       dsmolarski@mofo.com

*Counsel to the Official Committee*
*of Unsecured Creditors*

James S. Carr, Esq.
Connie Y. Choe, Esq.
**KELLEY DRYE & WARREN LLP**
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
Email: jcarr@kelleydrye.com
       cchoe@kelleydrye.com

*Co-Counsel to the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THRASIO HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11840 (CMG)<br><br>(Jointly Administered)<br><br>**Hearing Date: June 10, 2024 at 10:00 a.m. (ET)**<br>**Obj. Deadline (as extended for the Committee):**<br>**June 7, 2024**<br><br>**Docket No. 1102** |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS IN SUPPORT OF CONFIRMATION OF THE DEBTORS' PLAN**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Thrasio Holdings, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby files this statement (the "Statement") in support of the *First Amended Joint Plan of*

---

[1] The last four digits of Debtor Thrasio Holdings, Inc.'s tax identification number are 8327. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/Thrasio. The Debtors' service address for purposes of these chapter 11 cases is 85 West Street, 3rd Floor, Walpole, MA, 02081.

*Reorganization of Thrasio Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1102] (the "Plan"),[2] and in response to the objections to the Plan, including the *Objection of the United States Trustee to the First Amended Joint Plan of Reorganization of Thrasio Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1073] (the "UST Objection") and the *Limited Objection of Joshua Silberstein to the Joint Plan of Reorganization of Thrasio Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1074] (the "Silberstein Objection"). In support of this Statement, the Committee respectfully represents as follows:

## STATEMENT AND LIMITED REPLY

### I. The Committee Strongly Supports Confirmation of the Plan

1. Just weeks ago, the Committee was readying itself to seek standing to prosecute various estate claims concerning prepetition transactions against numerous defendants and to vigorously oppose confirmation of the Plan. Discovery was ongoing, and the Committee was preparing for six depositions (in addition to the two depositions that had already taken place) in furtherance of its investigation. Put simply, these chapter 11 cases were headed towards protracted and costly litigation, rendering plan confirmation and the Debtors' exit from chapter 11 far from certain. Now, as a result of the efforts of the Committee, the Committee members, the Ad Hoc Group, and the Debtors and their Disinterested Directors, the Debtors have a clear path towards confirmation of a Plan that incorporates a global settlement among the parties.

2. The Committee firmly believes that the Plan is in the best interests of unsecured creditors. Not only does the Committee Settlement incorporated into the Plan prevent these

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

2

chapter 11 cases from devolving into substantial and costly litigation, it also preserves in a post-bankruptcy trust valuable, unencumbered litigation claims that the Committee has always believed should be reserved as a potential source of recovery for unsecured creditors. This is a significant improvement from the $250,000 recovery pool shared *pro rata* among hundreds of millions of unsecured claims that was initially proposed by the Debtors.

3. The result is a direct consequence of the Committee's thorough investigation. As this Court is well aware, the Committee quickly began an investigation into the Debtors' prepetition affairs, as well as potential challenges to the validity, nature, and extent of the First Lien Lenders' liens. The Committee identified sources of unencumbered value (*i.e.*, commercial tort claims), as well as various claims and causes of action against numerous parties, including (a) Joshua Silberstein, Carlos Cashman, Joseph Falcao, Daniel Boockvar, Mounir Ouhadi, and Aditya Rathod, (b) transferees of Thrasio's assets in connection with transactions involving Yardline Capital Corp. between April 2020 and January 2022, including, but not limited to, Ari Horowitz, and (c) the family members, related trusts, investment vehicles, affiliates, and successors and assigns of the persons in (a) and (b) (collectively, the "Excluded Parties").

4. The Committee shared the results of its investigation with the Debtors, the Ad Hoc Group, and the Disinterested Directors, and engaged in discussions on a consensual resolution of these chapter 11 cases. These negotiations ultimately culminated in the Committee Settlement, as described in the *Notice of Filing of Settlement Term Sheet as Exhibit H to the Plan Supplement* [Docket No. 818] (the "Settlement Term Sheet") that was filed on May 29, 2024. The terms and agreement reflected in the Settlement Term Sheet have been incorporated in the Plan.

5. As more fully set forth in the Settlement Term Sheet and the Plan, a key feature of the Committee Settlement is that the Excluded Parties shall not be Released Parties or Releasing

3

Parties under the Plan, and any Claims and Causes of Action, including Avoidance Actions, against the Excluded Parties and all Claims and Causes of Action not released under the Plan shall be transferred to and vested in the Thrasio Legacy Trust and preserved for the benefit of unsecured creditors. The Plan will distribute interests in the Thrasio Legacy Trust to holders of General Unsecured Claims as follows: (a) 50% of Thrasio Legacy Trust Interests shall be distributed to holders of First Lien Deficiency Claims, and (b) 50% of Thrasio Legacy Trust Interests shall be distributed *pro rata* to holders of Allowed General Unsecured Claims, excluding First Lien Deficiency Claims. Trust proceeds will be distributed pursuant to the waterfall in the Plan.

6. The Committee approved the Committee Settlement and supports the Plan. The Plan creates the basis for consensus among the Debtors' major stakeholders and provides an improved distribution for unsecured creditors in the form of interests in the Thrasio Legacy Trust. The Plan, which is the result of hard-fought arm's-length negotiations, should be confirmed.

7. Despite the Committee Settlement and material improvements for unsecured creditors under the Plan, a number of parties have lodged objections to the Plan, including the U.S. Trustee and Joshua Silberstein. The objections to confirmation of the Plan are meritless and should be overruled.

**II.    The UST Objection Should be Overruled Because the Thrasio Legacy Trust Should Not Be Liable for Quarterly Fees**

8. The U.S. Trustee objects to the Plan seeking to impose joint and several liability on the Thrasio Legacy Trust—an entity that is not a successor of the Debtors—to pay Quarterly Fees on account of Thrasio Legacy Trust Proceeds. Not only is this beyond the mandate of 28 U.S.C. § 1930(a)(6), it will amount to a double payment of Quarterly Fees to the detriment of unsecured creditors. The UST Objection should be overruled.

4

9. The U.S. Trustee argues that Article II.F. of the Plan should be revised to provide in pertinent part that:

> "[a]fter the Effective Date, the Debtors, the Reorganized Debtors, the Thrasio Legacy Trust Administrator, the Thrasio Legacy Trust, and any entity making disbursements on behalf of any Debtor or any Reorganized Debtor, ***or making disbursements on account of an obligation of any Debtor*** or any Reorganized Debtor (each a "Disbursing Entity") s***hall be jointly and severally liable*** to pay Quarterly Fees when due and payable.

*See* UST Objection at ¶ 78 (emphasis added). This onerous language imposes liability on the Thrasio Legacy Trust or the Thrasio Legacy Trust Administrator beyond what is required by 28 U.S.C. § 1930(a)(6).

10. Section 1930(a)(6) provides that "***[t]he parties commencing a case*** under title 11 shall pay . . . [i]n addition to the filing fee, a quarterly fee" on "***disbursements***." *See* 28 U.S.C. § 1930(a)(6) (emphasis added). The first question is when a "disbursement" occurs for purposes of triggering the Quarterly Fee, and the second "is which 'particular debtor' must pay the fee for that disbursement.'" *In re Paragon Offshore, LLC*, 629 B.R. 227, 231 (Bankr. D. Del. 2021) (quoting *In re Genesis Health Ventures, Inc.*, 402 F.3d at 422).

A. **The Disbursement That Triggers Quarterly Fees Occurs on the Effective Date**

11. The term "disbursement" is not defined in the Bankruptcy Code, but courts have construed the term in connection with section 1930 to mean "all payments by or on behalf of the debtor." *Hobbs v. Buffets, LLC (In re Buffets, LLC)*, 979 F.3d 366, 373-74 (5th Cir. 2020) (quotation omitted); *accord In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 422 (3d Cir. 2005) ("Payments made on behalf of a debtor, whether made directly or indirectly through centralized disbursing accounts, constitute that particular debtor's disbursements for the purpose of quarterly fees calculations under § 1930(a)(6)."). The word "disbursements" is "commonly understood in this context to apply to payments made with the funds generated from the liquidation of the

5

debtor's assets." *Robiner v. Danny's Mkts., Inc. (In re Danny's Mkts., Inc.)*, 266 F.3d 523, 525 (6th Cir. 2001) (applying this understanding to require quarterly fees on the reorganized debtors' post-confirmation operating expenses).

12. "Although courts have taken different approaches to interpreting section 1930(a)(6), 'the common thread that appears to bind many of those decisions together is the fact that the debtor had some interest in, or control over, the money disbursed.'" *Paragon*, 266 F.3d at 231 (quoting *In re Hale*, 436 B.R. 125, 130 (Bankr. E.D. Cal. 2010)). "In other words, section 1930 quarterly fees are not . . . triggered by 'every situation' when 'any' 'entity' makes 'any' payment to any 'third party' from 'any source' 'for any reason.'" *Id.* (quoting *In re Genesis Health Ventures, Inc.*, 402 F.3d at 422). Instead, "it is the ultimate payment of the expense by any entity on behalf of a debtor that is the subject of quarterly fees." *Walton v. Post-Confirmation Comm. of Unsecured Creditors of GC Companies, Inc. (In re GC Companies, Inc.)*, 298 B.R. 226, 230 (D. Del. 2003).

13. The UST Objection should be overruled because only payments by or on behalf of the Debtors trigger Quarterly Fees, and distributions by the Thrasio Legacy Trust to Thrasio Legacy Trust Beneficiaries are not payments by or on behalf of the Debtors. Indeed, the Plan provides that the Thrasio Legacy Trust will be established for the benefit of the Thrasio Legacy Trust Beneficiaries, and that the Debtors shall irrevocably transfer "all rights, title, and interest in and to the Thrasio Legacy Trust Assets" to the Thrasio Legacy Trust. *See* Plan Art.IV.J.2. The Plan further provides that "the Thrasio Legacy Trust Assets shall automatically vest in the Thrasio Legacy Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Thrasio Legacy Trust Interests and the Thrasio Legacy Trust Fees and Expenses, as provided for in the Plan and the Thrasio Legacy Trust Agreement, and shall become assets of the Thrasio

Legacy Trust for all purposes." *Id.* **Therefore, any payment of Thrasio Legacy Trust Proceeds to Thrasio Legacy Trust Beneficiaries is <u>not</u> a payment by the Thrasio Legacy Trust on behalf of the Debtors. It is instead a payment of the trust corpus to trust beneficiaries on behalf of the *trust*.** Such payments are outside of the purview of section 1930.

14. Moreover, the ultimate payment on behalf of the Debtors will be the transfer of the Thrasio Legacy Trust Assets to the Thrasio Legacy Trust on the Effective Date. It is that Effective Date transfer from the Debtors to the Thrasio Legacy Trust on behalf of General Unsecured Creditors that will trigger the Quarterly Payment. Sustaining the UST Objection and imposing further liability on the Thrasio Legacy Trust will enable the U.S. Trustee to "double dip."

15. The Committee is aware of the May 31, 2024 ruling in *In re Careismatic Brands, LLC*, Case No. 24-10561 (VFP) (Bankr. D.N.J) on this issue, and the June 3, 2024 notice of appeal of the confirmation order in that case sustaining similar objections lodged by the U.S. Trustee. The facts in this case are similar to *Careismatic*, but the Committee respectfully submits that the ruling on the issue there was incorrect.

16. The recent decision in *In re Paragon Offshore LLC* is instructive. There, the chapter 11 plan created a liquidating trust into which the debtor transferred assets, including litigation claims. 629 B.R. at 229. Like here, the litigation claims in *Paragon* were transferred on the effective date of the plan. *Id.* Upon that effective date transfer, the debtor paid fees to the U.S. Trustee. *Id.* Four years later, the trust settled a litigation claim that had been transferred to it by the debtor on the effective date. *Id.* at 230. The U.S. Trustee sought to compel the trust to pay statutory fees on the distribution of the settlement proceeds. *Id.* Judge Sontchi ruled that the trust was not obligated to pay fees to the U.S. Trustee when the liquidating trust distributed the settlement proceeds to trust beneficiaries. *Id.* at 232. The Court reasoned that trust distributions to

7

trust beneficiaries were not disbursements by or on behalf of the debtor. *Id.* Judge Sontchi also ruled that the transfer of litigation claims to a plan-created trust occurs on the effective date of the plan for the purpose of calculating the Quarterly Fees. The Court reasoned that requiring a further payment on trust disbursements would amount to double-dipping because the debtor had already paid the fee when the assets were transferred to the liquidating trust on the effective date of the plan. *Id.*

17. The Thrasio Legacy Trust Assets are being disbursed to the Thrasio Legacy Trust on the Effective Date. This transfer is a disbursement on behalf of the Debtors and is appropriately included in the computation of the Quarterly Fees. The fact that the Thrasio Legacy Trust may monetize the Vested Causes of Action in the future does not trigger a new fee obligation—the statutory fee would have already been paid (and, as set forth above, the payment is not on behalf of the Debtors).

**B.    The Thrasio Legacy Trust Is Not Responsible for Payment of Quarterly Fees**

18. After determining when the Quarterly Fees are triggered (*i.e.*, once and on the Effective Date), the second question is who is responsible for paying them. Section 1930 is clear that the only responsible parties are the Debtors (or Reorganized Debtors, as applicable), as the "parties commencing a case under title 11." 28 U.S.C. § 1930(a).

19. Notwithstanding the plain language of the statute, the U.S. Trustee suggests it must have been an "oversight" that the Plan does not require the "Thrasio Legacy Trust and Thrasio Legacy Trust Administrator to pay Quarterly Fees concerning any disbursements of the proceeds of any resolutions of the causes of action transferred to it by the Debtors until the cases are converted, dismissed, or closed." UST Objection at ¶ 75. This was not an "oversight," as the U.S. Trustee suggests, and is consistent with applicable law and fairness. The U.S. Trustee further notes that the Plan "would allow the Thrasio Legacy Trust . . . to liquidate *what are currently assets* of

8

the Debtors' bankruptcy estates and pay the proceeds to recipients *that are currently the Debtors' unsecured creditors*, yet still avoid paying the mandatory quarterly fee imposed by section 1930(a)(6)." *Id.* at ¶ 76 (emphasis added). Correct, and as it should. Those assets—the Thrasio Legacy Trust Assets—will no longer be assets of the Debtors following the transfer to the Thrasio Legacy Trust on the Effective Date. At that point, the Quarterly Fee is triggered. But afterwards, the Thrasio Legacy Trust Assets will be assets vested in the Thrasio Legacy Trust—an entity that is not a successor of the Debtors. Moreover, the Debtors' current unsecured creditors would have received distributions from the Debtors on account of their claims upon the vesting of the Thrasio Legacy Trust Assets to the Thrasio Legacy Trust, and the receipt of Thrasio Legacy Trust Interests.

20. Article II.F. of the Plan is consistent with the mandate and scope of section 1930, and provides the following:

> All fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) plus any interest due and payable under 31 U.S.C. § 3717 (together, the "Quarterly Fees") before the Effective Date shall be paid by the applicable Reorganized Debtor (or the Disbursing Agent on behalf of each applicable Reorganized Debtor) for each quarter (including any fraction thereof) until such Reorganized Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

The UST Objection misses the mark and should be overruled.

**III. The Silberstein Objection Should Be Overruled**

21. Joshua Silberstein—co-founder and former co-CEO of Thrasio, and Excluded Party—lodged an objection to, among other things, the releases in the Plan and the scope of the Vested Causes of Action.

22. In the Silberstein Objection, Silberstein asserts that "the Plan appears to retain the broadest possible set of potential claims against Silberstein notwithstanding the results of the Independent Investigation and Silberstein's contractual and legal rights." Silberstein Objection ¶ 1. This is correct. *First*, Silberstein, was never entitled to a release in connection with these

9

chapter 11 cases under any standard. *Second*, even if he were, the conclusions of the Disinterested Directors' investigation [Docket No. 805] (the "Disinterested Directors' Report") identified potential estate causes of action against Silberstein, thus rendering any release in Silberstein's favor unreasonable. *See Disinterested Directors' Report* at ¶ 6. In addition to the claims identified in the Disinterested Directors' Report, the Committee has also identified valuable estate causes of action against Silberstein as a result of its investigation, hence his inclusion as an Excluded Party. Accordingly, the Debtors, as part of the global resolution embodied in the Plan, have appropriately sought to retain the broadest possible set of potential claims against Silberstein, so that such claims can be pursued by the Thrasio Legacy Trust to maximize creditor recoveries.

23. Moreover, the Separation Agreement (as defined in the Silberstein Objection) is not a defense to any claims against Silberstein or a reason Silberstein should not be an Excluded Party. Put another way, Silberstein's "contractual and legal rights" should give him little comfort here. The Plan makes clear that Vested Causes of Action include any challenges to the validity or enforceability of the Separation Agreement and any purported releases, and all parties' rights to dispute the effectiveness of the release are expressly reserved.

24. To be sure, a release, like any other contract, can be set aside for various reasons including fraud. The Committee has reason to believe as a result of its investigation that Silberstein misled Thrasio's board of directors at the time of the Separation Agreement and purported release. In any event, a release, such as the release included in the Separation Agreement, may be avoided as a fraudulent transfer, and Avoidance Actions against Excluded Parties like Silberstein are preserved and shall vest in the Thrasio Legacy Trust. *See In re e2 Commc'ns, Inc.*, 320 B.R. 849 (Bankr. N.D. Tex. 2004) (holding that the release of the debtor's claims against its former president was avoidable as a fraudulent transfer because, as result of the release, the debtor lost the right to

10

pursue causes of action that could have been assets of the debtor's estate). Finally, even if the Separation Agreement and purported release were effective (they are not), they expressly do not release Silberstein from grossly negligent actions, fraudulent conduct, or any felony criminal conduct about which neither the releasors nor their officers have actual or constructive knowledge. For the foregoing reasons, the Committee respectfully requests that the Silberstein Objection be overruled.

## **CONCLUSION**

25. The Committee believes that the Plan complies with the applicable requirements of the Bankruptcy Code, is in the best interests of the estates, and is the best possible outcome under the circumstances for unsecured creditors. Accordingly, the Committee urges the Court to overrule the objections and confirm the Plan.[3]

---

[3] The Committee reserves the right to amend or supplement this Statement and raise any further issues or objections based upon any settlements, modifications to the Plan, modifications to the Plan Supplement or any other Definitive Document, and/or any unresolved objections or facts or arguments that come to light prior to or at the hearing on confirmation of the Plan.

| | |
|---|---|
| Dated: June 7, 2024 | **KELLEY DRYE & WARREN LLP** |
| | |
| | */s/ James S. Carr* |
| | James S. Carr, Esq. |
| | Connie Choe, Esq. |
| | One Jefferson Road, 2nd Floor |
| | Parsippany, NJ 07054 |
| | Telephone: (973) 503-5900 |
| | Facsimile: (973) 503-5950 |
| | Email: jcarr@kelleydrye.com |
| |       cchoe@kelleydrye.com |
| | |
| | *Co-Counsel for the Official Committee of Unsecured Creditors* |
| | |
| | -and- |
| | |
| | **MORRISON & FOERSTER LLP** |
| | Lorenzo Marinuzzi, Esq. (admitted *pro hac vice*) |
| | Doug Mannal, Esq. (admitted *pro hac vice*) |
| | Theresa A. Foudy, Esq. (admitted *pro hac vice*) |
| | Raff Ferraioli, Esq. (admitted *pro hac vice*) |
| | Darren Smolarski, Esq. (NJ Bar No. 307592020) |
| | 250 West 55th Street |
| | New York, New York 10019-9601 |
| | Telephone: (212) 468-8000 |
| | Facsimile: (212) 468-7900 |
| | Email: lmarinuzzi@mofo.com |
| |       dmannal@mofo.com |
| |       tfoudy@mofo.com |
| |       rferraioli@mofo.com |
| |       dsmolarski@mofo.com |
| | |
| | *Counsel for the Official Committee of Unsecured Creditors* |